# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARYANN BUTLER, | |
| Plaintiff, | Case No. 1:25-cv-00690 |
| v. | |
| NEW AMERICAN FUNDING, | |
| Defendant. | |

## **DEFENDANT'S MOTION TO DISMISS**

Defendant, New American funding ("NAF"), by and through its undersigned counsel, hereby submits this motion to dismiss Plaintiff Marynn Butler's ("Ms. Butler") Complaint[1] pursuant to Fed. R. Civ. P. 12(b)(6), based upon the following:

1.      Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

2.      "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

---

[1] On July 11, 2025, the Court denied Ms. Butler's son's, Audury Petie Davis, Motion to Amend complaint and Substitute Plaintiff. Exhibit 2 (ECF No. 37). On July 22, 2025, Mr. Davis filed an Amended Complaint without Ms. Butler first filing a Motion to Amend and without leave of Court. This, along with all other submissions filed by Mr. Davis, are subject of NAF's pending Motion to Strike. ECF No. 59. NAF's current Motion to Dismiss is therefore intended only to address Ms. Butler's original, procedurally proper Complaint.

3.      "Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept 'unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

4.      Additionally, pursuant to Rule 8(a)(2)-(3) of the Federal Rules of Civil Procedure, a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2)-(3).

5.      Though pro se complaints are to be construed liberally, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), a district court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baker v. City of Pittsburgh*, 2025 WL 33637, at *2 (W.D. Pa. Jan. 6, 2025) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

6.      The purpose of Rule 8 is to prevent complaints that are ambiguous or vague so as to impede the defendant's ability to form a responsive pleading. *See Schaedler v. Reading Eagle Publications, Inc.*, 370 F.2d 795, 798 (3d. Cir. 1967).

7.      While the pleading requirements of Rule 8 are liberally construed, courts have consistently held that disorganized and highly repetitive complaints fail to satisfy Rule 8. *See Parker v. Learn the Skills Corp.*, 2004 WL 2384993, at *2 (E.D. Pa. October 25, 2004) (stating that while excessive length alone is not a sufficient reason to dismiss a complaint, when accompanied by a lack of clarity, a dismissal is proper); *Burton v. Peartree*, 326 F. Supp. 755, 758–59 (E.D. Pa. 1971) (holding that "a lengthy rambling complaint which contains little more

- 2 -

than demands, charges and conclusions ... is not a short and plain statement of the case and flagrantly violates" Rule 8).

8.      "This rule is violated when the factual allegations and elements of the claim are scattered throughout the complaint." *Carter v. Kane*, 2018 WL 774468, at *2 (W.D. Pa. Feb. 8, 2018) (citing *Burton v. Peartree*, 326 F. Supp. 755, 758-59 (E.D. Pa. 1971)).

9.      Ms. Butler filed her Complaint on April 21, 2025. Exhibit 1 (ECF No. 1).

10.     Ms. Butler lists five federal statutes that she claims are at issue in this case: Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691; RESPA, 12 U.S.C. § 2601; TILA, 15 U.S.C. § 1601; HUD Mortgagee Letter 2009-40. Ex. 1 at 3.

11.     Beside each listed statute is a single phrase purportedly establishing the basis for each cause of action. *Id.*

12.     In further support of these claims, Ms. Butler refers to "Attachment A – Statement of Facts." Ex. 1 at 18-19 (ECF No. 1-5).

13.     However, "Attachment A" is not signed by Ms. Butler but by her son, Mr. Davis.

14.     On July 11, 2025, this Court entered an Order finding that Mr. Davis "does not claim the be an attorney, and thus lacks authority to litigate this matter on behalf of [Ms.] Butler." Exhibit 1 at 2 (ECF No. 37) (citing *Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018); 28 U.S.C.A. § 1654; *Gunn v. Credit Suisse Grp. AG*, 610 F. App'x 155, 157 (3d Cir. 2015) (per curiam)).

15.     "Davis likewise has not demonstrated any legally recognized status as a guardian, next friend, or other exception permitting non-attorneys to represent a litigant, pursuant to Fed. R. Civ. P. 17." Ex. 1 at 3.

- 3 -

16.     Additionally, the Court found "that it is not clear based on Davis's representations that Davis is the real party in interest." Ex. 1 at 4.

17.     "[I]n other words, if any rights are involved here, they are for [Ms.] Butler, not [Mr.] Davis, to assert." Ex. 1 at 4.

18.     Therefore, any documents signed by Mr. Davis and not Ms. Butler, including "Attachment A" that serves as Ms. Butler's statement of facts, are impermissible and cannot be relied upon as allegations and elements of Ms. Butler's causes of action.

19.     As a consequence, Ms. Butler's claims are devoid of allegations and elements and are therefore conclusory.

20.     But even if "Attachment A" is admissible, it fails to provide all necessary elements for each claim.

WHEREFORE, New American Funding, respectfully requests that this Court dismiss Plaintiff Maryann Butler's Complaint without prejudice.

Respectfully submitted,

FOX ROTHSCHILD LLP

*Ronald L. Williams*

Ronald L. Williams
Eagleview Corporate Center
747 Constitution Drive, Suite 100
P.O. Box 673
Exton, PA 19341
Tel:    610.458.7500
Fax:    610.458.7337
rwilliams@foxrothschild.com
Attorneys for Defendant

- 4 -

175213995.1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARYANN BUTLER,

        Plaintiff,

    v.

NEW AMERICAN FUNDING,

        Defendant.

Case No. 1:25-cv-00690

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2025, a copy of the foregoing MOTION TO DISMISS, was served upon the following via first class mail and via email:

Maryann Butler
1823 State Street
Harrisburg, Dauphin, PA 17103
Mfmallah87@icloud.com

-and-

Audury P. Davis
2041 Greenwood St.
Harrisburg, PA 17103
Mfmallah87@icloud.com

Dated: August 4, 2025

FOX ROTHSCHILD LLP

*Ronald L. Williams*

Ronald L. Williams
Eagleview Corporate Center
747 Constitution Drive, Suite 100
P.O. Box 673
Exton, PA 19341
Tel:   610.458.7500
Fax:   610.458.7337
rwilliams@foxrothschild.com
Attorneys for Defendant

- 5 -

175213995.1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARYANN BUTLER,

          Plaintiff,

      v.

NEW AMERICAN FUNDING,

          Defendant.

Case No. 1:25-cv-00690

## CERTIFICATE OF CONCURRENCE

I, Ronald L. Williams, Esq., hereby certify that Plaintiff's "authorized representative," Audury Petie Davis, does not concur in Defendant's Motion to Dismiss. Defendant's counsel has not had any communication with the named Plaintiff, Maryann Butler.

Dated: August 4, 2025

FOX ROTHSCHILD LLP

*Ronald L. Williams*

Ronald L. Williams
Eagleview Corporate Center
747 Constitution Drive, Suite 100
P.O. Box 673
Exton, PA 19341
Tel:   610.458.7500
Fax:   610.458.7337
rwilliams@foxrothschild.com
Attorneys for Defendant

- 6 -

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARYANN BUTLER,

        Plaintiff,

    v.

NEW AMERICAN FUNDING,

        Defendant.

Case No. 1:25-cv-00690

## **ORDER**

Based upon Defendant New American Funding's Motion to Dismiss, concurred in or opposed by Plaintiff MaryAnn Butler and Movant Audury Petie Davis, this _____ day of _____, 2025, this Court orders that Defendant New American Fundings' Motion to Dismiss is **GRANTED** and that Plaintiff Maryann Butler's Complaint (ECF No.1) is dismissed without prejudice.

BY THE COURT:

_____
The Honorable Philip J. Caraballo
United States Magistrate Judge

175213995.1

# EXHIBIT 1

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Middle     District of    Pennsylvania

Harrisburg     Division

|  |  |
|---|---|
| Maryann Butler _____ *Plaintiff(s)* *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* **-v-** New American Funding 14511 Myford Road Suite 100 Tustin, California 92780 _____ *Defendant(s)* *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No.    1:25-CV-00690
*(to be filled in by the Clerk's Office)*

Yes ☐    No ☐

FILED
HARRISBURG, PA

APR 21 2025

PER_____
DEPUTY CLERK

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Maryann Butler |
| Street Address | 1823 State Street |
| City and County | Harrisburg, Dauphin |
| State and Zip Code | Pennsylvania 17103 |
| Telephone Number | 717-424-8220 |
| E-mail Address | Mfmallah87@icloud.com |

Page of 6

**B.      The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | New American Funding |
| Job or Title *(if known)* | Lender |
| Street Address | 14511 Myford Road Suite 100 |
| City and County | Tustin, Orange County |
| State and Zip Code | California , 92780 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

City and County _____

State and Zip Code _____

Telephone Number _____

E-mail Address *(if known)* _____

## \II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the        parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties      is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of     another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a        diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

x   Federal question         ☐   Diversity of citizenship
☐

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

**Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691** – failure to issue an adverse action notice;
**RESPA, 12 U.S.C. § 2601** – failure to transfer FHA case and disclose settlement info;
**TILA, 15 U.S.C. § 1601** – lack of required loan disclosures;
**FCRA, 15 U.S.C. § 1681** – unauthorized or excessive credit inquiries;
**HUD Mortgagee Letter 2009-40** – wrongful obstruction of FHA case transfer.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* _____, is a citizen of the

State of *(name)* _____ .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated

under the laws of the State of *(name)* _____ ,

and has its principal place of business in the State of *(name)* _____

_____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.     The Defendant(s)

   a.     If the defendant is an individual

   The defendant, *(name)* _____ , is a citizen of

   the State of *(name)* _____ . Or is a citizen of

   *(foreign nation)* _____ .

   b.     If the defendant is a corporation

   The defendant, *(name)*  New American Funding-Nations , is incorporated under
   Lending Corporation d/b/a New
   American Funding

   the laws of the State of *(name)*     California     , and has its

   principal place of business in the State of *(name)*  Tustin, California  .

   Or is incorporated under the laws of *(foreign nation)* _____ ,

   and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.     The Amount in Controversy

   The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

   Bet, here's a tighter, more aggressive version that still hits hard and fits clean in the form:
   _____

   **"The amount in controversy exceeds $75,000. Plaintiff seeks $1,000,000 in total damages for obstruction of a federal mortgage transaction, loss of home equity, financial harm, and willful misconduct by Defendants, including punitive damages for gross negligence and delay."**

## III.     Statement of Claim

   Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including     the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and     write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

Pro Se 1 (Rev. 12-16) Complaint for a Civil Case

> **"Plaintiff refers the Court to the attached 'Statement of Facts' (Attachment A) for a full account of the misconduct, including factual allegations of delay, obstruction of the mortgage process, and violations of federal lending laws. These include but are not limited to willful negligence, failure to issue required notices, and deprivation of access to key mortgage systems, resulting in financial harm and the loss of a time-sensitive mortgage opportunity."**

## IV.     Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

"Plaintiff refers the Court to the attached "(Attachment B) "Prayer And Relief

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     April 04, 2025

Signature of Plaintiff

Printed Name of Plaintiff     Maryann Butler

### B.     For Attorneys

Date of signing:

Signature of Attorney

Page of 6

Audury P.D. Davis
2041 Greenwood Street
Harrisburg, PA 17104
Phone: 717-424-8220
Email: MFMALLAH87@iCloud.com
April 16, 2025

Clerk of Court
United States District Court
Middle District of Pennsylvania
228 Walnut Street
Harrisburg, PA 17101

RE: Filing of Civil Complaint and Application to Proceed In Forma Pauperis
Plaintiff: Maryann Butler
Defendant: New American Funding

Dear Clerk of Court,

Enclosed please find the following documents for filing in the above-captioned
matter:

1. Civil Complaint with Exhibits
2. Application to Proceed In Forma Pauperis (AO 239) 3.
Declaration in Support of IFP
4. Summons in a Civil Action (AO 440)
5. Cover Sheet (JS-44)
6. Proof of Service (to be filed upon completion of service)

Plaintiff, Maryann Butler, is requesting leave to proceed in forma pauperis
pursuant to 28 U.S.C. § 1915. I am submitting this packet on her behalf as her
authorized representative.

Please file the enclosed documents accordingly and advise if, any additional
materials are required to complete the filing.

Respectfully submitted,

Audury P.D. Davis
Authorized Representative for Plaintiff



CERTIFIED MAIL

9589 0710 5270 2972 4067 33

Retail

U.S. POSTAGE PAID
PM
HARRISBURG, PA 17111
APR 16, 2025
$19.90
17101
RDC 03
R2304M118147-17

Audry R. Davis
7041 Greenwood St
#86  Pa  17104

RECEIVED
HARRISBURG PA
APR 2   2025
FER  CLERK OF COURT

CLERK OF Court - U.S. District Court   MIDDLE District

Ronald Reagan Federal Building ; US Courthouse

228 Walnut Street, Room 110

Harrisburg  Pa  17101

......le with Care / Fragile

USA ONLY
Recycle if Clean & Dry     Remove From Pouch
Store Drop-off
MOISTURE RESISTANT
PLASTIC          PAPER
POUCH           LABEL
www.recycle.info

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Maryann Butler

## DEFENDANTS

New American Funding

**(b)** County of Residence of First Listed Plaintiff    Dauphin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Audury Petie Davis- Authorized Respresentitive
1823 State St
Harrisburg Pa 17103 - 717-424-8220

Attorneys *(If Known)*

Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - | 690 Other | 423 Withdrawal | 376 Qui Tam (31 USC |
| 130 Miller Act | 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| 140 Negotiable Instrument | Liability | 367 Health Care/ | | **INTELLECTUAL** | 400 State Reapportionment |
| 150 Recovery of Overpayment | 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | 820 Copyrights | 430 Banks and Banking |
| 151 Medicare Act | 330 Federal Employers' | Product Liability | | 830 Patent | 450 Commerce |
| 152 Recovery of Defaulted | Liability | 368 Asbestos Personal | | 835 Patent - Abbreviated | 460 Deportation |
| Student Loans | 340 Marine | Injury Product | | New Drug Application | 470 Racketeer Influenced and |
| (Excludes Veterans) | 345 Marine Product | Liability | | 840 Trademark | Corrupt Organizations |
| 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | 880 Defend Trade Secrets | 480 Consumer Credit |
| of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| 160 Stockholders' Suits | 355 Motor Vehicle | 371 Truth in Lending | Act | | 485 Telephone Consumer |
| 190 Other Contract | Product Liability | 380 Other Personal | 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| 195 Contract Product Liability | 360 Other Personal | Property Damage | Relations | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | Injury | 385 Property Damage | 740 Railway Labor Act | 862 Black Lung (923) | 850 Securities/Commodities/ |
| | 362 Personal Injury - | Product Liability | 751 Family and Medical | 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | [X] 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement | | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | 895 Freedom of Information |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate | | 870 Taxes (U.S. Plaintiff | Act |
| 240 Torts to Land | 443 Housing/ | Sentence | | or Defendant) | 896 Arbitration |
| 245 Tort Product Liability | Accommodations | 530 General | | 871 IRS—Third Party | 899 Administrative Procedure |
| 290 All Other Real Property | 445 Amer. w/Disabilities - | 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | 462 Naturalization Application | | Agency Decision |
| | 446 Amer. w/Disabilities - | 540 Mandamus & Other | 465 Other Immigration | | 950 Constitutionality of |
| | Other | 550 Civil Rights | Actions | | State Statutes |
| | 448 Education | 555 Prison Condition | | | |
| | | 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1639 et seq. (TILA violations), 12 U.S.C. § 2601 (RESPA), 24 C.F.R. § 203 (FHA)

Brief description of cause:
Predatory Lending, FHA violations, Loan Negligence

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
1,000.000

CHECK YES only if demanded in complaint:

JURY DEMAND:   [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE      DOCKET NUMBER

DATE
03/26/2025

SIGNATURE OF ATTORNEY OF RECORD
Audury Petie Davis-Authorized Rep

## FOR OFFICE USE ONLY

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MARYANN BUTLER,
Plaintiff,

v.

NEW AMERICAN FUNDING, et al.,
Defendants.

**FILED**
HARRISBURG, PA

APR 21 2025

PER _____
DEPUTY CLERK

Civil Action No.: [          ]

## DECLARATION UNDER PENALTY OF PERJURY

**I, Audury Petie Davis, authorized representative of Plaintiff Maryann Butler, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations, claims, and requests for relief contained in this Prayer for Relief—including the supporting grounds for punitive damages and injunctive relief—are true and correct to the best of my knowledge and belief.**

**Executed on: April 7, 2025**
**Location: Harrisburg, Pennsylvania**

**Respectfully submitted,**

**Audury Petie Davis**
**Authorized Representative for Plaintiff Maryann Butler**
**2041 Greenwood Street**
**Harrisburg, PA 17104**
**Email: mfmallh87@icloud.com**

## PRAYER FOR RELIEF

- A. Leave to proceed in forma pauperis, if applicable, and for the Court to accept this filing pro se with procedural parity to represented parties. See 28 U.S.C. § 1915(a).
- B. A finding that Defendants' actions, as outlined in the Statement of Facts, violate federal consumer protection laws and regulations governed by HUD, CFPB, and FHA servicing standards.

- C. An award of actual, statutory, and compensatory damages exceeding $250,000 for financial loss, emotional distress, procedural delays, and unlawful conduct as evidenced in the record.
- D. An order expediting discovery due to time-sensitive claims and prior obstruction of Plaintiff's access to responsive documentation and communication.
- E. Injunctive relief compelling Defendants to release all relevant FHA case file records, servicing communications, and documentation under Plaintiff's authorized representation.
- F. Imposition of civil penalties, and any further relief deemed just and proper, including attorney fees should counsel be retained.
- G. Retention of jurisdiction to enforce the Court's orders and monitor compliance.

## PUNITIVE DAMAGES & INJUNCTIVE RELIEF

Plaintiff further requests that this Court impose punitive damages against Defendant New American Funding (NAF) for willful, malicious, and deceptive conduct, including:
 See BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996).

- Obstruction of communications through invalid or nonresponsive contact channels;
- Falsified denial of loan applications while continuing internal processing;
- Deliberate delays in FHA Case Transfer without formal notice;
- Failure to respond to CFPB, HUD, and BBB filings;
- Infliction of substantial emotional and financial harm.

This pattern of misconduct warrants punitive damages to both punish the wrongdoing and deter similar violations across the mortgage lending industry.

## COMPLIANCE REFORM AND COURT SUPERVISION

- A third-party audit of NAF's FHA servicing and borrower communication practices;
- Mandatory compliance reforms to improve transparency, accountability, and equitable borrower treatment;
- Publication of a corrective action plan aligned with HUD, FHA, and CFPB standards;
- Ongoing judicial oversight to ensure full implementation and adherence to Court directives. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994).

**Signature Page**
**Executed on: April 7, 2025**

Location: Harrisburg, Pennsylvania

**Respectfully submitted,**

*A. Petie Davis*

Audury Petie Davis

Authorized Representative for Plaintiff Maryann Butler

2041 Greenwood Street

Harrisburg, PA 17104

Email: mfmallh87@icloud.com

# AO 440 (Rev. 06/12) Summons in a Civil Action

United States District Court for the Middle District of Pennsylvania
Plaintiff: Maryann Butler
Defendant: New American Funding

To: New American Funding, via Registered Agent Registered Agent
Solutions, Inc.
125 Locust Street
Harrisburg, PA 17101
(Service pursuant to Fed. R. Civ. P. 4(e)(1) and PA Rule 424)

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day
you received it) — or 60 days if you are the United States or a United
States agency, or an officer or employee of the United States described in
Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff
an answer to the attached complaint or a motion under Rule 12 of the
Federal Rules of Civil Procedure. The answer or motion must be served
on the plaintiff or plaintiff's authorized representative, whose name and
address are:

Audury Petie Davis, Authorized Representative for Plaintiff
2041 Greenwood Street
Harrisburg, PA 17104

If you fail to respond, judgment by default will be entered against you for
the relief demanded in the complaint. You also must file your answer or
motion with the court.

CLERK OF COURT
Date: _____

Signature of Clerk or Deputy Clerk:

_____

## Table of Contents – Exhibits (Based on Statement of Facts)

Exhibit A: Technology Consent Form and Email Authorization

Exhibit B: Loan Application Packet (Includes Loan Estimate, Income Docs, Hazard Insurance)

Exhibit C: FHA Appraisal Report

Exhibit D: Email Bounce Backs Showing Communication

Blockage Exhibit E: CFPB Complaint and Response from Amy

Dale

Exhibit F: Voicemail from Shawn Wainwright – Employment Verification Evidence

Exhibit G: Formal Complaints Filed with CFPB, HUD, and BBB

## EXHIBIT A

*Technology Consent & Authorized Representative Declaration*

This exhibit includes the signed Technology Consent Agreement and Authorized Representative Declaration for Plaintiff Maryann Butler. It confirms that Plaintiff authorized her son, Audury "Petie" Davis, to act as her official representative in all communications with New American Funding (NAF) regarding her FHA loan application.

The consent form, dated January 31, 2025, and the formal authorization, signed March 26, 2025, were submitted through NAF's system, and provide explicit written confirmation that Mr. Davis was granted authority to communicate, receive disclosures, and act on behalf of the borrower. This exhibit directly supports Plaintiff's claims of transparency and contradicts later claims made by NAF to federal regulators.

Close



## Technology Consent Agreement

Date: 1/31/2025
Lender: New American Funding, LLC
Borrower Name:    Maryann Butler
Address:    1823 State Street, Harrisburg, PA 17103
Borrower Cell:    717-424-8220
Borrower Home:    717-288-9726
Borrower Work:    717-395-9946
Borrower Email Address:  mfmallah87@icloud.com

New American Funding, LLC ("NAF") and its partners, which can be found at
https://www.newamericanfunding.com/legal/partners/  (which list may be modified from time to time)
("Partners"), will use technology to provide you, the person(s) making a loan inquiry, loan application
or obtaining a loan, with important communications and updates.

This is a big part of why NAF garners such high satisfaction from our customer reviews. NAF's
dedication to providing great customer service continues after loan closing as you are kept updated
on loan products, real estate and/or home-related products or services that may be of interest to
you, and the servicing of any of your loans by New American Funding, LLC
. To facilitate these high ratings, NAF relies on technology to communicate which aids in our ability
to extend exceptional service. Please help us succeed by reviewing the important information below.

### Consent to Use of Technology

**Email.** You agree that NAF and its Partners may communicate with you via email at the email
address specified above, which you may update from time to time.

**Calls and Text Messages.** You authorize NAF and parties calling on NAF's behalf to call you and
send you SMS/MMS text messages for telemarketing, advertising and servicing purposes regarding
a mortgage loan, real estate, and home-related products or services at the telephone number(s)
listed above, which you may update from time to time, using an autodialer, pre-recorded or artificial
voice, AI generative voice and SMS/MMS text message, even if the telephone number you provided
is a cellular phone or other service for which you may be charged. If you have provided a cellular
telephone number above, you represent that you are the wireless subscriber or authorized user and
have the authority to give this consent. Further, you agree to notify NAF any time a telephone
number you have provided to NAF changes. You understand that you are not required to provide
this consent in order to obtain goods or services from NAF and that you can be connected with us
without providing consent by calling (800) 450-2010.

You understand and agree that if you would like to revoke your consent to be contacted by
autodialer and/or SMS text messages, you may exclusively opt-out of the receipt of such
communications by contacting NAF at CustomerService@nafinc.com or (800) 450-2010 ext. 7100.
This is the exclusive mechanism for opt-outs and we will act on the opt-out request in a reasonable
period of time.

## Unsworn Declaration Under Penalty of Perjury

I, Mary Ann Butler, hereby declare and affirm under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge:

I authorize Audury Petie Davis to act as my authorized representative in all matters related to the civil action filed against New American Funding, including but not limited to filing the complaint, appearing in court, engaging in settlement discussions, and handling all necessary filings and communications with the Court.

Executed on this _25_ day of _March_, 2025.

Signature: _____

Printed Name: Mary Ann Butler

**Authorized Representative Declaration**

UNSWORN DECLARATION UNDER PENALTY OF PERJURY

(28 U.S. Code § 1746)

I, Audury Petie Davis, hereby declare under penalty of perjury that I am the authorized representative of the Plaintiff, Maryann Butler, in the matter to be filed. I am submitting this declaration in support of the civil action.

I affirm that I am acting in good faith on behalf of the Plaintiff and have her consent to manage all filings and proceedings related to this matter. I understand the responsibilities of acting as an authorized representative and will act in the best interest of the Plaintiff.

Executed on March 26, 2025.

Signature: _Audury P. Davis_

Name: Audury Petie Davis

Address: 1823 State Street, Harrisburg, PA

1:23-CV-00369

# Attachment A: Statement of Facts

Submitted by: Audury "Petie" Davis, Authorized Representative for Plaintiff Maryann Butler
This Statement of Facts is submitted in support of Plaintiff's civil complaint against New American Funding ("NAF"). It outlines material events and evidence, organized by key factual components, in connection with Plaintiff's FHA refinance process.

### 1. Authorized Representation Confirmed
*Consent Form Acknowledged and Email Listed by Borrower*

Plaintiff executed a Technology Consent and Authorization Form appointing her son, Audury Petie Davis, as her representative for all loan communications. This form was submitted to NAF and acknowledged. (See Exhibit A)

### 2. Submission of Loan Application and Estimate
*Complete Loan Packet Received and Rate Disclosures Issued*

Plaintiff submitted a complete Uniform Residential Loan Application including employment, income, and asset documentation. This packet includes a Loan Estimate disclosing terms, fees, and closing costs. (See Exhibit B – Loan Application Packet, including Loan Estimate, Hazard Insurance, etc.)

### 3. FHA Appraisal and Concealed Requirements
*No Cure Notice or Guidance Ever Provided*

An FHA Appraisal Report was issued identifying eligibility subject to minor repairs. No cure notice or instructions were ever issued. The Plaintiff received no follow-up regarding repair actions. (See Exhibit C – FHA Appraisal Report)

### 4. Email Blockages and Comms Interference
*Email Bouncebacks Triggered at Deadline Stage*

On or about March 19, 2025, communication to NAF representatives began bouncing, resulting in blocked access to loan personnel during the final stages of review. Plaintiff's authorized representative experienced systematic obstruction. (See Exhibit D – Email Bounce Backs)

### 5. Misrepresentations to Federal Regulators
*NAF Claims "Impersonation" After Directly Engaging with Representative*

In formal response to the CFPB, NAF's Senior Vice President falsely alleged impersonation despite previous email engagement with the Plaintiff's representative. Records show NAF directly responded to Davis. (See Exhibit E – CFPB Response from Amy Dale)

### 6. Voicemail Confirming Employment Was Verified
*Loan Officer Contradicts Denial Reason in Voicemail*

Loan Officer Shawn Wainwright left a voicemail stating the employment verification had been received and was under review. This evidence contradicts NAF's claims that no such documentation was obtained. (See Exhibit F – Voicemail Evidence)

### 7. Formal Complaints Filed After Exhaustion

*Regulators Contacted After NAF Ignored All Resolution Attempts*

After repeated communication failures, Plaintiff filed formal complaints with the CFPB, HUD, and BBB documenting all patterns of obstruction and misrepresentation. (See Exhibit G – Formal Complaint Filings)

Executed on April 14, 2025

Respectfully submitted,

Audury "Petie" Davis
Authorized Representative for Plaintiff Maryann Butler

## EXHIBIT B

### *Loan Application Packet*

This exhibit contains the complete loan application packet submitted for Plaintiff Maryann Butler's FHA loan, including the Uniform Residential Loan Application (URLA), Loan Estimate, Hazard Insurance documentation, and FHA Addendum (HUD Form 92900-A). The documentation demonstrates that the application was timely and fully submitted and supports Plaintiff's assertion that New American Funding (NAF) falsely claimed the loan was incomplete. The Loan Estimate, dated February 4, 2025, further evidences that underwriting had commenced, and the loan was active under rate lock terms.

This exhibit directly supports Sections 2 and 3 of the Statement of Facts and refutes NAF's procedural defense in response to the Plaintiff's claims.

**New American Funding**

**14511 Myford Road, Suite 100
Tustin, CA 92780**

**Maryann Butler
1823 State Street
Harrisburg, PA**

14511

New American Funding
Attn: Disclosure Dept.
Myford Road, Suite
Tustin, CA 92780

100

# In Process

1823

Maryann Butler
Hanstahl Street
17103



NMLS# 6606

Priority Mail



## CHANGED CIRCUMSTANCE DETAIL

| | |
|---|---|
| Loan Number: | 1001748263 |
| Borrower: | Maryann Butler |
| Borrower: | |
| Subject Property: | 1823 State Street
Harrisburg, PA 17103 |

| | |
|---|---|
| Date of Change: | 02/03/2025 |
| Date of Re-Disclosure: | 02/04/2025 |

Previously, in connection with your loan application, you were provided with a Loan Estimate and/or Closing Disclosure form that contained an estimate of the settlement charges and loan terms for your mortgage loan application. For one or more of the

# In Process

following reasons listed below in the Explanation of Change, we are providing you with a revised disclosure:

Explanation of Change:

> Per borrower request, rate has been locked at 7.250% at a cost to the borrower of $3,537.00.

NAF LOCK INFORMATION: (if applicable)

Interest Rate: 7.250        Lock Expiration Date: 03/20/2025

Acknowledgement:

I/We acknowledge the above changed circumstance and intend to proceed with this loan.

Signed by:
_2/5/2025 | 07:46:59 PST_
—0E3BOC8ADD3442A

**Maryann Butler**               Date                                    Date

NAF_ChangedCircumstance_LE



Rev 03.12.2023

# New American Funding, LLC

9150 South Hills Boulevard Suite 260 · Broadview Heights, OH 44147 *Save this Loan Estimate to compare with your Closing Disclosure.*

## Loan Estimate

**DATE ISSUED**  2/4/2025

**APPLICANTS**  Maryann Butler
1823 State Street
Harrisburg, PA 17103

**PROPERTY**  1823 State Street
Harrisburg, PA  17103



1001748263

EST. PROP. VALUE $147,000

**LOAN TYPE** ☐ Conventional ☒ FHA ☐ VA ☐ _____

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $112,179 | **NO** |
| **Interest Rate** | 7.25 % | **NO** |
| **Monthly Principal & Interest** *See Projected Payments below for your Estimated Total Monthly Payment* | $886.64 | **NO** |
| | | Does the loan have these features? |
| **Prepayment Penalty** | | **NO** |
| **Balloon Payment** | | **NO** |

## Projected Payments

| Payment Calculation | Years 1-11 | | Years 12-20 | |
|---|---|---|---|---|
| Principal & Interest | | $886.64 | | $886.64 |
| Mortgage Insurance | + | 45 | + | - |
| Estimated Escrow *Amount can increase over time* | + | 261 | + | 261 |
| **Estimated Total Monthly Payment** | | **$1,193** | | **$1,148** |

| Estimated Taxes, Insurance & Assessments *Amount can increase over time* | $261 Monthly | This estimate includes | In escrow? |
|---|---|---|---|
| | | ☒ Property Taxes | YES |
| | | ☒ Homeowner's Insurance | YES |
| | | ☐ Other: | |
| | | *See Section G on page 2 for escrowed property costs. You must pay for other property costs separately.* | |

## Costs at Closing

| **Estimated Closing Costs** | $12,765 | Includes $10,032 in Loan Costs + $2,733 in Other Costs - $0 in Lender Credits. *See page 2 for details.* |
|---|---|---|
| **Estimated Cash to Close** | -$13,549 | Includes Closing Costs. *See Calculating Cash to Close on page 2 for details.* |

Visit **www.consumerfinance.gov/mortgage-estimate** for general information and tools.

**LOAN TERM** 20 years
**PURPOSE** Refinance **PRODUCT** Fixed Rate

**LOAN ID #** 1001748263
**RATE LOCK** NO ☒ YES, until 3/20/2025 at 3:00 PM PDT

LOAN ESTIMATE • GTRIDLEJ_S 0720 Page 2 of 3 · LOAN ID # 1001748263
GTRIDLEJ (INI)



*Before closing, your interest rate, points, and lender credits can change unless you lock the interest rate.* All other estimated closing costs expire on




## Loan Costs

### Closing Cost Details

| A. Origination Charges | | $5,166 |
|---|---|---|
| 3.153   % of Loan Amount (Points) | | $3,537 |
| Lender Fee | | $1,629 |

| B. Services You Cannot Shop For | | $2,911 |
|---|---|---|
| Appraisal Fee | $525  Credit Report $55  eClosing Fee   $50 | |
| Flood Certification | | $6 |
| Mortgage Insurance Premium | | $1,929 |
| Tax Service | | $90 |
| Verification Services | | $256 |

# In Process

## Other Costs

| E. Taxes and Other Government Fees | $334 |
|---|---|
| Recording Fees and Other Taxes | $334 |
| Transfer Taxes | |

| F. Prepaids | | $89 |
|---|---|---|
| Homeowner's Insurance Premium (    months) | | $89 |
| Mortgage Insurance Premium (    months) | | |
| Prepaid  Interest  ($22.28 per  day  for  4  days  @7.25 %) | | |
| Property Taxes (    months) | | |

| G. Initial Escrow Payment at Closing | | $2,310 |
|---|---|---|
| Homeowner's Insurance $150.00 per month for 8 mo. $1,200 Mortgage Insurance per month for mo. | | |
| Property Taxes | $111.01 per month for 10 mo. | $1,110 |

| H. Other | $0 |
|---|---|

| I. TOTAL OTHER COSTS (E + F + G + H) | $2,733 |
|---|---|



| C. Services You Can Shop For | $1,955 |
|---|---|
| Title - Attorney Fee | $300 |
| Title - Closing Protection Letter | $125 |
| Title - Endorsements | $350 |
| Title - Lender's Title Insurance | $1,020 |
| Title - Notary Fee | $160 |

| J. TOTAL CLOSING COSTS | $12,765 |
|---|---|
| D + I | $12,765 |
| Lender Credits | |

### Calculating Cash to

| | |
|---|---|
| Closing Costs Financed (Paid from your Loan Amount) | - $1,929 |
| Down Payment/Funds from Borrower | $0 |
| Deposit | $0 |
| Funds for Borrower | - $24,385 |
| Seller Credits | $0 |
| Adjustments and Other Credits | $0 |
| Total Closing Costs (J) | $12,765 |
| Estimated Cash to Close | -$13,549 |

| D. TOTAL LOAN COSTS (A + B + C) | $10,032 |
|---|---|

## Additional Information About This Loan

| | | | |
|---|---|---|---|
| **LENDER** | New American Funding, LLC | **MORTGAGE BROKER** | |
| NMLS/ PA LICENSE ID | 6606 / 43834.015 | NMLS/____ LICENSE ID | 2169416 |
| **LOAN OFFICER** | Shawn Wainwright | **LOAN OFFICER** | |
| NMLS/ PA LICENSE ID | 918316 / 109275 | NMLS/____ LICENSE ID | |
| **EMAIL** | Shawn.Wainwright@nafinc.com | **EMAIL** | |
| **PHONE** | 330-840-5618 | **PHONE** | |

**Use these measures to compare this loan with other loans.**

| In 5 Years | $65,905 | Total you will have paid in principal, interest, mortgage insurance, and loan costs. |
|---|---|---|
| | $15,052 | Principal you will have paid off. |
| Annual Percentage Rate (APR) | 8.709 % | Your costs over the loan term expressed as a rate. This is not your interest rate. |

LOAN ESTIMATE • GTRIDLEJ_S 0720 Page 2 of 3 · LOAN ID # 1001748263
GTRIDLEJ (INI)



**Total Interest Percentage (TIP)** 89.768 % The total amount of interest that you will pay over the loan term as a

percentage of your loan amount.

# In

# Process

| | |
|---|---|
| **Appraisal** | We may order an appraisal to determine the property's value and charge you for this appraisal. We will give you a copy of any appraisal, even if your loan does not close. You can pay for an additional appraisal for your own use at your own cost. |
| **Assumption** | If you sell or transfer this property to another person, we<br>[x] will allow, under certain conditions, this person to assume this loan on the original terms.<br>[ ] will not allow assumption of this loan on the original terms. |
| **Homeowner's Insurance** | This loan requires homeowner's insurance on the property, which you may obtain from a company of your choice that we find acceptable. |
| **Late Payment** | If your payment is more than 15 days late, we will charge a late fee of 4% of the principal and interest overdue. |
| **Liability after Foreclosure** | Taking this loan could end any state law protection you may currently have against liability for unpaid debt if your lender forecloses on your home. If you lose this protection, you may have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information. |
| **Refinance** | Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan. |
| **Servicing** | We intend<br>[x] to service your loan. If so, you will make your payments to us.<br>[ ] to transfer servicing of your loan. |

## Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

_Signed by_

2/5/2025 | 07:46:59 PST

Maryann Butler                    Date



To be completed by the Lender:
Lender Loan No./Universal Loan Identifier 549300E2UX99HKDBR481100174826344        Agency Case No. 446-6285091-703

# Uniform Residential Loan Application

Verify and complete the information on this application. If you are applying for this loan with others, each additional Borrower must provide information as directed by your Lender.

## Section 1: Borrower Information. This section asks about your personal information and your income from employment and other sources, such as retirement, that you want considered to qualify for this loan.

**Name** *(First, Middle, Last, Suffix)*
Maryann Butler
**Alternate Names**– List any names by which you are known or any names *under which credit was previously received (First, Middle, Last, Suffix)*

**Type of Credit**
   I am applying for **individual credit.**
   I am applying for **joint credit.** Total Number of Borrowers:

   Each Borrower intends to apply for joint credit. *Your initials:*

**Marital Status**          **Dependents** *(not listed by another Borrower)*
   Married                 Number 0
   Separated               Ages 0

**Social Security Number** 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
*(or Individual Taxpayer Identification Number)*

| | |
|---|---|
| **Date of Birth** *(mm/dd/yyyy)* | **Citizenship** |
| 03/26/1966 | ◉ U.S. Citizen |
| | ○ Permanent Resident Alien |
| | ○ Non-Permanent Resident Alien |

**List Name(s) of Other Borrower(s) Applying for this Loan**
*(First, Middle, Last, Suffix) - Use a separator between names*

◉
○

○
○
◉

**Contact Information**
**Home Phone** 717-288-9726
**Cell Phone** 717-424-8220
**Work Phone** Ext. *Reciprocal Beneficiary Relationship)*

# In Process

*(Single, Divorced, Widowed, Civil Union, Domestic Partnership, Registered* ○   **Email** mfmallah87@icloud.com ○

☒

**Current Address**
Street 1823 State Street                                                              Unit #
City Harrisburg          State PA      ZIP 17103     ○ Country US
How Long at Current Address? 8      Years      Months    **Housing**   No primary housing expense  ○ Own  ○ Rent ($_____/month)
☒
**If at Current Address for LESS than 2** years, list Former Address      *Does not apply*

GURLA20_S_0718

Street       Unit #

City     State    ZIP     Country

How Long at Former Address?    Years    Months    **Housing**    No primary housing expense    Own    Rent ($     /month)

**Mailing Address – if different from Current Address**    *Does not apply*

Street       Unit #

City     State    ZIP     Country

*Does not apply*

| | | |
|---|---|---|
| **Employer or Business Name** Teksystems | Phone 717-395-9946 | **Gross Monthly Income** |
| Street 4507 N Front St | Unit # #301 | Base | $3,206.67 /month |
| City Harrisburg | State PA   ZIP 17110   Country US | Overtime | $0.00 /month |

**Position or Title** CSR      **Check if this statement applies:**      Bonus    $0.00 /month

**Start Date** 06 / 28 / 2023   *(mm/dd/yyyy)*    I am employed by a family member,    Commission    $0.00 /month

How long in this line of work?   2 Years   Months    property seller, real estate agent, or other    Military

party to the transaction.

Entitlements    /month

**Check if you are the Business**    I have an ownership share of less than 25%.    **Monthly Income (or Loss)**    Other    $0.00 /month

**Owner or Self-Employed**    I have an ownership share of 25% or more.    **TOTAL**    $3,206.67 /month

*Does not apply*

Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

1 of 10



---

**1d. IF APPLICABLE, Complete Information for Previous Employment/Self Employment and Income**    *not apply* Provide at least 2 years of current and previous employment and income.

| | | |
|---|---|---|
| **Employer or Business Name** Molina Healthcare | Unit # | **Previous Gross Monthly** |
| Street 3000 Corporate Exchange | IP 43231 | **Income**      /month |
| City Columbus | State OH   Z   Country US | |

**Position or Title** Enrollmenrt Specialist

**Start Date** 01 / 30 / 2023   *(mm/dd/yyyy)*    ☐ **Check if you were the Business**

**End Date** 06 / 30 / 2023   *(mm/dd/yyyy)*    **Owner or Self-Employed**

**1e. Income from Other Sources**    ☒ *Does not apply*

## Section 2: Financial Information — Assets and Liabilities. This section asks about things

you own that are worth money and that you want considered to qualify for this loan. It then asks about your liabilities (or debts) that you pay each month, such as credit cards, alimony, or other expenses.

**2a. Assets - Bank Accounts, Retirement, and Other Accounts You Have**

**Include all accounts below. Under Account Type, choose from the types listed here:**

• Checking    • Certificate of Deposit    • Stock Options    • Bridge Loan Proceeds    • Trust Account

**Borrower Name:** Maryann Butler      GURLA20_S 0718

Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003 *Effective 1/2021*

2 of 10

GURLA20S (POD)

• Savings     • Mutual Fund     • Bonds   • Individual Development   • Cash Value of Life Insurance • Money Market      • Stocks     •
Retirement (e.g., 401k, IRA)   Account     (used for the transaction)

| Account Type – use list above | Financial Institution | Account Number | Cash or Market Value |
|---|---|---|---|
| Checking Account | | 1245 | $500.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Provide TOTAL Amount Here | | $500.00 |

**In Process**

| 2b. Other Assets and Credits You Have | ☒ *Does not apply* |
|---|---|

**2c. Liabilities - Credit Cards, Other Debts, and Leases that You Owe**     ☐ *Does not apply*

List all liabilities below (except real estate) and include deferred **payments.** Under Account Type, choose from the types listed here:
• Revolving (e.g., credit cards) • Installment (e.g., car, student, personal loans) • Open 30-Day (balance paid monthly) • Lease (not real estate) • Other

| Account Type – use list above | Company Name | Account Number | Unpaid Balance | To be paid off at or before closing | Monthly Payment |
|---|---|---|---|---|---|
| Installment | JEFFERSON CAPITAL SYST | 3937313662003 | $29,280.00 | ☐ | $146.40 |
| Installment | MEMBERS 1ST F C U | 6738480001 | $7,220.00 | ☒ | $515.00 |
| Revolving | AMEX | 3499928919878483 | $6,402.00 | ☒ | $259.00 |
| Revolving CITI 4100390204959247 $3,867.00 $134.00 Revolving TBOM/ATLS/FORTIVA 7656502093719901 $2,992.00 $94.00 | | | | | |
| Revolving | MEMBERS 1ST FCU | 4999500001079882 | $1,942.00 | ☒ | $39.00 |
| Revolving | COMENITYCB/BOSCOV | 5780976083156535 | $1,861.00 | ☒ | $37.00 |
| Revolving | BK OF AMER | 5199471318946921 | $1,140.00 | ☒ | $80.00 |
| Installment | AFFIRM INC | EXIICWQH | $142.00 | ☒ | $72.00 |
| | | | | ☒ | |

| | *Does not apply* ☒ |
|---|---|



# Section 3: Financial Information — Real Estate. This section asks you to list all properties you currently

own and what you owe on them.     ☐ *I do not own any real estate*

**3a. Property You Own**     If you are refinancing, list the property you are refinancing FIRST.

| Address | Street 1823 State Street | | | | Unit # |
|---|---|---|---|---|---|
| | City Harrisburg | | State PA | ZIP 17103 | Country US |
| Property Value | Status: Sold, | | | For 2-4 Unit Primary or Investment Property | |

Borrower Name: Maryann Butler

GURLA20_S 0718

| | Pending Sale, or Retained | Intended Occupancy: Investment, Primary Residence, Second Home, Other | Monthly Insurance, Taxes, Association Dues, etc. if not included in Monthly Mortgage Payment | Monthly Rental Income | For LENDER to calculate: Net Monthly Rental Income |
|---|---|---|---|---|---|
| $147,000.00 | Retained | Primary Residence | $306.47 | $0.00 | $ |

**Mortgage Loans on this Property** ☐ *Does not apply*

| Creditor Name | Account Number | Monthly Mortgage Payment | Unpaid Balance | To be paid off at or before closing | Type: FHA, VA, Conventional, USDA-RD, Other | Credit Limit (if applicable) |
|---|---|---|---|---|---|---|
| TRUIST MORTGAGE | 9423001798531 | $640.00 | $60,293.00 | ☒ | | |
| | | | | ☐ | | |

**3b. IF APPLICABLE, Complete Information for Additional Property**   ☒ *Does not apply*

**3c. IF APPLICABLE, Complete Information for Additional Property**   ☒ *Does not apply*

## Section 4: Loan and Property Information. This section asks about the loan's purpose and the property you want to purchase or refinance.

# In Process

**Loan Amount** $ 112,179.00   **Loan Purpose**   Purchase   Refinance   Other (specify)   Unit #

**Property Address**   Street 1823 State Street
City Harrisburg ○   ○   State PA   ZIP 17103   County Dauphin

Number of Units 1   **Property Value** $ 147,000.00

**Occupancy**   Primary Residence ⦿   Second Home   Investment Property   **FHA Secondary Residence** ⦿   ○

**1. Mixed-Use Property.** If you will occupy the property, will you set aside space within the property to operate your own business? (e.g., daycare facility, medical office, beauty/barber shop)   NO   YES

lling built on a permanent chassis)   NO   YES   ☒

☒   *Does not apply*

For Purchase Only   *Does not apply*   ☒

*Does not apply*

Include all gifts and grants below. Under Source, choose from the sources listed here:
- Community Nonprofit
- Federal Agency
- Relative
- State Agency
- Lender
- Employer
- Local Agency
- Religious Nonprofit
- Unmarried Partner
- Other

**Borrower Name:** Maryann Butler

GURLA20_S 0718



Borrower Name: Maryann Butler

GURLA20_S 0718

Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003 *Effective 1/2021*

5 of 10

GURLA20S (POD)

# Section 5: Declarations. This section asks you specific questions about the property, your funding, and your past financial history.

**A.** Will you occupy the property as your primary residence?          NO  YES  If YES, have you had an ownership interest in another property in the

If YES, complete (1) and (2) below:
(1) What type of property did you own: primary residence (PR), FHA secondary residence (SR), second home (SH), or investment ○ ⊙
    property (IP)?                                                                                                          ⊙ ○
(2) How did you hold title to the property: by yourself (S), jointly with your spouse (SP), or jointly with another person (O)?

**B.** If this is a Purchase Transaction: Do you have a family relationship or business affiliation with the seller of the property?     NO        YES

**C.** Are you borrowing any money for this real estate transaction (e.g., money for your closing costs or down payment) or NO YES obtaining any
money from another party, such as the seller or realtor, that you have not disclosed on this loan application?

If YES, what is the amount of this money?                                                                                    $ ⊙        ○

**D.** 1. Have you or will you be applying for a mortgage loan on another property (not the property securing this loan) on or     NO        YES before
closing this transaction that is not disclosed on this loan application?

2. Have you or will you be applying for any new credit (e.g., installment loan, credit card, etc.) on or before closing this loan NO     ⊙ YES that is
not disclosed on this application?                                                                                           ⊙ ○

**E.** Will this property be subject to a lien that could take priority over the first mortgage lien, such as a clean energy lien paid NO YES through your
property taxes (e.g., the Property Assessed Clean Energy Program)?                                                           ⊙ ○

|  | ⊙ | ○ |
|---|---|---|
|  | ⊙ | ○ |

**F.** Are you a co-signer or guarantor on any debt or loan that is not disclosed on this application?   **In**

| | ⊙ | ○ |
|---|---|---|
| | ⊙ | ○ |
| | ⊙ | ○ |

## Process

NO        YES

**G.** Are there any outstanding judgments against you?          NO        YES

**H.** Are you currently delinquent or in default on a Federal debt?     NO        YES

**I.** Are you a party to a lawsuit in which you potentially have any personal financial liability?     NO        YES     ⊙ ○

**J.** Have you conveyed title to any property in lieu of foreclosure in the past 7 years?     NO        YES

**K.** Within the past 7 years, have you completed a pre-foreclosure sale or short sale, whereby the property was sold to a NO YES third party and the
Lender agreed to accept less than the outstanding mortgage balance due?

**L.** Have you had property foreclosed upon in the last 7 years?     NO        YES

**M.** Have you declared bankruptcy within the past 7 years?                                                        NO        YES

---



If YES, identify the type(s) of bankruptcy:     Chapter 7      Chapter 11      Chapter 12      Chapter 13

## Section 6: Acknowledgements and Agreements. This section tells you about your legal obligations when you sign this application.

**Acknowledgments and Agreements**

**Definitions:**
- "Lender" includes the Lender's agents, service providers, and any of their successors and assigns.
- "Other Loan Participants" includes (i) any actual or potential owners of a loan resulting from this application (the "Loan"), (ii) acquirers of any beneficial or other interest in the Loan, (iii) any mortgage insurer, (iv) any guarantor, (v) any servicer of the Loan, and (vi) any of these parties' service providers, successors or assigns.

**I agree to, acknowledge, and represent the following:**

**(1) The Complete Information for this Application**
- The information I have provided in this application is true, accurate, and complete as of the date I signed this application.
- If the information I submitted changes or I have new information before closing of the Loan, I must change and supplement this application, including providing any updated/supplemented real estate sales contract.
- For purchase transactions: The terms and conditions of any real estate sales contract signed by me in connection with this application are true, accurate, and complete to the best of my knowledge and belief. I have not entered into any other agreement, written or oral, in connection with this real estate transaction.
- The Lender and Other Loan Participants may rely on the information contained in the application before and after closing of the Loan.
- Any intentional or negligent misrepresentation of information may

result in the imposition of:

(a) civil liability on me, including monetary damages, if a person suffers any loss because the person relied on any

- If this application is created as (or converted into) an "electronic application," I consent to the use of "electronic records" and "electronic signatures" as the terms are defined in and governed by applicable Federal and/or state electronic transactions laws.
- I intend to sign and have signed this application either using my:
  (a) electronic signature; or
  (b) a written signature and agree that if a paper version of this application is converted into an electronic application, the application will be an electronic record, and the representation of my written signature on this application will be my binding electronic signature.
- I agree that the application, if delivered or transmitted to the Lender or Other Loan Participants as an electronic record with my electronic signature, will be as effective and enforceable as a paper application signed by me in writing.

**(5) Delinquency**
- The Lender and Other Loan Participants may report information about my account to credit bureaus. Late payments, missed payments, or other defaults on my account may be reflected in my credit report and will likely affect my credit score.
- If I have trouble making my payments I understand that I may contact a HUD-approved housing counseling organization for advice about actions I can take to meet my mortgage obligations.

**(6) Authorization for Use and Sharing of Information**

# In Process By signing below, in addition to the

representations and agreements made above, I expressly authorize the Lender and Other Loan Participants to obtain, use, and share with each other (i) the loan

Borrower Name: Maryann Butler
Uniform Residential Loan Application                7 of 10
Freddie Mac Form 65 · Fannie Mae Form 1003 *Effective* 1/2021



GURLA20_S 0718
GURLA20S      (POD)

misrepresentation that I have made on this application, and/or
(b) criminal penalties on me including, but not limited to, fine or imprisonment or both under the provisions of Federal law (18 U.S.C. §§ 1001 et seq.).

**(2) The Property's Security**
The Loan I have applied for in this application will be secured by a mortgage or deed of trust which provides the Lender a security interest in the property described in this application.

**(3) The Property's Appraisal, Value, and Condition**
•Any appraisal or value of the property obtained by the Lender is for use by the Lender and Other Loan Participants.
•The Lender and Other Loan Participants have not made any representation or warranty, express or implied, to me about the property, its condition, or its value.

**(4) Electronic Records and Signatures**
•The Lender and Other Loan Participants may keep any paper record and/or electronic record of this application, whether or not the Loan is approved.

application and related loan information and documentation, (ii) a consumer credit report on me, and (iii) my tax return information, as necessary to perform the actions listed below, for so long as they have an interest in my loan or its servicing:
(a) process and underwrite my loan;
(b) verify any data contained in my consumer credit report, my loan application and other information supporting my loan application;
(c) inform credit and investment decisions by the Lender and Other Loan Participants;
(d) perform audit, quality control, and legal compliance analysis and reviews;
(e) perform analysis and modeling for risk assessments;
(f) monitor the account for this loan for potential delinquencies and determine any assistance that may be available to me; and
(g) other actions permissible under applicable law.

Borrower Signature _____ Date *(mm/dd/yyyy)* 2/5/2025 | 07:46:59 PST

Maryann Butler

# Section 7: Military Service. This section asks questions about your (or your deceased spouse's) military service.

**Military Service of Borrower**

**Military Service** – Did you (or your deceased spouse) ever serve, or are you currently serving, in the United States Armed Forces?  ⊙ NO  ○ YES
*If YES, check all that apply:* ☐ Currently serving on active duty with projected expiration date of service/tour ____ / ____ / ____ *(mm/dd/yyyy)*
☐ Currently retired, discharged, or separated from service
☐ Only period of service was as a non-activated member of the Reserve or National Guard Surviving
☐ spouse

# Section 8: Demographic Information. This section asks about your ethnicity, sex, and race.

**Demographic Information of Borrower**

The purpose of collecting this information is to help ensure that all applicants are treated fairly and that the housing needs of communities and neighborhoods are being fulfilled. For residential mortgage lending, Federal law requires that we ask applicants for their demographic information (ethnicity, sex, and race) in order to monitor our compliance with equal credit opportunity, fair housing, and home mortgage disclosure laws. You are not required to provide this information, but are encouraged to do so. You may select one or more designations for "Ethnicity" and one or more designations for "Race." The law provides that we may not discriminate on the basis of this information, or on whether you choose to provide it. However, if you choose not to provide the information and you have made this application in person, Federal regulations require us to note your ethnicity, sex, and race on the basis of visual observation or surname. The law also provides that we may not discriminate on the basis of age or marital status information you provide in this application. If you do not wish to provide some or all of this information, please check below.

**Ethnicity:** Check one or more                    **Race:** Check one or more

Borrower Name: Maryann Butler
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003 *Effective*
1/2021

8 of 10

GURLA20_S 0718
GURLA20S    (POD)

☐ Hispanic or Latino  ☐ American Indian or Alaska Native – Print name of enrolled  ☐ Other Hispanic or Latino – Print origin:

# In Process

☒ Asian  ☐ Mexican  ☐ Puerto Rican  ☐ Cuban  *or principal tribe:*

☒ For example: Argentinean, Colombian, Dominican, Nicaraguan, and so on.  Other Asian – Print race:

☐ Asian Indian  ☐ Chinese  ☐ Filipino
☐ Japanese  ☐ Korean  ☐ Vietnamese  Salvadoran, Spaniard,

Not Hispanic or Latino
I do not wish to provide this information

For example: Hmong, Laotian, Thai, Pakistani, Cambodian, and so on.
☐ Black or African American

**Sex**

Native Hawaiian or Other Pacific Islander

Female  ☐ Native Hawaiian  ☐ Guamanian or Chamorro  ☐ Samoan  Male  ☐ Other Pacific Islander – Print race:
I do not wish to provide this information

For example: Fijian, Tongan, and so on.
White
I do not wish to provide this information

**To Be Completed by Financial Institution *(for application taken in person)*:**

Was the ethnicity of the Borrower collected on the basis of visual observation or surname?  ○  ○
Was the sex of the Borrower collected on the basis of visual observation or surname?  ○  ○
Was the race of the Borrower collected on the basis of visual observation or surname?  ○  ○

**The Demographic Information was provided through:**

○ Face-to-Face Interview (includes Electronic Media w/ Video Component)  Telephone Interview  NO  ○  ○
YES

NO  YES
NO  YES

Fax or Mail  Email or Internet



# Section 9: Loan Originator Information.   To be completed by your Loan Originator.

**Loan Originator Information**

Loan Originator Organization Name  New American Funding, LLC

Address 9150 South Hills Boulevard Suite 260, Broadview Heights, OH  44147

Loan Originator Organization NMLSR ID#  6606          State License ID# 43834.015

Loan Originator Name  Shawn Wainwright

Loan Originator NMLSR ID#  918316          State License ID# 109275

Email Shawn.Wainwright@nafinc.com          Phone 330-840-5618

Signature _____          Date *(mm/dd/yyyy)* 01/29/2025 _____

Borrower Name: Maryann Butler
Uniform Residential Loan Application          10 of 10
Freddie Mac Form 65 · Fannie Mae Form 1003 *Effective*
1/2021

GURLA20_S 0718
GURLA20S (POD)

# In Process

## Uniform Residential Loan Application — Unmarried Addendum

**For Borrower Selecting the Unmarried Status**

**Lenders Instructions for Using the Unmarried Addendum**

The Lender may use the Unmarried Addendum only when a Borrower selected "Unmarried" in Section 1 and the information collected is necessary to determine how State property laws directly or indirectly affecting creditworthiness apply, including ensuring clear title.

For example, the Lender may use the Unmarried Addendum when the Borrower resides in a State that recognizes civil unions, domestic partnerships, or registered reciprocal beneficiary relationships or when the property is located in such a State. "State" means any state, the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States.

**If you selected "Unmarried" in Section 1,** is there a person who is not your legal spouse but who currently has real property rights similar to those of a legal spouse?   NO ◯   YES ◯ 

**If YES, indicate the type of relationship and the State in which the relationship was formed.** For example, indicate if you are in a civil union, domestic partnership, registered reciprocal beneficiary relationship, or other relationship recognized by the State in which you currently reside or where the property is located.

◯ Civil Union   ◯ Domestic Partnership   ◯ Registered Reciprocal Beneficiary Relationship   ◯ Other (explain)

State

GURLA20_S 0718
GURLA20S  (POD)

Freddie Mac Form 65 · Fannie Mae Form 1003 *Effective* 1/2021

# In Process

**Borrower Name:** Maryann Butler
Uniform Residential Loan Application –– Unmarried Addendum
To be completed by the Lender:
Lender Loan No./Universal Loan Identifier
549300E2UX99HKDBR481100174826344



Agency Case No. 446-6285091-703

## Uniform Residential Loan Application — Lender Loan Information

This section is completed by your Lender.

**Community Property State**
At least one borrower lives in a community property state.
The property is in a community property state.

**Transaction Detail**
Conversion of Contract for Deed or Land Contract

Renovation

Construction-Conversion/Construction-to-Permanent

Single-Closing    Two-Closing

**Refinance Type**
No Cash Out
Limited Cash Out
Cash Out

**Refinance Program**
Full Documentation
Interest Rate Reduction
Streamlined without Appraisal
Other

**Energy Improvement**

Mortgage loan will finance energy-related improvements.
Property is currently subject to a lien that could take priority over

GURLA20_S 0718
GURLA20S (POD)

Freddie Mac Form 65 · Fannie Mae Form 1003 *Effective 1/2021*

Construction/Improvement Costs $ the first mortgage lien, such as a clean energy lien paid for through Lot Acquired Date  /  / (mm/dd/yyyy) property taxes (e.g., the Property Assessed Clean Energy program).

Original Cost of Lot $

| **Project Type** | ☐ Condominium | ☐ Cooperative | ☐ Planned Unit Development (PUD) | ☒ Property is not located in a project |

---

**L2. Title Information** e to the Property Will be Held in What Name(s):   **For Refinance:** Title to the Property is **Currently Held in What**

# In Process

Name(s): Maryann Butler
○
○

**Estate Will be Held in**

○ Fee Simple
○ Leasehold Expiration Date     /     /          (mm/dd/yyyy)

**Manner in Which Title Will be Held**

Sole Ownership          Joint Tenancy with Right of Survivorship
Life Estate              Tenancy by the Entirety
Tenancy in Common        Other

○
○  ○
●

**Mortgage Type Applied For**

● Conventional   ○ USDA-RD
○ FHA    VA      Other:

**Amortization Type**

Fixed Rate    Other (explain):
Adjustable Rate If

**Adjustable Rate:**

☐ Initial Period Prior to First Adjustment          (months)
☐ Subsequent Adjustment Period          (months)

**Loan Features**

☐ Balloon / Balloon Term          (months)
☐ Interest Only / Interest Only Term          (months)
Negative Amortization
Prepayment Penalty / Prepayment Penalty Term          (months)
Temporary Interest Rate Buydown / Initial Buydown Rate          %
Other (explain):

○
○
○
○
○

**Trust Information**

○ Title Will be Held by an Inter Vivos (Living) Trust
Borrower Name(s): Maryann Butler
Uniform Residential Loan Application — Lender Loan Information
○ Title Will be Held by a Land Trust
**Indian Country Land Tenure**

Fee Simple On a Reservation
Individual Trust Land (Allotted/Restricted)
Tribal Trust Land On a Reservation
Tribal Trust Land Off Reservation
Alaska Native Corporation Land   ●
                                  ○

| **Terms of Loan** | | **Mortgage Lien Type** | |
| Note Rate 7.250 | % | First Lien | |
| Loan Term 240 | (months) | Subordinate Lien | |

**Proposed Monthly Payment for Property**

| First Mortgage (P & I) | $ 886.64 |
| Subordinate Lien(s) (P & I) | $ |
| Homeowner's Insurance $ 150.00 Supplemental Property | |
| Insurance $ Property Taxes  $ 111.01 | |
| Mortgage Insurance | $ 45.46 |
| Association/Project Dues (Condo, Co-Op, PUD) $ Other | |
| | $ |
| **Total** | $ 1,193.11 |

**DUE FROM BORROWER(S)**

**A.** Sales Contract Price          $

**B.** Improvements, Renovations, and Repairs     $

**C.** Land (if acquired separately)     $

Freddie Mac Form 65 · Fannie Mae Form 1003 *Effective* 1/2021

GURLA20_S 0718
GURLA20S  (POD)

**D.** (For Refinance: Balance of Mortgage Loans on the Property to be paid off in the Transaction See Table 3a. Property You Own)      $ 60,293.00

**E.** (Credit Cards and Other Debts Paid Off See Table 2c. Liabilities — Credit Cards, Other Debts, and Leases that You Owe) $ 25,572.00

**F.** Borrower Closing Costs (including Prepaid and Initial Escrow Payments)      $ 8,480.82

**G.** Discount Points   $ 3,537.00

**H. TOTAL DUE FROM BORROWER(s) (Total of A thru G)** $ 97,882.82

**TOTAL MORTGAGE LOANS**

**I.** Loan Amount
  Loan Amount Excluding Financed Mortgage Insurance (or Mortgage Insurance Equivalent) $ 110,250.00
  Financed Mortgage Insurance (or Mortgage Insurance Equivalent) Amount $ 1,929.00      $ 112,179.00

**J.** Other New Mortgage Loans on the Property the Borrower(s) is Buying or Refinancing
  (See Table 4b. Other New Mortgage Loans on the Property You are Buying or Refinancing)      $

**K. TOTAL MORTGAGE LOANS (Total of I and J)**      $ 112,179.00

**TOTAL CREDITS**

**L.** Seller Credits (Enter the amount of Borrower(s) costs paid by the property seller      $

**In Process**

**M.** Lease Purchase Fund, Lot Equity, Relocation Funds, Sweat Equity, Trade Equity, Other) Other Credits (Enter the sum of all other credits
— Borrower Paid Fees, Earnest Money, Employer Assisted Housing,      $

**N. TOTAL CREDITS (Total of L and M)**      $

**CALCULATION**

TOTAL DUE FROM BORROWER(s) (Line H)      $ 97,882.82

LESS TOTAL MORTGAGE LOANS (Line K) AND TOTAL CREDITS (Line N)      - $ 112,179.00

**Cash From/To the Borrower (Line H minus Line K and Line N)**      ($ 14,296.18)
**NOTE:** This amount does not include reserves or other funds that may be required by the Lender to be verified.

14 of 10

GURLA20_S 0718
GURLA20S

Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

(POD)



**Borrower Name(s):** Maryann Butler
Uniform Residential Loan Application — Lender Loan Information

GURLA20_S 0718
GURLA20S

Freddie Mac Form 65 · Fannie Mae Form 1003
*Effective 1/2021*

# BORROWER CONSENT TO THE USE OF TAX RETURN INFORMATION

Borrower(s):     **Maryann Butler**

Date:          **02/04/2025**

Loan Number:   **1001748263**

**1823 State Street, Harrisburg, PA 17103**

Property Address:

Lender/Broker:   **New American Funding, LLC**

I understand, acknowledge, and agree that the Lender and Other Loan Participants can obtain, use and share tax return information for purposes of (i) providing an offer; (ii) originating, maintaining, managing, monitoring, servicing, selling, insuring, and securitizing a loan or (iii) as otherwise permitted by applicable laws, including state and federal privacy and data security laws.

I understand, acknowledge, and agree that the Lender and other Loan Participants can obtain, use **In Process** and share personal tax return information and, as applicable, business tax return information from every business tax return for which my Lender has obtained a form 4506-T.

The Lender includes the Lender's affiliates, agents, service providers and any of aforementioned parties' successors and assigns. The Other Loan Participants includes any actual or potential owners of a loan resulting from your loan application, or acquirers of any beneficial or other interest in the loan, any mortgage insurer, guarantor, any servicers or service providers for these parties and any of aforementioned parties' successors and assigns.

## ACKNOWLEDGEMENT

**By signing below, you hereby acknowledge reading and understanding all of the information disclosed above, and receiving a copy of this disclosure on the date indicated below.**

| | |
|---|---|
| _Signed by:_ <br> _____ <br> —OE38DC9ADD3442A | 2/5/2025 \| 07:46:59 PST |
| Maryann Butler | Date |
| | Date |



NAF_BORROWER CONSENT TO Rev. 03.10.2023
THE USE OF TAX RETURN
INFORMATION (INI)

**LOAN #: 1001748263**

**New American Funding, LLC**
**14511 Myford Road, Suite 100**
**Tustin, CA 92780**

## HAZARD INSURANCE ENDORSEMENT LETTER

POLICY NUMBER:           **To Be Determined**

AGENT'S NAME AND ADDRESS: **To Be Determined**

INSURED'S NAME:          **Maryann Butler**

PROPERTY ADDRESS:        **1823 State Street**
                         **Harrisburg, PA 17103**

Please     make     the     changes     requested     below: **In**

# Process

X_____ Correct Mortgage Clause to read:
   **New American Funding, LLC ISAOA/ATIMA**
   **P.O. Box 5071**
**Troy, MI 48007-5071**
**Servicing Loan #:**

_____ Change Property address to:

_____ Change Insured's Name to:

_____ The amount of coverage is not sufficient.  Please increase coverage _____
to



Other:
___

Please send the endorsement(s) directly to:

**New American Funding, LLC ISAOA/ATIMA**
**P.O. Box 5071 Troy,**
**MI 48007-5071**
**Servicing Loan #:**

NAF Hazard Insurance Endorsement Letter - EDRev. 03.15.23

**Technology Consent Agreement**

Date:    2/4/2025
Lender: New American Funding, LLC
Borrower Name:       Maryann  Butler
Address:               1823 State Street, Harrisburg, PA 17103
Borrower Cell:        717-424-8220
Borrower Home:      717-288-9726
Borrower Work:       717-395-9946
Borrower Email Address: mfmallah87@icloud.com

New American Funding, LLC ("NAF") and its partners, which can be found at
https://www.newamericanfunding.com/legal/partners/  (which list may be modified from time to time)
("Partners"), will use technology to provide you, the person(s) making a loan inquiry, loan application or
obtaining a loan, with important communications and updates.

This is a big part of why NAF garners such high satisfaction from our customer reviews. NAF's dedication
to providing great customer service continues after loan closing as you are kept updated on loan
products, real estate and/or home-related products or services that may be of interest to you, and the
servicing of any of your loans by New American Funding, LLC
. To facilitate these high ratings, NAF relies on technology to communicate which aids in our ability to
extend exceptional service. Please help us succeed by reviewing the important information below.

*Consent to Use of Technology* **In    Process**

**Email.**  You agree that NAF and its Partners may communicate with you via email at the email address
specified above, which you may update from time to time.

**Calls and Text Messages.** You authorize NAF and parties calling on NAF's behalf to call you and send
you SMS/MMS text messages for telemarketing, advertising and servicing purposes regarding a mortgage
loan, real estate, and home-related products or services at the telephone number(s) listed above, which
you may update from time to time, using an autodialer, pre-recorded or artificial voice, AI generative voice
and SMS/MMS text message, even if the telephone number you provided is a cellular phone or other
service for which you may be charged. If you have provided a cellular telephone number above, you
represent that you are the wireless subscriber or authorized user and have the authority to give this
consent.  Further, you agree to notify NAF any time a telephone number you have provided to NAF
changes.  You understand that you are not required to provide this consent in order to obtain goods or
services from NAF and that you can be connected with us without providing consent by calling (800) 450-
2010.

You understand and agree that if you would like to revoke your consent to be contacted by autodialer
and/or SMS text messages, you may exclusively opt-out of the receipt of such communications by
contacting NAF at CustomerService@nafinc.com or (800) 450-2010 ext. 7100. This is the exclusive
mechanism for opt-outs and we will act on the opt-out request in a reasonable period of time.

NAF Technology Agreement      1 of 2                          Rev.  03.19.23  You authorize  NAF  and  its Partners to contact you even if your telephone number or email address appears on a NAF internal Do Not Call / Do Not Email List, within a State or National Do Not Call Registry, or any other Do Not Contact List.

By signing below, you hereby agree that NAF and its partners can contact you as described above.

Signed by:

_____      2/5/2025 | 07:46:59 PST      _____

9E36DC9ADD3442A

**Maryann  Butler**                          Date                                                      Date

# In Process

NAF Technology Agreement                    2 of 2



Rev. 03/19/23
**LOAN #: 1001748263**

## FHA/VA NOTICE TO APPLICANTS

This is notice to you, as required by the Right to Financial Privacy Act of 1978, that the Veterans Administration or Department of Housing and Urban Development, whichever is appropriate, has the right of access to financial records held by financial institutions in connection with the consideration or administration of assistance to you. Financial records involving your transactions will be available to VA or HUD without further notice or authorization, but will not be disclosed or released to another government agency or department without consent, except as required or permitted by law.

Signed by:

2/5/2025 | 07:46:59 PST

**MARYANN BUTLER** **DATE** In Process

ICE Mortgage Technology, Inc.    GVANTJ  0502 GVANTJ (INI)



# Affiliated Business Arrangement Disclosure Statement

| Borrower(s):<br>**Maryann  Butler** | Property:<br>**1823 State Street<br>Harrisburg, PA 17103** |
|---|---|
| Broker/Lender:<br>**New American Funding, LLC<br>9150 South Hills Boulevard Suite 260<br>Broadview Heights, OH 44147** | Date:<br>**02/04/2025** |

This is to give you notice that **New American Funding, LLC** has a business relationship with NAF Homes, Inc. and Empower Settlement Services, LLC and NAF Insurance Services, LLC.  The nature of the relationship (and percentage of ownership) is: The Family Trust owners who indirectly own the membership shares of New American Funding, LLC also are the indirect owners (100%) of NAF Homes, Inc. and The Family Trust owners who indirectly own the membership shares of New American Funding, LLC also are indirectly hold a majority membership interest (80%) in Empower Settlement Services, LLC and The Family Trust owners who indirectly own the membership shares of New American Funding, LLC also are the indirect owners (100%) of NAF Insurance Services, LLC.

Because of these relationships, this referral may provide **New American Funding, LLC** a financial or other benefit.

( **X** )    **A.** Set forth below is the estimated charge or range of charges for the settlement services listed.  You are NOT required to use the listed provider(s) as a condition for ( **X** ) settlement of your loan on, or ( **X** ) purchase, sale, or refinance of, the subject property.

THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH 

SIMILAR SERVICES.  YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| Provider and Settlement Service | Charge or Range of Charges |
|---|---|
| **NAF Homes, Inc. - Real Estate Brokerage Services** | **Real estate commissions are typically 2% - 6% of the purchase price and paid by the seller. NAF Homes, Inc. matches borrowers with real estate agents.  NAF Homes, Inc. is eligible to receive a portion of commissions pursuant to broker participation agreements.** |
| **Empower Settlement Services, LLC - Settlement and Closing** | **$400 - $700** |

| Empower Settlement Services, LLC - Title Insurance Services | $120 - $5,000 |
|---|---|
| | |
| | |
| NAF Insurance Services, LLC – Homeowner's Insurance | $139 - $5,000 annual premium depending on product and associated risk assessments (e.g., age of home, credit score, past claims of the insured, etc.) |

( )   **B.** Set forth below is the estimated charge or range of charges for the settlement services of an attorney, credit reporting agency, or real estate appraiser that we, as your lender, will require you to use, as a condition of your loan on this property, to represent our interest in the transaction.

| Provider and Settlement Service | Charge or Range of Charges |
|---|---|
| | |

**Acknowledgement**



NAF Affiliated Business Disclosure                    Rev. 10.04.23 I/We have read this disclosure form and understand that **New American Funding, LLC** is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

| | | |
|---|---|---|
| _Signed by:_ [signature] | 2/5/2025 \| 07:46:59 PST | |
| 0E38DC9ADD3442A | | |
| Maryann Butler | Date | Date |

# In Process



Rev. 10.04.23

## BORROWER'S AUTHORIZATION

| | | | |
|---|---|---|---|
| **Borrower(s):** | Maryann Butler | **Date:** | 02/04/2025 |
| | | **Loan No.:** | 1001748263 |
| **Property Address:** | 1823 State Street<br>Harrisburg, PA 17103 | | |
| **Lender:** | New American Funding, LLC | | |

**AUTHORIZATION:**

I/We have applied for a mortgage with New American Funding, LLC ("Lender") (NAF). As previously communicated to you, I/We hereby authorize the Lender to obtain and review my/our consumer credit report(s).

Lender is hereby authorized to release any of my/our information required by Lender to complete the processing of this loan request. Necessary information may include employment and/or income information, savings deposits, checking accounts, consumer credit reports, consumer credit balances, payment and history, mortgage payment records and subordination agreements/requirements.

A photocopy of this letter will be deemed acceptable authorization for release of any of the above information or

documentation requested by Lender. **In Process**

**Intent to Proceed:**

By my/our signature(s) below, I/we hereby acknowledge receipt of my/our Loan Estimate ("LE") and would like to proceed with the loan application covered by the LE.

**Intent to Apply Jointly:**

If this is an application for joint credit, Borrower and Co-Borrower(s) each agree that by our signatures below we intend to apply jointly for this credit.

### THIS FORM MUST BE SIGNED AND RETURNED IN ORDER TO COMPLETE THE PROCESSING OF THIS LOAN APPLICATION.



2/5/2025 | 07:46:59 PST

Signature      Date      Signature      Date
Social Security # XXX-XX-4679      Social Security # XXX-XX-

Signature      Date      Signature      Date
Social Security # XXX-XX-      Social Security # XXX-XX-

NAF Borrower's Authorization      Rev. 03/10/2023
Rev. 05/24

**FACTS**      WHAT DOES NEW AMERICAN FUNDING DO WITH YOUR PERSONAL INFORMATION?

| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law requires us to tell you how we collect, share, and protect your personal information. Please also read this notice carefully to understand what we do. |
|---|---|
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• **Social Security Number** and **Credit History**<br>• **Employment Information** and **Income**<br>• **Transaction History** and **Mortgage Rates and Payments** |
| How? | All financial companies need to share **Customers'** personal information to run their everyday business. In the section below, we list the reasons financial companies can share their **Customers'** personal information; the reasons *New American Funding* chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information. | Does *New American Funding* share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**— such as to process orders and legal investigations, or report to credit bureaus. In P your transactions, maintain your account(s), respond to court | Yes | No |
| **For our marketing purposes**— to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes**— information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | Yes | Yes |

| To limit our sharing | • Call **800-450-2010** and select Customer Service or<br><br>• Visit us online:  **https://naf.com/manage-private-info-use**<br><br>Please note:<br><br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|

| Questions? | Call **800-450-2010**  or go to    **www.newamericanfunding.com** |
|---|---|



NAF Privacy Policy – Affiliate  Opt Out

Rev. 05/24

**Page 2**

| **Who we are** | |
|---|---|
| **Who is providing this notice?** | *New American Funding, LLC and its affiliates NAF Insurance Services, LLC, NAF Cash, LLC and NAF Homes, Inc.* |

| **What we do** | |
|---|---|
| **How does *New American Funding* protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law.  These measures include computer safeguards and secured files and buildings. |
| **How does *New American Funding* collect my personal information?** | We collect your personal information, for example, when you <ul><li>Apply for a loan</li><li>Give us your income information</li><li>Give us your employment history</li><li>Provide your mortgage information</li><li>Show your government-issued ID</li></ul> We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only <ul><li>sharing for affiliates' everyday business purposes – information about your creditworthiness</li><li>affiliates from using your information to market to you</li><li>sharing for nonaffiliates to market to you</li></ul> State laws and individual companies may give you additional rights to limit sharing.  See below for more on your rights under state law. |
| **What happens when I limit sharing for an** **In** **account I hold jointly** **with somebody else?** | **Process** Your choices will apply to everyone on your account. |

| **Definitions** | |
|---|---|
| **Affiliates** | Companies related by common ownership or control.  They can be financial and nonfinancial companies. <ul><li>*Our affiliates include financial companies such as NAF Homes, Inc., Empower Escrow, Inc., Empower Settlement Services, LLC, NAF Cash, LLC, and NAF Insurance Services, LLC.*</li></ul> |
| **Nonaffiliates** | Companies not related by common ownership or control.  They can be financial and nonfinancial companies. <ul><li>*Nonaffiliates we share with can include other financial services companies, insurance companies, or other consumer service providers.*</li></ul> |

| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |
| | • *Our joint marketing partners include other financial services companies and other consumer service providers.* |

**Other important information**

**State Law.** We follow state law if state law provides you with additional privacy protections.



NAF Privacy Policy – Affiliate  Opt Out

# Notice to Homeowner

**Assumption of HUD/FHA Insured Mortgages**
**Release of Personal Liability**

| FHA Case Number: **446-6285091-703** |
| --- |
| Loan Number: **1001748263** |

You are legally obligated to make the monthly payments required by your mortgage (deed of trust) and promissory note.

The Department of Housing and Urban Development (HUD) has acted to keep investors and non-creditworthy purchasers from acquiring one-to-four family residential properties covered by certain FHA-insured mortgages. There are minor exceptions to the restriction on investors: loans to public agencies and some non-profit organizations, Indian tribes or service persons; and loans under special mortgage insurance programs for property sold by HUD, rehabilitation loans or refinancing of insured mortgages. Your lender can advise you if you are included in one of these exceptions.

HUD will therefore direct the lender to accelerate this FHA-insured mortgage loan if all or part of the property is sold or transferred to a purchaser or recipient (1) who will not occupy the property as his or her principal residence, or (2) who does occupy the property but whose credit has not been approved in accordance with HUD requirements. This policy will apply except for certain sales or transfers where acceleration is prohibited by law.

When a loan is accelerated, the entire balance is declared "immediately due and payable." Since HUD will not approve the sale of the property covered by this mortgage to an investor or to a person whose credit has not been approved, you, the original homeowner, would remain liable for the mortgage debt even though the title to the property might have

# In

been transferred to the new buyer. mortgage, you are still liable for the mortgage debt unless you obtain a

# Pro ces s

release from liability from your mortgage lender.  Even if you sell your home by letting an approved purchaser (that is, a creditworthy owner-occupant) assume your FHA-approved lenders have been instructed by HUD to prepare such a release when an original homeowner sells his or her property to a creditworthy purchaser who executes an agreement to assume and pay the mortgage debt and thereby agrees to become the substitute mortgagor. The release is contained in Form HUD-92210-1, ("Approval of Purchaser and Release of Seller"). You should ask for it if the mortgage lender does not provide it to you automatically when you sell your home to a creditworthy owner-occupant purchaser who executes an agreement to assume personal liability for the debt. When this form is executed, you are no longer liable for the mortgage debt.

You must sign and date this Notice as indicated, return one copy to your lender as proof of notification and keep one copy for your records.

Signed by:

_MARYANN BUTLER_

**MARYANN BUTLER**

2/5/2025 | 07:46:59 PST

**DATE**

Instructions to Lender: A copy of this Notice must be given to the mortgagor(s) on or before the date of settlement. You should retain a signed copy in the origination file.

GNTOJ 0816
GNTOJ (INI)



# FHA APPLICATION OF UNUSED ESCROW FUNDS AUTHORIZATION

**Maryann Butler**Borrower(s):                      Date: **February 4, 2025**

Loan Number: **1001748263**

Property Address: **1823 State Street**
**Harrisburg, PA 17103**

Lender: **New American Funding, LLC**          Loan Originator: **Shawn Wainwright**
License #: **43834.015**
NMLS #: **6606**                              License #: **109275**
                                              NMLS #: **918316**

Your existing mortgage contains funds that have been held in an escrow account which will be used to satisfy any outstanding real estate taxes, homeowners insurance, annual assessments, and monthly mortgage insurance premiums, if applicable. In the event there are remaining funds after satisfying these items, the amount may be applied to your new loan.

Please select the manner in which you authorize **New American Funding, LLC**

# In Process

to apply these funds.

☒ Reduce the payoff amount of the existing mortgage.

☒ Pay closing costs on the new mortgage.

☒ Buydown the interest rate on the new mortgage.

☒ Establish an escrow account on the new mortgage.

☐ Other: _____

## ACKNOWLEDGEMENT

**By signing below, you hereby acknowledge reading and understanding all of the information disclosed above, and receiving a copy of this disclosure on the date indicated below.**

Signed by
*[signature]*
DS-3BOC&A00D3447A

2/5/2025 | 07:46:59 PST

**MARYANN BUTLER**                                                          **DATE**

ICE Mortgage Technology, Inc.

ICE Mortgage Technology, Inc.

GFHAUEJ  0414
GFHAUEJ (INI)



# OCCUPANCY AND FINANCIAL STATEMENT

Borrower(s):  **Maryann Butler**

Date: **February 4, 2025**

Loan Number: **1001748263**

Property Address: **1823 State Street**
**Harrisburg, PA 17103**

Lender/Broker: **New American Funding, LLC**

Loan Originator: **Shawn Wainwright**

**License #:  43834.015**
**NMLS #:  6606**

**License #:  109275**
**NMLS #:  918316**

1. **Occupancy:** [check one box only]

   [x] **Principal Residence.** Borrower either currently occupies and uses the Property as Borrower's principal residence, or Borrower will occupy and use the Property as Borrower's principal residence within 60 days after Borrower signs the Security Instrument. Borrower will continue to occupy and use the Property as Borrower's principal residence to occupy and use the Property as Borrower's principal residence within the time frames set

   forth above if Lender **In Process** for at least one

   (1) year from the date that Borrower first occupies the Property. However, Borrower will not have
   agrees in writing that Borrower does not have to do so. Lender may not refuse to agree unless the refusal is reasonable. Borrower will also not have to occupy and use the Property as Borrower's principal residence within the time frames set forth above if extenuating circumstances exist which are beyond Borrower's control.

   ☐ **Second Home.** Borrower will occupy, and will use, the Property as Borrower's second home. Borrower will keep the Property available for Borrower's exclusive use and enjoyment at all times, and will not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property.

   ☐ **Investment.** The Property is owned and held by Borrower as an investment property. Borrower does not now occupy or use the property, and has no present intention to occupy or use the Property in the future, either as Borrower's principal residence or second home. Borrower now occupies and uses other property or properties as Borrower's principal residence and/or second home.

2. **Financial Status:** Borrower understands that Lender is making the Loan based upon statements and representations contained in, or made in connection with, the residential mortgage loan application given by Borrower to Lender (the "Loan Application"). Borrower hereby certifies that the information provided by Borrower contained in, or made in connection with, the Loan Application related to Borrower's financial status (such as Borrower's employment, income, available cash, debts, expenses, credit obligations, and the like), has not changed significantly and that the information accurately reflects Borrower's current financial status. Borrower certifies further

that Borrower has not received a layoff notice or otherwise has knowledge of a pending layoff, and Borrower, to the best of Borrower's knowledge and belief, is unaware of any events or circumstances in the foreseeable future that would impair or have an adverse effect on Borrower's ability to fulfill Borrower's Loan obligations, including, but not limited to Borrower's obligation to make required periodic payments.

3. **False, Misleading or Inaccurate Statements:** Borrower understands that Borrower will be in default under the terms of the Security Instrument if, during the application process for the Loan, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan, including, but not limited to, representations concerning Borrower's occupancy of the Property and Borrower's financial status. Borrower understands further that any intentional or negligent misrepresentation(s) of the

Page 1 of 2

GOCFIJ  0315
GOCFIJ (INI)



ICE Mortgage Technology, Inc.

**LOAN #: 1001748263**

information contained in, or made in connection with, the Loan Application may result in severe civil and/or criminal penalties, including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers and any other person who may suffer any loss due to reliance upon any misrepresentation(s) which Borrower has made on or in connection with the Loan Application.

Signed by:

_____    2/5/2025 | 07:46:59 PST

**MARYANN BUTLER**    DATE

# In Process

GOCFIJ  0315
GOCFIJ (INI)



ICE Mortgage Technology, Inc.

# PENNSYLVANIA LOCK-IN AGREEMENT

Borrower(s): **Maryann Butler**                    Date: **February 4, 2025**

Loan Number: **1001748263**

Property Address: **1823 State Street**

**Harrisburg, PA 17103** Lender: **New American**

**Funding, LLC**                                    Loan Originator: **Shawn Wainwright**

License #: **43834.015**                            License #: **109275**
NMLS #: **6606**                                    NMLS #: **918316**

This disclosure is provided to you pursuant to 7 Pa. Cons. Stat. § 6121 (11).

This Agreement contains the terms of the loan for which you applied. This is not a commitment or approval.

• This Lock-In Rate expires at **3:00 PM**     on: **March 20, 2025**

• This agreement locks-in the following items: **In Process**

[x] The interest rate, which is:

[x] **7.250 %**

[ ] determined as follows:

[x] Discount points, which are **3.153**          percent of the loan amount.

You [ ] agree [x] do not agree to pay a Lock-In Fee of     **N/A**

## ACKNOWLEDGEMENT

**By signing below, you hereby acknowledge reading and understanding all of the information disclosed above, and receiving a copy of this disclosure on the date indicated below.**

Signed by:

2/5/2025 | 07:46:59 PST

**MARYANN BUTLER**                                                        **DATE**

ICE Mortgage Technology, Inc.

PARLAJ 0117
PARLAJ (INI)



## U. S. Department of Housing and Urban Development

### NOTICE TO PURCHASERS

## THE IMPORTANCE OF A HOME INSPECTION

HUD Does NOT WARRANT THE CONDITION OF A PROPERTY. It is important for you to have a home inspection performed on the property you wish to purchase in order to identify any possible defects. Up to $200 of the cost to perform the inspection may be financed into your mortgage. Names of home inspection companies can be found in the yellow pages of your telephone directory under the heading "Home Inspection Services."

## WATCH OUT FOR LEAD-BASED PAINT POISONING!

If the home you intend to purchase was built before 1978, it may contain lead-based paint. About three out of every four pre-1978 buildings have lead-based paint.

### WHAT IS LEAD POISONING?

Lead poisoning means having high concentrations of lead in the body.

**LEAD CAN:**

- Damage a child's brain, nervous system, kidneys, hearing, or coordination. 

 ☐ Cause major health problems, especially in children under 7 years old.
- Affect learning.
- Cause behavior problems, blindness, and even death.
- Cause problems in pregnancy and affect a baby's normal development.

### WHO GETS LEAD POISONING?

*Anyone can get it,* but children under 7 are at the greatest risk, because their bodies are not fully-grown and are easily damaged. The risk is worse if the child:

- Lives in an older home (built/constructed before 1978, and even more so before 1960).
- Does not eat regular meals (an empty stomach accepts lead more easily).
- Does not eat enough foods with iron or calcium.
- Has parents who work in lead-related jobs.
- Has played in the same places as brothers, sisters, and friends who have been lead poisoned. (Lead poison *cannot* be spread from person to person. It comes from contact with lead.)

Women of childbearing age are also at risk, because lead poisoning can cause miscarriages, premature births, and the poison can be passed onto their unborn babies.

## WHERE DOES IT COME FROM?

The lead hazards that children most often touch are *lead dust, leaded soil,* loose chips and chewable surfaces painted with lead-based paint. A child may be harmed when it puts into its mouth toys, pacifiers, or hands that have leaded soil or lead dust on them. Lead also comes from:

- Moving parts of windows and doors that can make lead dust and chips.
- Lead-based paint on windows, doors, wood trim, walls and cabinets in kitchens and bathrooms, on porches, stairs, railings, fire escapes and lampposts.
- Soil next to exterior of buildings that have been painted with lead-based paint and leaded gasoline dust in soil near busy streets. ☐ Drinking water. (pipes and solder)



- Parents who may bring lead dust home from work on skin, clothes, and hair.
- Colored newsprint and car batteries.
- Highly glazed pottery and cookware from other countries. ☐ Removing old paint when refinishing furniture.

In recent years some uses of lead in products that could cause lead poisoning have been reduced or banned. This is true for lead in gasoline, lead in solder used in water pipes, and lead in paint. Still, a great deal of lead remains in and around older homes, and lead-based paint and accompanying lead dust are seen as the major sources.

### HOW DO I KNOW IF MY CHILD IS AFFECTED?

Is your child:

| | |
|---|---|
| ☐ Cranky? | ☐ Unable to concentrate? |
| ☐ Vomiting? | ☐ Hyperactive? |
| ☐ Tired? | ☐ Complaining of stomach aches or headaches? |
| • Unwilling to eat or play? | ☐ Playing with children who have these symptoms? |

These can be signs of lead poisoning. However, your children might not show these signs and

yet be poisoned; only your clinic or Doctor can test for sure. **In**

# Process

### WHAT CAN I DO ABOUT IT?

Your child should first be tested for lead in the blood between six months and one year old. Ask the clinic or your doctor to do it during a regular checkup. Your doctor will tell you how often you should have your child tested after that. A small amount of lead in the blood may not make your child seem very sick, but it can affect how well he or she can learn. If your child does have high amounts of lead in the blood, you should seek treatment and have your home tested for leadbased paint and lead dust.

### HOW DO I KNOW IF MY HOME HAS LEAD-BASED PAINT?

The appraisal does not determine whether a home actually has lead-based paint. It only identifies whether there are defective paint surfaces in a home that might have lead-based paint. Therefore, the only way you can know for sure is to have the home tested by a qualified firm or laboratory. Both the interior and exterior should be tested. You should contact your local health or environmental office for help.

### WHAT DO I DO IF MY HOME DOES HAVE LEAD?

*Do not try to get rid of lead-based paint yourself; you could make things worse for you and your family.* If your home contains lead-based paint, contact a company that specializes in leadbased paint abatement. Have professionals do the job correctly and safely. This may cost thousands of dollars, depending on the amount of lead-based paint and lead dust found in your



home, but it will also protect you and your children from the effects of lead poisoning. In the meantime, there are things you can do *immediately,* to protect your child:

- Keep your child away from paint chips and dust.
- Wet-mop floors and wipe down surfaces often, especially where the floors and walls meet.
- Be sure to clean the space where the window sash rests on the sill. Keeping the floor clear of paint chips, dust and dirt is easy and very important.
- Do not sweep or vacuum lead-based paint chips or lead dust with an ordinary vacuum cleaner.
- Lead dust is so fine it will pass through a vacuum cleaner bag and spread into the air you breathe.
- Make sure your children wash their hands frequently and always before eating. ☐ Wash toys, teething rings, and pacifiers frequently.

### WILL HUD INSURE A MORTGAGE LOAN ON A HOME WITH LEAD-BASED PAINT?

HUD may insure a mortgage on a house even with lead-based paint if defective paint surfaces are treated. HUD will not remove it. You will have to pay for the cost of removal yourself.

### ACKNOWLEDGMENT

I acknowledge that I have received and read a copy of this Notice before signing the sales contract to purchase my property.



Signed by:

0C3BDC9A0D0344ZA     **2/5/2025 | 07:46:59 PST**

Borrower          Date     Co-Borrower          Date

# In Process

**LOAN #: 1001748263**

# MORTGAGE FRAUD IS INVESTIGATED BY THE FBI



**Mortgage Fraud is investigated by the Federal Bureau of Investigation and is punishable by up to 30 years in federal prison or $1,000,000 fine, or both. It is illegal for a person to make any false statement regarding income, assets, debt, or matters of identification, or to willfully overvalue any land or property, in a loan and credit application for the purpose of influencing in any way the action of a financial institution.**

**Some of the applicable Federal criminal statutes which may be charged in connection with Mortgage Fraud include:**

    18 U.S.C. § 1001 - Statements or entries generally
    18 U.S.C. § 1010 - HUD and Federal Housing Administration Transactions
    18 U.S.C. § 1014 - Loan and credit applications generally
    18 U.S.C. § 1028 - Fraud and related activity in connection with identification documents
    18 U.S.C. § 1341 - Frauds and swindles by Mail
    18 U.S.C. § 1342 - Fictitious name or address
    18 U.S.C. § 1343 - Fraud by wire
    18 U.S.C. § 1344 - Bank Fraud
    42 U.S.C. § 408(a) - False Social Security Number

Unauthorized use of the FBI seal, name, and initials is subject to prosecution under Sections 701, 709, and 712 of Title 18 of the United States Code. This advisement may not be changed or altered without the specific written consent of the Federal Bureau of Investigation, and is not an endorsement of any product or service.

---

**MARYANN BUTLER**

**1/31/2025 | 13:57:20 PST**
**DATE**

ICE Mortgage Technology, Inc



GFBIFJ  0119
GFBIFJ (INI)

**LOAN #: 1001748263**

14. Effective date of new policies, endorsements, and/or assignments shall be as of, or prior to, the date of recording this loan.
15. If the security property is a condominium, the master insurance policy must contain a minimum of $1,000,000.00 coverage for "Directors & Officers" liability as well as "walls-in" coverage policy (commonly known as HO-6 policy). The policy must include replacement of improvements and betterment coverage to cover any improvements that you may have made to the unit. A copy of the master policy must be submitted to the Lender prior to funding.

AN ACCEPTABLE POLICY, WITH ENDORSEMENTS AND/OR ASSIGNMENTS, MUST BE FORWARDED TO AND RECEIVED BY LENDER BEFORE THIS LOAN CAN BE FUNDED; OTHERWISE, LENDER MAY BE FORCED TO PLACE INTERIM COVERAGE ON THE PROPERTY AT AN ADDITIONAL COST TO THE BORROWER(S).

Each of the undersigned acknowledges that he or she has read and understands the foregoing provisions and insurance requirements. This authorization will remain irrevocable for the undersigned as owner(s) of the subject property, and for any assignees, for as long as this loan remains on subject property.

**MARYANN BUTLER**

1/31/2025 | 13:57:20 PST
**DATE**



# HUD Addendum to Uniform Residential Loan Application

OMB Approval No. HUD: 2502-0059 (exp. 10/31/26)

## Part I – Identifying Information

**HUD/FHA** Application for Insurance under the National Housing Act and Borrower Certification

**FHA Case No.** (include any suffix)
**446-6285091-703**

**Mortgagee Case No.**
**1001748263**

| Mortgagee ID **2122100009** | Sponsor ID | Agent ID |
|---|---|---|

| Mortgagee Name, Address (include ZIP Code), and Telephone Number | Name and Address of Sponsor | Name and Address of Agent |
|---|---|---|
| **New American Funding, LLC**<br>**9150 South Hills Boulevard Suite 260**<br>**Broadview Heights, OH 44147**<br>**NMLS ID: 6606**<br>**330-840-5618** | | |

| Borrower's Name & Present Address (include ZIP Code)<br>**Maryann Butler**<br><br>**1823 State Street**<br>**Harrisburg, PA 17103** | Property Address (include name of subdivision, lot & block no., & ZIP Code)<br>**1823 State Street**<br>**Harrisburg, PA 17103** | |
|---|---|---|

| Sponsored Originations | Name of Third-Party Originator | NMLS ID of Third-Party Originator |
|---|---|---|

## Part II – Borrower Consent for Social Security Administration to Verify Social Security Number

authorize SSA to provide explanatory information to HUD/FHA in the event of a discrepancy. This consent is valid for 180 days from

the **In Process**  I authorize the Social Security Administration

(SSA) to verify my Social Security Number (SSN) to the Mortgagee and HUD/FHA. I date signed, unless indicated otherwise by the individual(s) named in this loan application.

**Signature(s) of Borrower(s)** – Read consent carefully. Review accuracy of SSNs provided on this application.

| Borrower's Name: **Maryann Butler** | Co-Borrower's Name: | Date of Birth: |
|---|---|---|
| **March 26, 1966** Date of Birth: | | |
| Social Security Number: **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** | Social Security Number: | |
| Signature(s) of Borrower(s) | Date Signed | Signature(s) of Co-Borrower(s) | Date Signed |



**MARYANN BUTLER**

2 /5/2025 | 07:46:59 PST
**DATE**

## Part III – Borrower Notices, Information, and Acknowledgment

### Public Reporting Burden

Public reporting burden for this collection of information is estimated to average 10 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the

ICE Mortgage Technology, Inc.

Page 1

form **HUD-92900-A** (04/2023)
GAUL2JEM21_S 1024
GAUL1JEM (POD)

Borrower Name: ~~Maryann Butler~~      FHA Case No.: ~~446-6285091-703~~

collection of information. This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless that collection displays a valid OMB control number, which can be located on the OMB Internet page at http://www.reginfo.gov/public/do/PRAMain.

> **WARNING: This warning applies to all certifications made in this document.**
> Anyone who knowingly submits a false claim, or makes false statements is subject to criminal and civil penalties, including confinement for up to 5 years, fines, and civil penalties. 18 U.S.C. §§ 287, 1001 and 31 U.S.C. § 3729

**Caution: Delinquencies, Defaults, Foreclosures, and Abuses**

Delinquencies, defaults, foreclosures, and abuses of mortgage loans involving programs of the Federal Government can be costly and detrimental to your credit, now and in the future. The Mortgagee in this transaction, its agents and assigns, as well as the Federal Government, its agencies, agents, and assigns are authorized to take any and all of the following actions in the event loan payments become delinquent on the mortgage loan described in the attached application: (1) Report your name and account information to a credit bureau; (2) Assess additional interest and penalty charges for the period of time that payment is not made; (3) Assess charges to cover additional administrative costs incurred by the Federal Government to service your account; (4) Offset amounts owed to you under other Federal programs; (5) Refer your account to a private attorney, collection agency, or mortgage servicing agency to collect the amount due; foreclose the mortgage; sell the property; and seek judgment against you for any deficiency; (6) Refer your account to the Department of Justice (DOJ) for litigation in the courts; (7) If you are a current or retired Federal employee, take action to offset your salary or civil service retirement benefits; (8) Refer your debt to the Internal Revenue Service for offset against any amount owed to you as an income tax refund; and (9) Report any resulting written off debt of yours to the Internal Revenue Service as your taxable income. All of these actions may be used to recover any debts owed when it is determined to be in the interest of the Mortgagee or Federal Government, or both.

As a mortgage loan borrower, you will be legally obligated to make the mortgage payments called for by your mortgage loan contract. The fact that you dispose of your property after the loan has been made will not relieve you of liability for making these payments. Payment of the loan in full is ordinarily the way liability on a mortgage note is ended. Some home buyers have the mistaken impression that if they sell their homes when they move to another locality, or dispose of it for any other reasons, they are no longer liable for the mortgage payments and that liability for these payments is solely that of the new owners. Even though the new owners may agree in writing to assume liability for your mortgage payments, this assumption agreement will not relieve you from liability to the holder of the note which you signed when you obtained the loan to buy the property. Unless you are able to sell the property to a buyer who is acceptable to HUD/FHA who will assume the payment of your obligation to the lender, you will not be relieved from liability to repay any claim which HUD/FHA may be required to pay your lender on account of default in your loan payments. The amount of any such claim payment may be a debt owed by you to the Federal Government and subject to established collection procedures.

# In Process

**Fair Housing Act**

I and anyone acting on my behalf are, and will remain, in compliance with the Fair Housing Act, 42 U.S.C. § 3604, et seq., with respect to the dwelling or property covered by the loan and in the provision of services or facilities in connection therewith. I recognize that any restrictive covenant on this property related to race, color, religion, sex, disability, familial status, or national origin is unlawful under the Fair Housing Act and unenforceable. I further recognize that in addition to administrative action by HUD, a civil action may be brought by the DOJ in any appropriate U.S. court against any person responsible for a violation of the applicable law.

**Certification and Acknowledgment**

All information in this application is given for the purpose of obtaining a loan to be insured under the National Housing Act and the information in the Uniform Residential Loan Application and this Addendum is true and complete to the best of my knowledge and belief.



form HUD-92900-A (04/2023)
GAUL2JEM21_S 1024
GAUL1JEM (POD)

Borrower Name: ~~Maryann Butler~~                    FHA Case No.: ~~446-6285091-703~~

Verification may be obtained from any source named herein. I have read and understand the foregoing concerning my liability on the loan and Part III, Borrower Notices, Information, and Acknowledgment.

---

**Signature(s) of Borrower(s)** – Do not sign unless this application is fully completed. Read the certification carefully and review accuracy of this application.

| Signature(s) of Borrower(s) | Date Signed | Signature(s) of Co-Borrower(s) | Date Signed |
|---|---|---|---|
| | _2_/5/2025 | 07:46:59 PST | |

**MARYANN BUTLER**                              **DATE**

---

## Part IV – Direct Endorsement Approval for a HUD FHA-Insured Mortgage
### A. Underwriting the Borrower

Date Mortgage Approved: _____        Date Approval Expires: _____

For mortgages rated as an "accept" or "approve" by FHA's Technology Open To Approved Lenders (TOTAL) Mortgage Scorecard:
- The information submitted to TOTAL was documented in accordance with HUD Handbook 4000.1, *FHA Single Family Housing Policy Handbook* (Handbook 4000.1) and accurately represents the final information obtained by the mortgagee; and
- This mortgage complies with Handbook 4000.1 section II.A.4.e Final Underwriting Decision (TOTAL) to the extent that no defect exists in connection with the underwriting of this mortgage such that it should not have been approved in accordance with FHA requirements.

I certify that the statements above are materially correct, with the understanding that in the event HUD elects to pursue a claim arising out of or relating to any inaccuracy of this certification, HUD will interpret the severity of such inaccuracy in a manner that is consistent with the HUD Defect Taxonomy in effect as of the date this mortgage is endorsed for insurance.

Mortgagee Representative Signature: _____

Printed Name: _____

Title: _____

- - - - - - - - - - - - - **OR** - - - - - - - - - - - - - -

For mortgages rated as a "refer" by FHA's TOTAL Mortgage Scorecard, or manually underwritten by a Direct Endorsement (DE) underwriter:



form **HUD-92900-A** (04/2023)
GAUL2JEM21_S 1024
GAUL1JEM (POD)

Borrower Name: ~~Maryann Butler~~        FHA Case No.: ~~446-6285091-703~~

# In

- I have personally reviewed and underwritten the borrower's credit application;

# Process

- The information used to underwrite the borrower was documented in accordance with Handbook 4000.1 and accurately represents the final information obtained by the mortgagee; and
- This mortgage complies with Handbook 4000.1 section II.A.5.d Final Underwriting Decision (Manual) to the extent that no defect exists in connection with the underwriting of this mortgage such that it should not have been approved in accordance with FHA requirements.

I certify that the statements above are materially correct, with the understanding that in the event HUD elects to pursue a claim arising out of or relating to any inaccuracy of this certification, HUD will interpret the severity of such inaccuracy in a manner that is consistent with the HUD Defect Taxonomy in effect as of the date this mortgage is endorsed for insurance.

Direct Endorsement Underwriter Signature: _____ DE's ID Number: _____

**B. Underwriting the Property**

For all mortgages where FHA requires an appraisal, I have personally reviewed and underwritten the appraisal according to FHA requirements. I certify that the statements above are materially correct, with the understanding that in the event HUD elects to pursue a claim arising out of or relating to any inaccuracy of this certification, HUD will interpret the severity of such inaccuracy in a manner that is consistent with the HUD Defect Taxonomy in effect as of the date this mortgage is endorsed for insurance.

Direct Endorsement Underwriter Signature: _____ DE's ID Number: _____

## Part V. – Mortgagee's Certification

- I have personally reviewed the mortgage documents and the application for insurance endorsement; and
- This mortgage complies with Handbook 4000.1 section II.A.7 Post-closing and Endorsement to the extent that no defect exists that would have changed the decision to endorse or submit the mortgage for insurance.

I certify that the statements above are materially correct, with the understanding that in the event HUD elects to pursue a claim arising out of or relating to any inaccuracy of this certification, HUD will interpret the severity of such inaccuracy in a manner that is consistent with the HUD Defect Taxonomy in effect as of the date this mortgage is endorsed for insurance.

Mortgagee
**New American Funding, LLC**

Name of Mortgagee's Representative
**Shawn Wainwright**



form **HUD-92900-A** (04/2023)
GAUL2JEM21_S 1024
GAUL1JEM (POD)

Borrower Name: Maryann Butler                          FHA Case No.: 446-6285091-703



Title of Mortgagee's Representative
**Loan Originator**

Signature of the Mortgagee's Representative                              Date

**Privacy Act Notice**

Authority: Section 203 of the National Housing Act (12 U.S.C. § 1709) and Section 255 of the National Housing Act (12 U.S.C. § 1715z-20) authorize HUD to process applications for FHA insurance of eligible Single Family and Home Equity Conversion Mortgages and respond to inquiries regarding applications for mortgage insurance. 31 U.S.C. § 7701 and 42 U.S.C. § 3543 authorize HUD to collect taxpayer identifying numbers, which may include Social Security Numbers (SSNs).

Purpose: HUD will use this information to determine eligibility for FHA mortgage insurance, and for other purposes described in the published Privacy Act System of Records Notice (SORN).

Routine Uses: Pursuant to the published SORN, HUD may share the information with other program offices within HUD, law enforcement, other government agencies, government sponsored enterprises (GSEs), lenders, and other program participants, as necessary to verify eligibility, process mortgage insurance applications, engage in research and analysis, enforce the law, assist in matters related to court proceedings, respond to potential or actual threats to the security of Federal information systems and related data, and for any other routine use published in the SORN.

Disclosure: Providing this information is voluntary; however, failure to provide the requested information may delay or restrict your eligibility for an FHA-insured mortgage loan, or other benefits you are seeking.

The System of Records Notice (SORN) for this collection is the Computerized Homes Underwriting Management System (CHUMS), and is publicly available at: https://www.hud.gov/program_offices/officeofadministration/privacy_act/pia/fednotice/SORNs_LoB#housing.

form **HUD-92900-A** (04/2023)
GAUL2JEM21_S 1024
GAUL1JEM (POD)

# LOCK-IN AGREEMENT

Date: 02/04/2025

Lender: New American Funding, LLC
NMLS# 6606
Borrower(s):   Maryann Butler

Property Address:   1823 State Street, Harrisburg, PA  17103

Loan Number: 1001748263

You have placed an application for a mortgage loan with the above-named Lender, repayment of which will be secured with the property above. The Lender accepts your loan application subject to the terms listed in this lock-in agreement. A 'lock-in agreement' is an agreement whereby the Lender guarantees for a specified number of days or until a specified date the availability of a specified rate of interest or specified formula by which the rate of interest will be determined and/or specific number of discount points, if the loan is approved and closed within the stated period of time. This is not a commitment to lend. You will be notified as to whether or not your application is approved.   Lock Status:  **Locked** Lock-in Date:  02/03/2025

This lock-in agreement will expire on: 03/20/2025 



**Terms Locked In:**

Interest Rate:   **7.250%**      LTV: 75.000%     CLTV: 75.000%
Loan Type:  Fixed
Discount Points: $3,537.00
Commitment Fee: $ N/A        Lock-in Fee:

**Lender's Efforts; Expiration:**

The Lender will make a good faith effort to process your mortgage loan application and stands ready to fulfill the terms of its commitment before the expiration date of the lock-in agreement or any extension thereof. If your loan does not close before the expiration date of this lock-in agreement through no substantial fault of yours, you may withdraw the application or reject or terminate any commitment.

**Changed Circumstance:**

Changes that may affect your locked in rate include but are not limited to:

☐ Change in LTV or CLTV                ☐ Owner Occupied vs. Non Owner Occupied
☐ Cash out vs. No Cash Out            ☐ Impounds vs. No Impounds

NAF Lock-In Agreement               Rev. 03.17.23 **Contact Information:**

If you have any questions regarding your application or this lock-in agreement, please contact the Lender at:

**New American Funding, LLC, 14511 Myford Road, Suite 100, Tustin, CA  92780**
**Phone: (800)450-2010**

By: Shawn Wainwright                    NMLS#:  918316

## Acknowledgment

By signing below, you acknowledge that you have received and read this lock-in agreement and agree to its terms.

_Maryann Butler_ _____    Date    2/5/2025 | 07:46:59 PST

Maryann Butler          Date    **In Process**

                                                                Date

          Rev. 03.17.23

# REFINANCE CERTIFICATION

Borrower(s): **Maryann Butler**

Date:   **February 4, 2025**

Loan Number:   **1001748263**

Property Address:   **1823 State Street**
**Harrisburg, PA 17103**

Lender/Broker: **New American Funding, LLC**

Loan Originator: **Shawn Wainwright**

License #:  **43834.015**
NMLS #:  **6606**

License #:  **109275**
NMLS #:  **918316**

☐  I/We the undersigned, certify that the property referenced above is **NOT** currently listed for sale or under contract
to be listed for sale.

I/We the undersigned acquired this property on  **August 1, 2018**         .

ACKNOWLEDGEMENT **In Process**

By signing below, you hereby acknowledge reading and understanding all of the information disclosed above,
and receiving a copy of this disclosure on the date indicated below.

_Signed by:_

**MARYANN BUTLER**

2/5/2025 | 07:46:59 PST

**DATE**

GRFCRJ (INI)



# Exhibit C

*FHA Appraisal Report & Withheld Repair Requirements*

This exhibit contains the FHA appraisal report dated February 10, 2025, for the subject property located at 1823 State Street. The appraisal reflects a conditional property valuation subject to the correction of chipped paint and other FHA-specific conditions. Despite this notification, the lender failed to issue a cure notice or any follow-up guidance. This omission contributed to the delay and eventual derailment of the loan process, and supports Plaintiff's claims of procedural mishandling and obstruction under HUD and RESPA standards.

FHA/VA Case No. 446-6285091



# APPRAISAL OF REAL PROPERTY

## LOCATED AT:
1823 State St
See Dauphin County Deed 20180019796
Harrisburg, PA 17103

## FOR:
New American Funding
14511 Myford Road
Tustin, CA 92780

## AS OF:
02/10/2025

## BY:
Robert Cassel
836 Tamanini Way
Mechanicsburg, PA 17055
Phone 717 514 5380 / Fax 717 790 8724
e-mail / rcassel@comcast.net

FHA/VA Case No. 446-6285091

| Borrower | Maryann Butler | | | | File No. | 1001748263 |
|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | |
| City | Harrisburg | County | Dauphin | State | PA | Zip Code 17103 |
| Lender/Client | New American Funding | | | | | |

# TABLE OF CONTENTS

| | |
|---|---|
| Cover Page | 1 |
| Table of Contents | 2 |
| Cover Letter | 3 |
| Summary of Salient Features | 4 |
| URAR | 5 |
| URAR | 6 |
| Additional Comparables 4-6 | 7 |
| Additional Comparables 7-9 | 8 |
| URAR | 9 |
| Cost Approach Worksheet | 10 |
| URAR | 11 |
| URAR | 12 |
| URAR | 13 |
| Subject Photos | 14 |
| Subject Photos Interior | 15 |
| Subject Photos Interior | 16 |
| Subject Photos Interior | 17 |
| Subject Photos Interior | 18 |
| Photograph Addendum | 19 |
| Photograph Addendum | 20 |
| Photograph Addendum | 21 |
| Photograph Addendum | 22 |
| Building Sketch | 23 |
| Comparable Photos 1-3 | 24 |
| Comparable Photos 4-6 | 25 |
| Comparable Photos 7-9 | 26 |
| Location Map | 27 |
| Flood Map | 28 |
| Subject Maps and Plot Plan | 29 |
| Legal Description | 30 |
| Tax Card | 31 |
| Market Conditions Addendum to the Appraisal Report | 32 |
| Appraiser Independence Certification | 33 |
| UAD Definitions Addendum | 34 |
| USPAP Identification | 37 |
| Supplemental Addendum | 38 |
| Environmental Addendum - Appraiser | 39 |
| Appraiser's Certification (License) | 41 |
| Appraiser's E & O | 42 |
| Revision Addendum | 43 |

FHA/VA Case No. 446-6285091

File No. 1001748263

February 11, 2025

Robert Cassel
Accu-Fast Appraisals
836 Tamanini Way
Mechanicsburg, PA 17055
Phone: 717-514-5380
Fax   : 717-790-8724
Email rcassel@accu-fast.net


New American Funding
14511 Myford Road
Suite 100
Tustin, CA 92780


RE: 1823 State Street, Harrisburg, PA 17103


Dear Sir or Madam;

Pursuant to your request, I have prepared a APPRAISAL REPORT of the property referenced in the
"Summary of Salient Features" which follows.

The accompanying report is based on a site inspection of improvements, investigation of the subject
neighborhood area of influence, and review of sales, cost, and income data for similar properties.

This appraisal has been made with particular attention paid to applicable  value-influencing economic
conditions and has been processed in accordance with nationally recognized appraisal guidelines.

The value conclusions stated herein are as of the effective date as stated in the body of the appraisal, and
contingent upon the certification and limiting conditions attached.

Please do not hesitate to contact me if I can be of additional service to you.

Respectfully,

Robert Cassel
PA Certified Residential Appraiser

FHA/VA Case No. 446-6285091

## SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| | Subject Address | 1823 State St |
| | Legal Description | See Dauphin County Deed 20180019796 |
| | City | Harrisburg |
| | County | Dauphin |
| | State | PA |
| | Zip Code | 17103 |
| | Census Tract | 0216.00 |
| | Map Reference | 25420 |

| SALES PRICE | | |
|---|---|---|
| | Sale Price | $ |
| | Date of Sale | |

| CLIENT | | |
|---|---|---|
| | Borrower | Maryann Butler |
| | Lender/Client | New American Funding |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| | Size (Square Feet) | 1,890 |
| | Price per Square Foot | $ |
| | Location | N;BsyRd; |
| | Age | 103 |
| | Condition | C3 |
| | Total Rooms | 8 |
| | Bedrooms | 4 |
| | Baths | 1.1 |

| APPRAISER | | |
|---|---|---|
| | Appraiser | Robert Cassel |
| | Date of Appraised Value | 02/10/2025 |

| VALUE | | |
|---|---|---|
| | Final Estimate of Value | $ 176,000 |

Accu-Fast Appraisals

FHA/VA Case No. 446-6285091

## Uniform Residential Appraisal Report

446-6285091
File # 1001748263

| | | | | | |
|---|---|---|---|---|---|
| Property Address | 1823 State St | City Harrisburg | State PA | Zip Code 17103 | |

| | |
|---|---|
| Borrower Maryann Butler | Owner of Public Record Maryann Butler | County Dauphin |

Legal Description  See Dauphin County Deed 20180019796

| Assessor's Parcel # 15-017-006 | Tax Year 2024 | R.E. Taxes $ 1,332 |
|---|---|---|
| Neighborhood Name  City of Harrisburg | Map Reference 25420 | Census Tract 0216.00 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant   Special Assessments $ 0   ☐ PUD   HOA $ 0   ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe)

Lender/Client  New American Funding   Address  14511 Myford Road, Suite 100, Tustin, CA 92780

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).   Data Source is the local MLS.

☐ I did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ _____ Date of Contract _____ Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s) _____

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | ☒ Urban ☐ Suburban ☐ Rural | Property Values | ☐ Increasing ☒ Stable ☐ Declining | PRICE | AGE | One-Unit | 55 % |
| Built-Up | ☒ Over 75% ☐ Under 25% ☐ 25-75% | Demand/Supply | ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000) | (yrs) | 2-4 Unit | 5 % |
| Growth | ☐ Rapid ☒ Stable ☐ Slow | Marketing Time | ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | 10 Low | 0 | Multi-Family | 15 % |
| Neighborhood Boundaries | The subject neighborhood is bounded by Route 22 to the north, Progress | | | 1,000 High | 300 | Commercial | 20 % |
| Avenue to the east, Market Street to the south and Cameron Street to the west. | | | | 200 Pred. | 100 | Other | 5 % |

Neighborhood Description  Subject has access to all necessary supporting facilities including schools, parks, transportation, shopping and
other amenities.  Average property maintenance programs observed.  Employment is within 15-30 minute drive.  Steady prices and MLS
statistics demonstrate stable demand for the area.  Present Land use "Other" is 5% vacant land.

Market Conditions (including support for the above conclusions)  There are no foreseeable economic factors that might adversely influence the
marketability or value of the subject.  Interest rates are steady and are currently 6% to 9%.  Seller concessions are not very common currently
and tend to negatively impact market value as buyers have little, or no, need to offer concessions to close the sale at or near list price.

| Dimensions  See Attached Deed | Area 2469 sf | Shape Roughly Rectangular | View N;CtyStr; |
|---|---|---|---|

Specific Zoning Classification  RM   Zoning Description  Residential Med-Density

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | 100 AMP | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley Asphalt | ☒ | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X   FEMA Map # 42043C0338D   FEMA Map Date 08/02/2012

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No. If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe
No apparent adverse easements, encroachments, special assessments or other negative influences were noted.  Subject however, to any
easements, encroachments, assessments, etc, of record.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☐ Crawl Space | | Foundation Walls | Stone,Parge/Avg | Floors | HW,C,V,LVP,CT/Av |
| # of Stories 3 | | ☒ Full Basement ☐ Partial Basement | | Exterior Walls | Brick,Vinyl/Avg | Walls | DWall,Plaster/Avg |
| Type ☐ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area 661 sq.ft. | | Roof Surface | Shingle,Rubber/Avg | Trim/Finish | Wood/Avg |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish 0 % | | Gutters & Downspouts | Aluminum/Avg | Bath Floor | Vinyl/Avg |
| Design (Style) TH/End | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | DoubleHung/Avg | Bath Wainscot | Ceramic Tile/Avg |
| Year Built 1922 | | Evidence of ☐ Infestation | | Storm Sash/Insulated | Storms/Avg | Car Storage | ☐ None |
| Effective Age (Yrs) 15 | | ☐ Dampness ☐ Settlement | | Screens | Yes/Avg | ☐ Driveway # of Cars 0 |
| Attic | ☐ None | Heating ☒ FWA ☐ HWBB ☒ Radiant | | Amenities | Woodstove(s) # 0 | Driveway Surface | |
| ☐ Drop Stair | ☒ Stairs | ☐ Other | Fuel Gas | ☒ Fireplace(s) # 1 | ☐ Fence None | ☒ Garage # of Cars 1 |
| ☒ Floor | ☐ Scuttle | Cooling ☐ Central Air Conditioning | | ☒ Patio/Deck Dk,Pt | ☒ Porch EnPor | ☐ Carport # of Cars 0 |
| ☐ Heated | ☐ Finished | ☐ Individual ☒ Other Window | | ☐ Pool None | Other None | ☐ Att. ☒ Det. ☐ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☐ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:  8 Rooms  4 Bedrooms  1.1 Bath(s)  1,890 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).  See attached addenda.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  C3;Kitchen-updated-one to five years
ago;Bathrooms-updated-one to five years ago;See attached addenda.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☒ Yes ☐ No  If Yes, describe
Chipped paint is a potential lead based paint hazard.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

| Freddie Mac Form 70 March 2005 | UAD Version 9/2011   Page 1 of 6 | Fannie Mae Form 1004 March 2005 |
|---|---|---|

FHA/VA Case No. 446-6285091

## Uniform Residential Appraisal Report

446-6285091
File # 1001748263

| | | | |
|---|---|---|---|
| There are | 5 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 110,000 | to $ 200,000 . |
| There are | 16 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 63,000 | to $ 198,500 . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1823 State St | 1836 North St | | 1720 North St | | 1340 State St | |
| | Harrisburg, PA 17103 | Harrisburg, PA 17103 | | Harrisburg, PA 17103 | | Harrisburg, PA 17103 | |
| Proximity to Subject | | 0.09 miles N | | 0.14 miles NW | | 0.37 miles SW | |
| Sale Price | $ | | $ 152,000 | | $ 150,000 | | $ 185,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 95.30 sq.ft. | | $ 104.02 sq.ft. | | $ 88.69 sq.ft. | |
| Data Source(s) | | Bright #PADA2037694;DOM 21 | | Bright #PADA2037742;DOM 53 | | Bright #PADA2039012;DOM 110 | |
| Verification Source(s) | | Public Records | | Public Records | | Public Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | FHA;9120 | 0 | Conv;0 | 0 | Conv;0 | 0 |
| Date of Sale/Time | | s10/24;c09/24 | 0 | s12/24;c11/24 | 0 | s11/24,c10/24 | 0 |
| Location | N;BsyRd; | N;Res; | | N;Res; | | N;BsyRd; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 2469 sf | 4356 sf | 0 | 1742 sf | 0 | 2178 sf | 0 |
| View | N;CtyStr; | N;CtyStr; | | N;CtyStr; | | N;CtyStr; | |
| Design (Style) | SD3,TH/End | SD3,TH/End | | SD3,TH/End | | SD3,TH/End | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 103 | 143 | 0 | 113 | 0 | 108 | 0 |
| Condition | C3 | C3 | | C3 | | C2 | -5,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8  4  1.1 | 7  4  1.0 | +5,000 | 6  3  1.1 | 0 | 8  5  1.1 | 0 |
| Gross Living Area | 1,890 sq.ft. | 1,595 sq.ft. | +13,300 | 1,442 sq.ft. | +20,200 | 2,086 sq.ft. | -8,800 |
| Basement & Finished | 661sf0sfin | 704sf0sfin | 0 | 630sf0sfin | 0 | 824sf0sfin | 0 |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | GasHW/NoAC | GasHW/NoAC | | GasHW/NoAC | | GasFWA/NoAC | 0 |
| Energy Efficient Items | Typical/Area | Typical/Area | | Typical/Area | | Typical/Area | |
| Garage/Carport | 1gd | None | +5,000 | 2dw | +5,000 | 2dw | +5,000 |
| Porch/Patio/Deck | EnP,Deck,Patio | Pors,Balc,Patio | 0 | Porches,Balcony | 0 | Por,Balc,Pat | 0 |
| Fireplace | Fireplace | None | 0 | None | 0 | None | 0 |
| Upgrades | Average | Average | | Average | | Average | |
| Upgrades | Average | Average | | Average | | Average | |
| Net Adjustment (Total) | | X + □ - | $ 23,300 | X + □ - | $ 25,200 | □ + X - | $ -8,800 |
| Adjusted Sale Price | | Net Adj. 15.3 % | | Net Adj. 16.8 % | | Net Adj. 4.8 % | |
| of Comparables | | Gross Adj. 15.3 % | $ 175,300 | Gross Adj. 16.8 % | $ 175,200 | Gross Adj. 10.2 % | $ 176,200 |

X did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did X did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    Corelogic Public Records
My research X did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)    Local multi-list and county tax records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 08/01/2018 | 08/05/2008 | 07/02/2009 | 04/08/2024 |
| Price of Prior Sale/Transfer | $69,917 | $31,900 | $28,065 | $100,000 |
| Data Source(s) | Corelogic Public Records | Corelogic Public Records | Corelogic Public Records | Corelogic Public Records |
| Effective Date of Data Source(s) | 02/10/2025 | 02/10/2025 | 02/10/2025 | 02/10/2025 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Corelogic public records indicate the subject's most recent transfer
occurred on 8/1/2018 (deed (reg) - doc #19796 recorded on 8/9/2018). Comparable three previously transferred and was subsequently renovated.

Summary of Sales Comparison Approach    Sales used are the most recent similar and nearest closed sales available.  The comparable sales indicate a
value range of approximately $175,000 to $185,000 with the subject property falling within the range in terms of conditions and amenities offered.
All adjustments were calculated using matched pairs analysis. Comparable sales one, two, three and four are all recent sales and were given
additional weight. Sales three and four were given the most weight because they have the lowest net and gross adjustment. Comparable five was
added to bracket the subject's garage; it was also given additional weight. Comparables six and seven are active listing and were given no weight
in the final analysis of value.

Indicated Value by Sales Comparison Approach $    176,000

| Indicated Value by: Sales Comparison Approach $ | 176,000 | Cost Approach (if developed) $ | 271,050 | Income Approach (if developed) $ | N/A |
|---|---|---|---|---|---|

The Sales Comparison Analysis is the most reliable approach to value.  The Cost Approach is not appropriate for properties the age of the
subject but was developed at the request of the lender. The Income approach to value is not considered reliable in estimating value for owner
occupied single family residential properties and was not utilized in this appraisal.

This appraisal is made ☐ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,  X subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  Repair of all chipped paint.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$    176,000    , as of    02/10/2025    , which is the date of inspection and the effective date of this appraisal.

FHA/VA Case No. 446-6285091

## Uniform Residential Appraisal Report

446-6285091
File # 1001748263

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address 1823 State St | | 1839 Regina St | | 2024 Bellevue Rd | | 804 N 18th St | |
| Harrisburg, PA 17103 | | Harrisburg, PA 17103 | | Harrisburg, PA 17104 | | Harrisburg, PA 17103 | |
| Proximity to Subject | | 0.20 miles SE | | 0.48 miles SE | | 0.17 miles NW | |
| Sale Price | $ | | $ 170,000 | | $ 175,000 | | $ 155,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 96.48 sq.ft. | | $ 91.72 sq.ft. | | $ 110.71 sq.ft. | |
| Data Source(s) | | Bright #PADA2039488;DOM 6 | | Bright #PADA2029672;DOM 136 | | Bright #PADA2041448;DOM 25 | |
| Verification Source(s) | | Public Records | | Public Records | | Public Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | Listing | |
| Concessions | | FHA;0 | 0 | FHA;0 | 0 | ListToSale%;0 | 0 |
| Date of Sale/Time | | s12/24;c11/24 | | s07/24;c05/24 | 0 | Active | 0 |
| Location | N,BsyRd; | N,Res; | 0 | N,Res; | 0 | N,Res; | 0 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 2469 sf | 1742 sf | 0 | 1742 sf | 0 | 1742 sf | 0 |
| View | N;CtyStr; | N;CtyStr; | | N;CtyStr; | | N;CtyStr; | |
| Design (Style) | SD3;TH/End | SD3;TH/End | | SD3;TH/End | | SD2;TH/End | 0 |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 103 | 115 | | 104 | 0 | 125 | 0 |
| Condition | C3 | C2 | -5,000 | C3 | | C3 | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8 4 1.1 | 8 4 1.1 | | 8 5 1.0 | +5,000 | 6 3 1.0 | +5,000 |
| Gross Living Area | 1,890 sq.ft. | 1,762 sq.ft. | +5,800 | 1,908 sq.ft. | 0 | 1,400 sq.ft. | +22,100 |
| Basement & Finished | 661sf0sfin | 840sf0sfin | | 750sf0sfin | 0 | 700sf300sfin | 0 |
| Rooms Below Grade | | | | | | 1rr0br1.0ba0o | -9,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | GasHW/NoAC | GasFWA/NoAC | 0 | GasHW/NoAC | | GasFWA/NoAC | 0 |
| Energy Efficient Items | Typical/Area | Typical/Area | | Typical/Area | | Typical/Area | |
| Garage/Carport | 1gd | None | +5,000 | 1gd1dw | +5,000 | None | +5,000 |
| Porch/Patio/Deck | EnP,Deck,Patio | Porches,Balcony | 0 | Porches,Balcony | 0 | Porches,Balcony | 0 |
| Fireplace | Fireplace | None | 0 | None | 0 | None | 0 |
| Upgrades | Average | Average | | Average | | Average | |
| Upgrades | Average | Average | | Average | | Average | |
| Net Adjustment (Total) | | ☒ + ☐ - | 5,800 | ☒ + ☐ - $ | 10,000 | ☒ + ☐ - $ | 23,100 |
| Adjusted Sale Price | | Net Adj. 3.4 % | | Net Adj. 5.7 % | | Net Adj. 14.9 % | |
| of Comparables | | Gross Adj. 9.3 % $ | 175,800 | Gross Adj. 5.7 % $ | 185,000 | Gross Adj. 26.5 % $ | 178,100 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 08/01/2018 | 07/19/2021 | 04/04/2022 | 07/19/2021 |
| Price of Prior Sale/Transfer | $69,917 | $1,200 | $58,000 | $32,500 |
| Data Source(s) | Corelogic Public Records | Corelogic Public Records | Corelogic Public Records | Corelogic Public Records |
| Effective Date of Data Source(s) | 02/10/2025 | 02/10/2025 | 02/10/2025 | 02/10/2025 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Form 1004UAD.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

FHA/VA Case No. 446-6285091

## Uniform Residential Appraisal Report

446-6285091
File # 1001748263

| FEATURE | SUBJECT | COMPARABLE SALE # 7 | | COMPARABLE SALE # 8 | | COMPARABLE SALE # 9 | |
|---|---|---|---|---|---|---|---|
| Address | 1823 State St | 902 N 18th St | | | | | |
| | Harrisburg, PA 17103 | Harrisburg, PA 17103 | | | | | |
| Proximity to Subject | | 0.22 miles NW | | | | | |
| Sale Price | $ | $ 198,500 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 104.20 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | Bright #PADA2041816;DOM 44 | | | | | |
| Verification Source(s) | | Public Records | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment | DESCRIPTION | + (-) $ Adjustment |
| Sales or Financing | | Listing | | | | | |
| Concessions | | ListToSale%;0 | 0 | | | | |
| Date of Sale/Time | | Active | 0 | | | | |
| Location | N,BsyRd; | N;Res; | 0 | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 2469 sf | 1742 sf | 0 | | | | |
| View | N,CtyStr; | N,CtyStr; | | | | | |
| Design (Style) | SD3;TH/End | SD3;TH/End | | | | | |
| Quality of Construction | Q4 | Q4 | | | | | |
| Actual Age | 103 | 115 | 0 | | | | |
| Condition | C3 | C3 | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8 4 1.1 | 8 4 2.0 | -1,000 | | | | |
| Gross Living Area | 1,890 sq.ft. | 1,905 sq.ft. | 0 | sq.ft. | | sq.ft. | |
| Basement & Finished | 661sfDsfin | 800sf600sfin | 0 | | | | |
| Rooms Below Grade | | 1rr0br0.0ba0o | -8,000 | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | GasHW/NoAC | GasFWA/CAC | -10,000 | | | | |
| Energy Efficient Items | Typical/Area | Typical/Area | | | | | |
| Garage/Carport | 1gd | None | +5,000 | | | | |
| Porch/Patio/Deck | EnP,Deck,Patio | Por,CvPat,Pat | 0 | | | | |
| Fireplace | Fireplace | None | 0 | | | | |
| Upgrades | Average | Average | | | | | |
| Upgrades | Average | Average | | | | | |
| Net Adjustment (Total) | | + X - | $ -14,000 | + - | $ | + - | $ |
| Adjusted Sale Price | | Net Adj. 7.1% | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 12.1 % | $ 184,500 | Gross Adj. % | $ | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 7 | COMPARABLE SALE # 8 | COMPARABLE SALE # 9 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 08/01/2018 | 11/18/2024 | | |
| Price of Prior Sale/Transfer | $69,917 | $179,900 | | |
| Data Source(s) | Corelogic Public Records | Corelogic Public Records | | |
| Effective Date of Data Source(s) | 02/10/2025 | 02/10/2025 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Freddie Mac Form 70 March 2005          UAD Version 9/2011          Fannie Mae Form 1004 March 2005

## Uniform Residential Appraisal Report

446-6285091
File # 1001748263

**ADDITIONAL COMMENTS**

The effective age of the subject property is significantly lower than its actual age. The estimate of effective age is subjective and is based on the appraisers experience and observations during the inspection of the property.

There was no evidence of termite infestation at the time of the inspection and the appraiser does not specifically recommend a termite inspection. However, the appraiser is not an expert in this field and makes no warranties, either express or implied, as to this condition.

APPRAISERS INDEPENDENCE STATEMENT
-NO EMPLOYEE, DIRECTOR, OFFICER OR AGENT OF THE LENDER, OR ANY OTHER THIRD PARTY ACTING AS A JOINT VENTURE PARTNER, INDEPENDENT CONTRACTOR, APPRAISAL MANAGEMENT COMPANY OR PARTNER ON BEHALF OF THE LENDER HAS INFLUENCED OR ATTEMPTED TO INFLUENCE THE DEVELOPMENT, REPORTING, RESULT OR REVIEW OF THIS ASSIGNMENT THROUGH COERCION, EXTORTION, COLLUSION, COMPENSATION, INSTRUCTION, INDUCEMENT, INTIMIDATION, BRIBERY OR IN ANY OTHER MANNER. I HAVE NOT BEEN CONTACTED BY ANYONE OTHER THAN THE INTENDED USER (LENDER/CLIENT AS IDENTIFIED ON THE FIRST PAGE OF THE REPORT), BORROWER, OR DESIGNATED CONTACT TO MAKE AN APPOINTMENT TO ENTER THE PROPERTY.

- I am stating that I have not performed any service with regard to the subject property in the three years proceeding this assignment.
- The appraisal was ordered in compliance with Appraisal Independence "AIR" and Mortgagee Letter 2009-28.
- There are no oil wells, gas wells or fracking operations that were noticeable during the inspection of the subject property.
- All photographs of the comparable sales were taken at the time of inspection with the exception of any comparables were photographing the comparable was not possible because people would have been included in the photograph or the property was located on a private lane.
- The subject measurements for GLA and Non-GLA areas were completed according to ANSI Z765-2021 standards, at the time of inspection.
- The intended use of this appraisal is solely to assist FHA in assessing the risk of property securing the FHA-insured Mortgage. FHA and the Lender/Client are the intended users of the appraisal report. The FHA Appraiser does not guaranteed that the Property is free from defects. The appraisal establishes the value of the property for Mortgage insurances purposes only. This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions or deletions to the intended use, intended user, definition of market value or assumptions and limiting conditions are not permitted, however, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.
- The estimated value of the subject property is lower than than the predominant neighborhood value. This does not negatively impact the value or marketability of the subject property.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   The estimated site value was extracted from courthouse records.

| ESTIMATED | ☐ REPRODUCTION OR | ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 50,000 |
|---|---|---|---|---|---|---|---|
| Source of cost data   Marshall & Swift SwiftEstimator | | | DWELLING | 1,890 Sq.Ft. @ $ 134.32 | | =$ | 253,865 |
| Quality rating from cost service   Average  Effective date of cost data   FEB 2025 | | | Basement | 661 Sq.Ft. @ $ 34.92 | | =$ | 23,082 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | ApplianceAllowance | | | =$ | |
| The Cost Approach is not applicable and is considered inappropriate for | | | Garage/Carport | 220 Sq.Ft. @ $ 62.67 | | =$ | 13,787 |
| properties the age of the subject but was developed at the request of | | | Total Estimate of Cost-New | | | =$ | 290,734 |
| the lender. | | | Less | Physical | Functional | External | |
| | | | Depreciation | 72,684 | | =$( | 72,684) |
| | | | Depreciated Cost of Improvements | | | =$ | 218,050 |
| | | | "As-is" Value of Site Improvements | | | =$ | 3,000 |
| Estimated Remaining Economic Life (HUD and VA only)   40 Years | | | INDICATED VALUE BY COST APPROACH | | | =$ | 271,050 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)   The Income Approach to value is not considered a reliable indicator of value for single family owner occupied properties and was not utilized in this appraisal

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?   ☐ Yes   ☐ No   Unit type(s)   ☐ Detached   ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?   ☐ Yes   No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?   ☐ Yes   ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?   ☐ Yes   No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   ☐ Yes   No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

## Cost Approach Worksheet

FHA/VA Case No. 446-6285091

| | |
|---|---|
| Borrower | Maryann Butler |
| Property Address | 1823 State St |
| City | Harrisburg | County Dauphin | State PA | Zip Code 17103 |
| Lender/Client | New American Funding |


CoreLogic

## Data Entry Report

Marshall & Swift
SwiftEstimator

Property Address    1823 State St, Harrisburg, PA - 17103

Reference # 1310876

**Building Characteristics**
# of Stories    Three Story 100 %              Total Floor Area    1890 sq. ft.              M&S Quality    3.0 (Average)

**Improvements**

| Foundation* | | Exterior* | | Baths* | |
|---|---|---|---|---|---|
| Crawlspace | 100 % | Exterior Walls | Veneer, Brick | 80 % | Full Baths | 1 count |
| Total Basement Area | 661 sq. ft. | | Frame, Siding, Vinyl | 20 % | Half Baths | 1 count |
| Concrete Walls | 100 % | Roofing | Comp. Shingle or Built-up Rock | 100 % | | |

| HVAC | | Amenities | | Garages / Carport | |
|---|---|---|---|---|---|
| Radiators, Hot Water | 100 % | Porch/Deck/Breezeways | Wood Deck | 120 sq. ft. Detached Garage | 220 sq. ft. |
| | | Porch/Deck/Breezeways | Open Slab Porch | 247 sq. ft. | |
| | | Porch/Deck/Breezeways | Raised Enclosed Porch, Solid Walls | 135 sq. ft. | |
| | | Fireplaces | Single 2-Story Fireplace | 1 count | |

**Building Depreciation**
Marshall & Swift Tables        Effective Age 15 years    Typical Life 55 years

**Adjustments**
Local Multiplier  1.020 (Default)         Energy Adjustment  Moderate (Default)        Seismic Adjustment  Zone1 (Default)
Architects Fee %  1.30 (Default)          Foundation Adjustment  Moderate (Default)     Wind Adjustment  No Adjustment (Default)
Report Date  02/2025                      Hillside Adjustment  Flat (Default)            Story Height  8 ft (Default)

Marshall & Swift's indicated value by cost approach can be verified at  https://alamode.swiftestimator.com/AlamodeTotalVerify
Verification Code : 0L500S3H8

This report has been produced utilizing current cost data and is in compliance with the Marshall & Swift Licensed User Certificate.

FHA/VA Case No. 446-6285091

446-6285091

## Uniform Residential Appraisal Report

File # 1001748263

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area. these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Uniform Residential Appraisal Report

446-6285091
File # 1001748263

**APPRAISER'S CERTIFICATION:**   The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Uniform Residential Appraisal Report

446-6285091
File # 1001748263

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Robert Cassel | Name |
| Company Name   Accu-Fast Appraisals | Company Name |
| Company Address   836 Tamanini Way | Company Address |
| Mechanicsburg, PA 17055 | |
| Telephone Number   (717) 514-5380 | Telephone Number |
| Email Address   rcassel@comcast.net | Email Address |
| Date of Signature and Report   02/11/2025 | Date of Signature |
| Effective Date of Appraisal   02/10/2025 | State Certification # |
| State Certification #   RL139417 | or State License # |
| or State License # | State |
| or Other (describe)                 State # | Expiration Date of Certification or License |
| State  PA | |
| Expiration Date of Certification or License   06/30/2025 | SUBJECT PROPERTY |

**SUBJECT PROPERTY**

- ☐ Did not inspect subject property
- ☐ Did inspect exterior of subject property from street
  Date of Inspection
- ☐ Did inspect interior and exterior of subject property
  Date of Inspection

ADDRESS OF PROPERTY APPRAISED

1823 State St

Harrisburg, PA 17103

APPRAISED VALUE OF SUBJECT PROPERTY $        176,000

LENDER/CLIENT

Name   Stewart Valuation Intelligence

Company Name   New American Funding

Company Address   14511 Myford Road, Suite 100, Tustin, CA
92780

Email Address

**COMPARABLE SALES**

- ☐ Did not inspect exterior of comparable sales from street
- ☐ Did inspect exterior of comparable sales from street
  Date of Inspection

FHA/VA Case No. 446-6285091

## Subject Photo Page

| Borrower | Maryann Butler | | | | |
|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | |
| City | Harrisburg | County | Dauphin | State PA | Zip Code 17103 |
| Lender/Client | New American Funding | | | | |



**Subject Front**

1823 State St
Sales Price
Gross Living Area    1,890
Total Rooms          8
Total Bedrooms       4
Total Bathrooms      1.1
Location             N;BsyRd;
View                 N;CtyStr;
Site                 2469 sf
Quality              Q4
Age                  103



**Subject Rear**



**Subject Street**

FHA/VA Case No. 446-6285091

## Subject Interior Photo Page

| Borrower | Maryann Butler | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | | |
| City | Harrisburg | County | Dauphin | | State | PA | Zip Code | 17103 |
| Lender/Client | New American Funding | | | | | | |



**Subject Interior**

1823 State St
Sales Price
Gross Living Area     1,890
Total Rooms            8
Total Bedrooms        4
Total Bathrooms       1.1
Location                 N;BsyRd;
View                     N;CtyStr;
Site                     2469 sf
Quality                 Q4
Age                     103

Office



**Subject Interior**

Living Room



**Subject Interior**

Family Room

FHA/VA Case No. 446-6285091

## Subject Interior Photo Page

| Borrower | Maryann Butler | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | |
| City | Harrisburg | County | Dauphin | State | PA | Zip Code 17103 |
| Lender/Client | New American Funding | | | | | |



### Subject Interior

| | |
|---|---|
| 1823 State St | |
| Sales Price | |
| Gross Living Area | 1,890 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 1.1 |
| Location | N;BsyRd; |
| View | N;ChyStr; |
| Site | 2469 sf |
| Quality | Q4 |
| Age | 103 |

Powder Room



### Subject Interior

Kitchen





### Subject Interior

Bedroom

FHA/VA Case No. 446-6285091

## Subject Interior Photo Page

| Borrower | Maryann Butler | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | | |
| City | Harrisburg | County | Dauphin | | State | PA | Zip Code | 17103 |
| Lender/Client | New American Funding | | | | | | |



**Subject Interior**

1823 State St
Sales Price
Gross Living Area   1,890
Total Rooms   8
Total Bedrooms   4
Total Bathrooms   1.1
Location   N;BsyRd;
View   N;CtyStr;
Site   2469 sf
Quality   Q4
Age   103

Bedroom



**Subject Interior**

Bath



**Subject Interior**

Bedroom (WIC)

FHA/VA Case No. 446-6285091

## Subject Interior Photo Page

| Borrower | Maryann Butler | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | | |
| City | Harrisburg | County | Dauphin | | State | PA | Zip Code 17103 |
| Lender/Client | New American Funding | | | | | | |



**Subject Interior**

1823 State St
Sales Price
Gross Living Area 1,890
Total Rooms 8
Total Bedrooms 4
Total Bathrooms 1.1
Location N;BsyRd;
View N;CtyStr;
Site 2469 sf
Quality Q4
Age 103

Bedroom (Attic)



**Subject Interior**

Walk-in Closet





**Subject Interior**

Basement

Form PIC3x5.SI - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

FHA/VA Case No. 446-6285091

## Photograph Addendum

| Borrower | Maryann Butler | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | | |
| City | Harrisburg | County | Dauphin | State | PA | Zip Code | 17103 |
| Lender/Client | New American Funding | | | | | | |



Furnace



Water Heater



Electrical Panel Box

FHA/VA Case No. 446-6285091

## Photograph Addendum

| Borrower | Maryann Butler | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | | |
| City | Harrisburg | County | Dauphin | State | PA | Zip Code | 17103 |
| Lender/Client | New American Funding | | | | | | |



Address Verification

## Photograph Addendum

FHA/VA Case No. 446-6285091

| | |
|---|---|
| Borrower | Maryann Butler |
| Property Address | 1823 State St |
| City | Harrisburg |
| Lender/Client | New American Funding |

| County | Dauphin | State | PA | Zip Code | 17103 |
|---|---|---|---|---|---|



Potential Fall Hazard



Door Lock



Blocked Access

## Photograph Addendum

FHA/VA Case No. 446-6285091

| Borrower | Maryann Butler | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | |
| City | Harrisburg | County | Dauphin | State PA | Zip Code | 17103 |
| Lender/Client | New American Funding | | | | | |



Chipped Paint - Window Trim

FHA/VA Case No. 446-6285091

## Building Sketch

| Borrower | Maryann Butler | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | | |
| City | Harrisburg | County | Dauphin | | State | PA | Zip Code | 17103 |
| Lender/Client | New American Funding | | | | | | |



TOTAL Sketch by a la mode

### Area Calculations Summary

| Living Area | | Calculation Details |
|---|---|---|
| First Floor | 827.5 Sq ft | 15 × 55.17 = 827.5 |
| Second Floor | 759.25 Sq ft | 15 × 50.08 = 751.25 |
| | | 8 × 1 = 8 |
| Third Floor | 303.48 Sq ft | 8.43 × 36 = 303.48 |
| **Total Living Area (Rounded):** | **1890 Sq ft** | |
| **Non-living Area** | | |
| Uncovered Patio | 247 Sq ft | 13 × 19 = 247 |
| UC Deck | 120 Sq ft | 15 × 8 = 120 |
| Enc Porch | 135 Sq ft | 9 × 15 = 135 |
| 1 Car Detached | 220 Sq ft | 11 × 20 = 220 |
| Basement | 661.25 Sq ft | 15 × 44.08 = 661.25 |

FHA/VA Case No. 446-6265091

## Comparable Photo Page

| | |
|---|---|
| Borrower | Maryann Butler |
| Property Address | 1823 State St |
| City | Harrisburg |
| Lender/Client | New American Funding |

County Dauphin   State PA   Zip Code 17103



### Comparable 1

1836 North St

| | |
|---|---|
| Prox. to Subject | 0.09 miles N |
| Sale Price | 152,000 |
| Gross Living Area | 1,595 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;CityStr; |
| Site | 4356 sf |
| Quality | Q4 |
| Age | 143 |



### Comparable 2

1720 North St

| | |
|---|---|
| Prox. to Subject | 0.14 miles NW |
| Sale Price | 150,000 |
| Gross Living Area | 1,442 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.1 |
| Location | N;Res; |
| View | N;CityStr; |
| Site | 1742 sf |
| Quality | Q4 |
| Age | 113 |



### Comparable 3

1340 State St

| | |
|---|---|
| Prox. to Subject | 0.37 miles SW |
| Sale Price | 185,000 |
| Gross Living Area | 2,086 |
| Total Rooms | 8 |
| Total Bedrooms | 5 |
| Total Bathrooms | 1.1 |
| Location | N;BsyRd; |
| View | N;CityStr; |
| Site | 2178 sf |
| Quality | Q4 |
| Age | 108 |

FHA/VA Case No. 446-6285091

## Comparable Photo Page

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | Maryann Butler | | | | | | |
| Property Address | 1823 State St | | | | | | |
| City | Harrisburg | County | Dauphin | | State | PA | Zip Code | 17103 |
| Lender/Client | New American Funding | | | | | | |



### Comparable 4

1839 Regina St
| | |
|---|---|
| Prox. to Subject | 0.20 miles SE |
| Sales Price | 170,000 |
| Gross Living Area | 1,762 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 1.1 |
| Location | N;Res; |
| View | N;CityStr; |
| Site | 1742 sf |
| Quality | Q4 |
| Age | 115 |



### Comparable 5

2024 Bellevue Rd
| | |
|---|---|
| Prox. to Subject | 0.48 miles SE |
| Sales Price | 175,000 |
| Gross Living Area | 1,908 |
| Total Rooms | 8 |
| Total Bedrooms | 5 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;CityStr; |
| Site | 1742 sf |
| Quality | Q4 |
| Age | 104 |



### Comparable 6

804 N 18th St
| | |
|---|---|
| Prox. to Subject | 0.17 miles NW |
| Sales Price | 155,000 |
| Gross Living Area | 1,400 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;CityStr; |
| Site | 1742 sf |
| Quality | Q4 |
| Age | 125 |

FHA/VA Case No. 446-6285091

## Comparable Photo Page

| Borrower | Maryann Butler | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | |
| City | Harrisburg | County | Dauphin | State | PA | Zip Code 17103 |
| Lender/Client | New American Funding | | | | | |



### Comparable 7

902 N 18th St

| | |
|---|---|
| Prox. to Subject | 0.22 miles NW |
| Sale Price | 198,500 |
| Gross Living Area | 1,905 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;CtyStr; |
| Site | 1742 sf |
| Quality | Q4 |
| Age | 115 |

### Comparable 8

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

### Comparable 9

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

## Location Map

FHA/VA Case No. 446-6285091

| Borrower | Maryann Butler | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | |
| City | Harrisburg | County | Dauphin | State | PA | Zip Code 17103 |
| Lender/Client | New American Funding | | | | | |



FHA/VA Case No. 448-6285091

## Flood Map

| Borrower | Maryann Butler | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | | |
| City | Harrisburg | County | Dauphin | | State | PA | Zip Code 17103 |
| Lender/Client | New American Funding | | | | | | |



**Prepared for: Accu-Fast Appraisals**
**1823 State St**
**Harrisburg, PA 17103-1552**

**MAP DATA**

FEMA Special Flood Hazard Area. No
Map Number: 42043C0338D
Zone: X
Map Date: August 02, 2012
FIPS: 42043

**MAP LEGEND**

| | | |
|---|---|---|
| ☐ Areas inundated by 500-year flooding | ☒ | Protected Areas |
| ☐ Areas inundated by 100-year flooding | ▨ | Floodway |
| ☐ Velocity Hazard | ◯ | Subject Area |

Powered by CoreLogic®

FHA/VA Case No. 446-6285091

## Subject Maps and Plot Plan

| Borrower | Maryann Butler | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | |
| City | Harrisburg | County | Dauphin | State | PA | Zip Code | 17103 |
| Lender/Client | New American Funding | | | | | |



Street Number is 1823
Street Name is like 'state'
Found 2 results in 0.02 seconds.

FHA/VA Case No. 446-6285091

## Legal Description

| Borrower | Maryann Butler | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | | |
| City | Harrisburg | County | Dauphin | | State | PA | Zip Code | 17103 |
| Lender/Client | New American Funding | | | | | | |

INST#: 20180019796 Recorded: 08/09/2018 at 02:51:02 PM 5 PAGES   JAMES M. ZUGAY, RECORDER OF DEEDS, DAUPHIN COUNTY, PA. RECORDED BY DEPUTY CLERK: CRASHINGER TAO LPAUL

Prepared by and Return to:

Members 1st Settlement Company, LLC
1021 Briarsdale Road
Harrisburg, PA
(717)795-6006

File No. MM2708

Parcel ID # 15-017-006

**This Indenture**, made the 1st day of August, 2018,

**Between**

**CHRISTOPHER BICKEL AND NINA BICKEL, HUSBAND AND WIFE**

(hereinafter called the Grantors), of the one part, and

**MARYANN BUTLER, SINGLE PERSON**

(hereinafter called the Grantee), of the other part,

**Witnesseth**, that the said Grantors for and in consideration of the sum of **Sixty-Nine Thousand Nine Hundred Seventeen And 00/100 Dollars ($69,917.00)** lawful money of the United States of America, unto them well and truly paid by the said Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, have granted, bargained and sold, released and confirmed, and by these presents do grant, bargain and sell, release and confirm unto the said Grantee, as sole owner

**ALL THAT CERTAIN** parcel of real estate situate in the 15th Ward of the City of Harrisburg, County of Dauphin, and Commonwealth of Pennsylvania, more particularly bounded and described as follows, to wit:

BEGINNING at a point on the South side of State Street at the line of property now or late of Walter M. Kauffman, et ux, known as No. 1821 State Street, which point is two hundred eighty-nine and nine-tenths (289.9) feet East of the southeast corner of North 18th Street and State Street; thence eastwardly along the South side of State Street, nineteen (19) feet to the line of property now or late of John W. Valalst, et ux; thence southwardly along the line of said property and at right angles to State Street, one hundred twenty-eight and one-tenths (128.1) feet to the North side of Apricot Alley, nineteen and twenty-five hundredths (19.25) feet to the line of the aforementioned property of Walter Kauffman, et ux; and thence northwardly along the line of said property and for part of the distance through the center of the partition wall, one hundred thirty-one and seven-tenths (131.7) feet to the Place of BEGINNING.

**HAVING THEREON ERECTED** the eastern half of a double two and one-half story brick dwelling known as No. 1823 State Street.

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE LAND DESCRIBED OR REFERRED HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND, IN THAT CONNECTION,

Case 1:25-cv-00009-KRNC Document 8-17 Filed 04/02/25 Page 121 of 172

## Tax Card

| Borrower | Maryann Butler | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | |
| City | Harrisburg | County | Dauphin | State | PA | Zip Code 17103 |
| Lender/Client | New American Funding | | | | | |

**Agent 360**

1823 State St, Harrisburg, PA 17103-1552    City Of Harrisburg    Tax ID 15-017-006-000-0000




No Picture Available

### Summary Information

| | | | |
|---|---|---|---|
| Owner: | Maryann Butler | Property Class: | Residential |
| Owner Address: | 1823 State St | Annual Tax: | $978 |
| Owner City State: | HARRISBURG PA | Settle Date: | 08/09/18 |
| Owner Zip+4: | 17103-1552 | Sale Amount: | $69,917 |
| Owner Occupied: | Yes | Doc Num: | 20180019796 |
| Owner Carrier Rt: | C068 | Tax Record Updated: | 02/05/25 |

### Geographic Information

| | | | |
|---|---|---|---|
| County: | Dauphin, PA | Mid Sch Dist: | Harrisburg City |
| Municipality: | City Of Harrisburg | Census: | |
| High Sch Dist: | Harrisburg City | | |
| Elm Sch Dist: | Harrisburg City | | |
| Tax ID: | 15-017-006-000-0000 | | |
| Tax ID Alt: | 15-017-006-000-0000 | | |

### Assessment & Tax Information

| | | | | | |
|---|---|---|---|---|---|
| Tax Year: | 2025 | Annual Tax (Est): | $978 | Taxable Total Asmt: | $25,000 |
| County Tax: | $209 | Taxable Land Asmt: | $9,800 | | |
| School Tax (Est): | $769 | Taxable Bldg Asmt: | $15,200 | | |
| Asmt As Of: | 2025 | | | Exempt Class: | NA |

### Lot Characteristics

| | | | |
|---|---|---|---|
| County Desc: | Primary Site | SQFT: | 2,178 |
| | | Acres: | 0.0500 |
| | | Roads: | Paved, Alley, Sidewalk |
| | | Topography: | Rolling |

### Building Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Total SQFT: | 2,219 | Bed Rooms: | 3 | Basement Type: | Full |
| Residential Type: | Single/Det | Full Baths: | 2 | Year Built: | 1922 |
| Residential Design: | 2 Story | Total Baths: | 2.0 | Total Below Grade | 540 |
| Stories: | 2.00 | Family Room: | 0 | SQFT: | |
| Abv Grd Fin SQFT: | 1,679 | Total Fixtures: | 2 | Total Garage SQFT: 0 | |
| Fireplace Total: | 0 | Exterior: | Brick | Attic Description: | Finished |
| Porch/Deck: | Patio, Porch | Residential Units: | 1 | Porch/Deck Feats: | Roof/Covered |
| | | Porch/Deck SQFT: | 165 | | |
| | | Elec: | Yes | | |

### Codes & Descriptions

| | |
|---|---|
| Land Use: | R03 2 Story |
| County Land Desc: | Primary Site |

### MLS History

FHA/VA Case No. 446-6285091
446-6285091
File No. 1001748263

## Market Conditions Addendum to the Appraisal Report

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

Property Address 1823 State St | City Harrisburg | State PA | ZIP Code 17103
Borrower Maryann Butler

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 9 | 3 | 4 | Increasing | Stable ☒ | Declining |
| Absorption Rate (Total Sales/Months) | 1.50 | 1.00 | 1.33 | Increasing | Stable ☒ | Declining |
| Total # of Comparable Active Listings | 3 | 1 | 5 | Declining | Stable | Increasing ☒ |
| Months of Housing Supply (Total Listings/Ab.Rate) | 2.0 | 1.0 | 3.8 | Declining | Stable | Increasing ☒ |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 103,500 | 137,000 | 160,000 | Increasing ☒ | Stable | Declining |
| Median Comparable Sales Days on Market | 12 | 36 | 24 | Declining | Stable ☒ | Increasing |
| Median Comparable List Price | 117,000 | 114,900 | 149,000 | Increasing ☒ | Stable | Declining |
| Median Comparable Listings Days on Market | 70 | 82 | 25 | Declining ☒ | Stable | Increasing |
| Median Sale Price as % of List Price | 100.00% | 100.00% | 98.11% | Increasing | Stable | Increasing ☒ |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | Yes | No ☒ | | Declining | Stable ☒ | Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.). Seller concessions are not very common currently and tend to negatively impact market value as buyers have little, or no, need to offer concessions to close the sale at or near list price. The impact of any seller concessions is determined through matched pairs analysis.

Are foreclosure sales (REO sales) a factor in the market? Yes ☒ No If yes, explain (including the trends in listings and sales of foreclosed properties).
There are foreclosures in this market but they do not negatively impact the value or marketability of typical properties in this market.

Cite data sources for above information. Bright Multi-Listing Service and courthouse records.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions. The market appears to be stable overall and tends to reflect the seasonal nature of real estate sales in this area with more sales taking place in the spring and summer seasons. Interest rates have been relatively stable. Limited supply continues in the market making each listed property more competitive. This has resulted in sale prices exceeding list prices in many circumstances as potential buyers bid against each other. Demand, which is normally expected to slow down as fall and winter approach, may be impacted by changes to the interest rate. This particular market is currently undergoing a period of intense revitalization. Sales include properties both pre-renovation and post-renovation. Changes in the median may be influenced by the number of each type that transfer in a given period and may not be completely attributable to appreciation in this market.

| If the subject is a unit in a condominium or cooperative project , complete the following: | | Project Name: | | | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | Increasing | Stable | Declining |
| Absorption Rate (Total Sales/Months) | | | | Increasing | Stable | Declining |
| Total # of Active Comparable Listings | | | | Declining | Stable | Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | Declining | Stable | Increasing |

Are foreclosure sales (REO sales) a factor in the project? Yes No If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

Signature | Signature
Appraiser Name Robert Cassel | Supervisory Appraiser Name
Company Name Accu-Fast Appraisals | Company Name
Company Address 836 Tamanini Way, Mechanicsburg, PA 17055-750C | Company Address
State License/Certification # RL139417 State PA | State License/Certification # State
Email Address rcassel@comcast.net | Email Address

Freddie Mac Form 71 March 2009 | Page 1 of 1 | Fannie Mae Form 1004MC March 2009

Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

FHA/VA Case No. 446-6285091

# Appraiser Independence Certification

I do hereby certify, I have followed the appraiser independence safeguards in compliance with Appraisal Independence and any applicable state laws I may be required to comply with. This includes but is not limited to the following:

- I am currently licensed and/or certified by the state in which the property to be appraised is located My license is the appropriate license for the appraisal assignment(s) and is reflected on the appraisal report.
- I certify that there have been no sanctions against me for any reason that would impair my ability to perform appraisals pursuant to the required guidelines.

I assert that no employee, director, officer, or agent of _____ Stewart Valuation Intelligence _____ , or any other third party acting as joint venture partner, independent contractor, appraisal management company, or partner on behalf of _____ New American Funding _____ , influenced, or attempted to influence the development, reporting, result, or review of my appraisal through coercion, extortion, collusion, compensation, inducement, intimidation, bribery, or in any other manner.

I further assert that _____ Stewart Valuation Intelligence _____ has never participated in any of the following prohibited behavior in our business relationship:

1) Withholding or threatening to withhold timely payment or partial payment for an appraisal report;

2) Withholding or threatening to withhold future business with me, or demoting or terminating or threatening to demote or terminate me;

3) Expressly or impliedly promising future business, promotions, or increased compensation for myself;

4) Conditioning the ordering of my appraisal report or the payment of my appraisal fee or salary or bonus on the opinion, conclusion, or valuation to be reached, or on a preliminary value estimate requested from me;

5) Requesting that I provide an estimated, predetermined, or desired valuation in an appraisal report prior to the completion of the appraisal report, or requesting that I provide estimated values or comparable sales at any time prior to my completion of an appraisal report;

6) Provided me an anticipated, estimated, encouraged, or desired value for a subject property or a proposed or target amount to be loaned to the borrower, except that a copy of the sales contract for purchase transactions may be provided;

7) Provided to me, or my appraisal company, or any entity or person related to me as appraiser, appraisal company, stock or other financial or non-financial benefits;

8) Any other act or practice that impairs or attempts to impair my independence, objectivity, or impartiality or violates law or regulation, including, but not limited to, the Truth in Lending Act (TILA) and Regulation Z, or the USPAP.

| | |
|---|---|
| _(signature)_ | 02/11/2025 |
| Signature | Date |
| Robert Cassel | RL139417 |
| Appraiser's Name | State License or Certification # |
| PA State Certified Residential Appraiser | 06/30/2025                                      PA |
| State Title or Designation | Expiration Date of License or Certification      State |

1823 State St, Harrisburg, PA 17103
Address of Property Appraised

05/13

FHA/VA Case No. 446-6285091

446-6285091
File No.   1001748263

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

## Condition Ratings and Definitions

### C1
The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

### C2
The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.

### C3
The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.

### C4
The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.

### C5
The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.

### C6
The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.

## Quality Ratings and Definitions

### Q1
Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

### Q2
Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

FHA/VA Case No. 446-6285091

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

Q3

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

Form UADDEFINE1A - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

FHA/VA Case No. 446-6285091

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (Style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-in Garage | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sale or Financing Concessions |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid-rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| RT | Row or Townhouse | Design (Style) |
| s | Settlement Date | Date of Sale/Time |
| SD | Semi-detached Structure | Design (Style) |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

UAD Version 9/2011 (Updated 1/2014)

FHA/VA Case No. 446-6285091

| Borrower | Maryann Butler | | | | | File No. 1001748263 |
|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | |
| City | Harrisburg | County | Dauphin | State | PA | Zip Code 17103 |
| Lender/Client | New American Funding | | | | | |

# APPRAISAL AND REPORT IDENTIFICATION

This Report is one of the following types:

☒ Appraisal Report  (A written report prepared under Standards Rule  2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted Appraisal Report  (A written report prepared under Standards Rule  2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

## Reasonable Exposure Time  (USPAP defines Exposure Time as the estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.)

My Opinion of Reasonable Exposure Time for the subject property at the market value stated in this report is:  **3-6 Months**

## Comments on Appraisal and Report Identification
Note any USPAP-related issues requiring disclosure and any state mandated requirements:

This appraisal is made under the extraordinary assumption that all information pertaining to the subject property and comparable sales that was taken from public information sources is complete and accurate.

The use of any extraordinary assumption, or hypothetical condition, could affect the opinion of value.

The intended user is the client and lender and any additional users noted in the "Additional Comments" section. The intended use is for financing purposes only. This report is not intended for any other use.

All measurements were taken at the time of inspection and are compliant with ANSI standards.

This appraisal is made under the hypothetical condition that all required FHA repairs have already been repaired to minimum property standards as outlines in HUD Handbook 4000.1.

**APPRAISER:**

Signature:
Name:  Robert Cassel
PA State Certified Residential Appraiser
State Certification #:  RL139417
or State License #:
State:  PA   Expiration Date of Certification or License:  06/30/2025
Date of Signature and Report:  02/11/2025
Effective Date of Appraisal:  02/10/2025
Inspection of Subject:  ☐ None  ☒ Interior and Exterior  ☐ Exterior-Only
Date of Inspection (if applicable):  02/10/2025

**SUPERVISORY or CO-APPRAISER (if applicable):**

Signature:
Name:
State Certification #:
or State License #:
State:   Expiration Date of Certification or License:
Date of Signature:
Inspection of Subject:  ☐ None  ☐ Interior and Exterior  ☐ Exterior-Only
Date of Inspection (if applicable):

FHA/VA Case No. 446-6285091

## Supplemental Addendum

File No. 1001748263

| Borrower | Maryann Butler | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | |
| City | Harrisburg | County | Dauphin | State | PA | Zip Code 17103 |
| Lender/Client | New American Funding | | | | | |

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction.
Every effort has been made to conform to FNMA, FHLME and FHLBB guidelines and, in most cases, an even stricter interpretation found common to most investors in the secondary market.

The appraiser has chosen what are believed to be the best comparable sales available from the market search. Adjustments in the "SALES COMPARISON ANALYSIS" are based on market extraction, not cost figures. Occasionally it is necessary to use comparables that have adjustments exceeding 10% of the comparable's sale price, that have net adjustments more than 15% of the comparable's sale price, that have gross adjustments exceeding 25% of the comparable's sale price, that are located more than three miles from the subject and/or that occurred more than six months prior to the date of the appraisal.

Since not every subject property can be compared to "ideal" comparable sales, the appraiser has chosen the best sales available from the market search which most closely conform to investors underwriting guidelines.

The highest and best use of the subject property was determined by a visual inspection of the subject market.

**ADJUSTMENTS:** The appraiser does not have access to, and does not use, peer or model adjustments in this appraisal. All adjustments are calculated using one of the following methods:
- Direct Comparison (Land)
- Local Contractor Pricing (Where applicable)
- Matched Pairs Analysis with linear regression.

**HIGHEST AND BEST USE:** The subject's highest and best use is its current use as a single family residence. Local zoning supports this use above other uses. The subject is maximally productive with this use because, even if an alternative use were permitted under current zoning, the cost to improve the site for this use would be cost prohibitive.

**LEGAL DESCRIPTION:** The traditional Lot:Block format of legal description is very rarely available to the appraiser in the normal course of business, nor from ANY of the information sources used for all other aspects of the appraisal. This type of description, while common is some areas, is not commonly used in this area nor is it readily available to the appraiser .

**• URAR: Improvements - Additional Features**
Energy items are similar to other properties in the area of like age and condition.All of the subject's appliances were in working order at the time of inspection. All appliances are considered personal property and were given no value in the appraisal. The subject has smoke/CO detectors on all levels.

**• URAR: Subject - Overall Condition of the Property**
All improvements are in average condition. There is chipped paint on exterior window trim. The cost to cure is estimated to be approximately $1,000. The borrower also has an estimate to replace the windows, which would also cure the condition.The subject property will meet HUD/FHA minimum property requirements outlined in Handbook 4000.1. when these repairs are completed. There is also a sliding door, located in a second floor bedroom that is currently used as a walk-in closet, that presents a potential fall hazard. The door is locked (photo of locked attached), has shelves in front and also has a "keeper" pole, which prevents the door from being opened. All utilities were on and functioning at the time of inspection.

FHA/VA Case No. 446-6285091

# ENVIRONMENTAL ADDENDUM
## APPARENT* HAZARDOUS SUBSTANCES AND/OR DETRIMENTAL ENVIRONMENTAL CONDITIONS

| Borrower | Maryann Butler | | | | | |
|---|---|---|---|---|---|---|
| Address | 1823 State St | | | | | |
| City | Harrisburg | County | Dauphin | State | PA | Zip code  17103 |
| Lender/Client | New American Funding | | | | | |

**\*Apparent** is defined as that which is visible, obvious, evident or manifest to the appraiser.

This universal Environmental Addendum is for use with any real estate appraisal. Only the statements which have been checked by the appraiser apply to the property being appraised.

This addendum reports the results of the appraiser's routine inspection of and inquiries about the subject property and its surrounding area. It also states what assumptions were made about the existence (or nonexistence) of any hazardous substances and/or detrimental environmental conditions.  **The appraiser is not an expert environmental inspector** and therefore might be unaware of existing hazardous substances and/or detrimental environmental conditions which may have a negative effect on the safety and value of the property. It is possible that tests and inspections made by a qualified environmental inspector would reveal the existence of hazardous materials and/or detrimental environmental conditions on or around the property that would negatively affect its safety and value.

### DRINKING WATER

_"X"_ Drinking Water is supplied to the subject from a municipal water supply which is considered safe. However the only way to be absolutely certain that the water meets published standards is to have it tested at all discharge points.

_____ Drinking Water is supplied by a well or other non-municipal source. It is recommended that tests be made to be certain that the property is supplied with adequate pure water.

_"X"_ Lead can get into drinking water from its source, the pipes, at all discharge points, plumbing fixtures and/or appliances. The only way to be certain that water does not contain an unacceptable lead level is to have it tested at all discharge points.

_"X"_ **The value estimated in this appraisal is based on the assumption that there is an adequate supply of safe, lead-free Drinking Water.**

Comments _____

### SANITARY WASTE DISPOSAL

_"X"_ Sanitary Waste is removed from the property by a municipal sewer system.

_____ Sanitary Waste is disposed of by a septic system or other sanitary on site waste disposal system. The only way to determine that the disposal system is adequate and in good working condition is to have it inspected by a qualified inspector.

_"X"_ **The value estimated in this appraisal is based on the assumption that the Sanitary Waste is disposed of by a municipal sewer or an adequate properly permitted alternate treatment system in good condition.**

Comments _____

### SOIL CONTAMINANTS

_"X"_ There are no apparent signs of Soil Contaminants on or near the subject property (except as reported in Comments below). It is possible that research, inspection and testing by a qualified environmental inspector would reveal existing and/or potential hazardous substances and/or detrimental environmental conditions on or around the property that would negatively affect its safety and value.

_"X"_ **The value estimated in this appraisal is based on the assumption that the subject property is free of Soil Contaminants.**

Comments _____

### ASBESTOS

_"X"_ All or part of the improvements were constructed before 1979 when Asbestos was a common building material. The only way to be certain that the property is free of friable and non-friable Asbestos is to have it inspected and tested by a qualified asbestos inspector.

_____ The improvements were constructed after 1979. No apparent friable Asbestos was observed (except as reported in Comments below).

_"X"_ **The value estimated in this appraisal is based on the assumption that there is no uncontained friable Asbestos or other hazardous Asbestos material on the property.**

Comments _____

### PCBs (POLYCHLORINATED BIPHENYLS)

_"X"_ There were no apparent leaking fluorescent light ballasts, capacitors or transformers anywhere on or nearby the property (except as reported in Comments below).

_"X"_ There was no apparent visible or documented evidence known to the appraiser of soil or groundwater contamination from PCBs anywhere on the property (except as reported in Comments below).

_"X"_ **The value estimated in this appraisal is based on the assumption that there are no uncontained PCBs on or nearby the property.**

Comments _____

### RADON

_"X"_ The appraiser is not aware of any Radon tests made on the subject property within the past 12 months (except as reported in Comments below).

_"X"_ The appraiser is not aware of any indication that the local water supplies have been found to have elevated levels of Radon or Radium.

_"X"_ The appraiser is not aware of any nearby properties (except as reported in Comments below) that were or currently are used for uranium, thorium or radium extraction or phosphate processing.

_"X"_ **The value estimated in this appraisal is based on the assumption that the Radon level is at or below EPA recommended levels.**

Comments _____

FHA/VA Case No. 446-6285091

## USTs (UNDERGROUND STORAGE TANKS)

__"X"__ There is no apparent visible or documented evidence known to the appraiser of any USTs on the property nor any known historical use of the property that would likely have had USTs.

__"X"__ There are no apparent petroleum storage and/or delivery facilities (including gasoline stations or chemical manufacturing plants) located on adjacent properties (except as reported in Comments below).

_____ There are apparent signs of USTs existing now or in the past on the subject property. It is recommended that an inspection by a qualified UST inspector be obtained to determine the location of any USTs together with their condition and proper registration if they are active; and if they are inactive, to determine whether they were deactivated in accordance with sound industry practices.

__"X"__ **The value estimated in this appraisal is based on the assumption that any functioning USTs are not leaking and are properly registered and that any abandoned USTs are free from contamination and were properly drained, filled and sealed.**

Comments _____

## NEARBY HAZARDOUS WASTE SITES

__"X"__ There are no apparent Hazardous Waste Sites on the subject property or nearby the subject property (except as reported in Comments below). Hazardous Waste Site search by a trained environmental engineer may determine that there is one or more Hazardous Waste Sites on or in the area of the subject property.

__"X"__ **The value estimated in this appraisal is based on the assumption that there are no Hazardous Waste Sites on or nearby the subject property that negatively affect the value or safety of the property.**

Comments _____

## UREA FORMALDEHYDE (UFFI) INSULATION

__"X"__ All or part of the improvements were constructed before 1982 when UREA foam insulation was a common building material. The only way to be certain that the property is free of UREA formaldehyde is to have it inspected by a qualified UREA formaldehyde inspector.

_____ The improvements were constructed after 1982. No apparent UREA formaldehyde materials were observed (except as reported in Comments below).

__"X"__ **The value estimated in this appraisal is based on the assumption that there is no significant UFFI insulation or other UREA formaldehyde material on the property.**

Comments _____

## LEAD PAINT

__"X"__ All or part of the improvements were constructed before 1980 when Lead Paint was a common building material. There is no apparent visible or known documented evidence of peeling or flaking Lead Paint on the floors, walls or ceilings (except as reported in Comments below). The only way to be certain that the property is free of surface or subsurface Lead Paint is to have it inspected by a qualified inspector.

_____ The improvements were constructed after 1980. No apparent Lead Paint was observed (except as reported in Comments below).

__"X"__ **The value estimated in this appraisal is based on the assumption that there is no flaking or peeling Lead Paint on the property.**

Comments _____

## AIR POLLUTION

__"X"__ There are no apparent signs of Air Pollution at the time of the inspection nor were any reported (except as reported in Comments below). The only way to be certain that the air is free of pollution is to have it tested.

__"X"__ **The value estimated in this appraisal is based on the assumption that the property is free of Air Pollution.**

Comments _____

## WETLANDS/FLOOD PLAINS

__"X"__ The site does not contain any apparent Wetlands/Flood Plains (except as reported in Comments below). The only way to be certain that the site is free of Wetlands/Flood Plains is to have it inspected by a qualified environmental professional.

__"X"__ **The value estimated in this appraisal is based on the assumption that there are no Wetlands/Flood Plains on the property (except as reported in Comments below).**

Comments _____

## MISCELLANEOUS ENVIRONMENTAL HAZARDS

__"X"__ There are no other apparent miscellaneous hazardous substances and/or detrimental environmental conditions on or in the area of the site except as indicated below:

| | |
|---|---|
| _____ Excess Noise | _____ |
| _____ Radiation + Electromagnetic Radiation | _____ |
| _____ Light Pollution | _____ |
| _____ Waste Heat | _____ |
| _____ Acid Mine Drainage | _____ |
| _____ Agricultural Pollution | _____ |
| _____ Geological Hazards | _____ |
| _____ Nearby Hazardous Property | _____ |
| _____ Infectious Medical Wastes | _____ |
| _____ Pesticides | _____ |
| _____ Others (Chemical Storage + Storage Drums, Pipelines, etc.) | _____ |

__"X"__ **The value estimated in this appraisal is based on the assumption that there are no Miscellaneous environmental Hazards (except those reported above) that would negatively affect the value of the property.**

> **When any of the environmental assumptions made in this addendum are not correct, the estimated value in this appraisal may not be valid.**

FHA/VA Case No. 446-6285091

## Appraiser's Certification (License)

| Borrower | Maryann Butler | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | | |
| City | Harrisburg | County | Dauphin | | State | PA | Zip Code 17103 |
| Lender/Client | New American Funding | | | | | | |



FHA/VA Case No. 446-6285091

**Appraiser's E & O**

| Borrower | Maryann Butler | | | | |
|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | |
| City | Harrisburg | County | Dauphin | State  PA | Zip Code  17103 |
| Lender/Client | New American Funding | | | | |

---

## CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)** 10/09/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | Kate Kurtz | | |
|---|---|---|---|---|---|
| Norman-Spencer Agency, LLC | | PHONE (A/C, No, Ext): 800-640-7601 | | FAX (A/C, No): 717-721-3515 | |
| 10050 Innovation Drive, Suite 340 | | E-MAIL ADDRESS: intersorgeappraisers@norman-spencer.com | | | |
| Miamisburg, OH 45342 | | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| | | INSURER A : The Hanover Atlantic Insurance Company, LTD | | | N/A |
| **INSURED** | | INSURER B : | | | |
| Robert I Cassel dba Accu-Fast Appraisals | | INSURER C : | | | |
| 836 TAMANINI WAY | | INSURER D : | | | |
| MECHANICSBURG, PA 17055 | | INSURER E : | | | |
| | | INSURER F : | | | |

**COVERAGES**          **CERTIFICATE NUMBER:**                **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ☐ Y / N | | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Errors & Omissions Claims-Made Policy | | | L3D-J581752-01 | 12/04/2024 | 12/04/2025 | Per Claim Aggregate Deductible Retroactive Date | $1,000,000 $2,000,000 $5,000 12/04/2010 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

The insurance afforded by the E&O policy applies solely to wrongful acts in the insured's performance of the following professional services for others for a fee: Real Estate Appraisal Services

The following are insureds on the E&O policy: Robert I. Cassel

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Evidence of Insurance | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD

FHA/VA Case No. 446-6285091

## Revision Addendum

File No. 1001748263

| Borrower | Maryann Butler | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1823 State St | | | | | | |
| City | Harrisburg | County | Dauphin | | State | PA | Zip Code | 17103 |
| Lender/Client | New American Funding | | | | | | |

02/11/2025

I reviewed your report for order 1615499 at 1823 State Street Harrisburg, PA 17103 and found 1 area we need to revise in order for New American Funding to accept the appraisal.

1. Bedroom Count Consistently Stated
The report indicates the subject has 4 bedrooms. However, this is inconsistent with the provided photos and/or the sketch labels. Please review and correct.
- I have reviewed the appraisal. There are already four (4) bedroom photos and four (4) rooms labeled as "Bedroom", which matches the indicated bedroom count. Please review.

## EXHIBIT D
## COMMUNICATION FAILURES AND SYSTEM OBSTRUCTION

This exhibit provides documented evidence of digital obstruction and failed communication attempts during the final phase of loan processing. Screenshots and email delivery failure notices demonstrate that Plaintiff's access to the loan portal was suspended, and that key email addresses provided by the lender—New American Funding (NAF)—were either invalid or non-functional.

On or about March 19, 2025—just one day before the rate lock expiration—the Plaintiff attempted to deliver critical loan transfer and compliance requests to Loan Officer Shawn Wainwright and the Customer Care Team. These attempts failed, producing bounce-back notices and locked account errors.

These technical obstructions materially interfered with Plaintiff's ability to complete the loan process and transfer her FHA Case file, in violation of procedural communication requirements under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e).

Submitted with Statement of Facts – Section 6

mfmallah87@icloud.com Mime-Version: 1.0 (1.0) Date: Wed, 19 Mar 2025 12:33:47
-0400 Subject: Follow Up 3/19/2025 Message-Id: <9229C093-
C7C6-4774-942B-429B72E3C77D@icloud.com> To: Shawn Wainwright X-Mailer:
iPhone Mail (22D82) X-Proofpoint-GUID: QJIIYvo5i9bSpwsMHZOIT_MjMEn3mCSh
X-Proofpoint-ORIG-GUID: QJIIYvo5i9bSpwsMHZOIT_MjMEn3mCSh X-Proofpoint-
Virus-Version: vendor=baseguard
engine=ICAP:2.0.293,Aquarius:18.0.1093,Hydra:6.0.680,FMLib:17.12.68.34
definitions=2025-03-19_06,2025-03-19_01,2024-11-22_01 X-Proofpoint-Spam-
Details: rule=notspam policy=default score=0 phishscore=0 mlxlogscore=982
adultscore=0 spamscore=0 malwarescore=0 mlxscore=0 clxscore=1015
suspectscore=0 bulkscore=0 classifier=spam adjust=0 reason=mlx scancount=1
engine=8.19.0-2411120000 definitions=main-2503190112

6:07

35

address to reset your password

Username *

Forgot your username?



Your account has been suspended

Please wait 24 hours and then try again, or contact your lender for help.

Close

ice

14511 Myford Road, Suite 100 Tustin, CA 92780

800.450.2010 x7100    |    CustomerService@nafinc.com

🔒 ling.mymortgage-online.com ↻

6:41

Cancel

**Formal Request for FHA Case Transfer Code – Response Required by 4:00 PM...**

To:

Cc:

Bcc:

From: mfmallah87@icloud.com

Subject

**Invalid Address**

"Customer Service < 
customerservice@nafinc.com>" does
not appear to be a valid email address.
Do you want to send it anyway?

Dear

Cancel       Send

Following my Final Demand Notice, I am form
FHA Case Transfer Code for my assigned FHA
446-6285091.

As per HUD Mortgagee Letter 2009-40, I have
transfer my FHA case file to another lender up
no discretion or denial allowed under HUD pol
information must be provided immediately wh
borrower.

I require this information no later than 4:00 PM
18, 2025. If this request is not fulfilled by that
this matter to HUD, CFPB, and all relevant reg

# Exhibit E

*CFPB Response by Amy Dale – Misrepresentation of Communication*

This exhibit contains the official response issued by Amy Dale, Senior Vice President of Customer Service for New American Funding (NAF), to the Consumer Financial Protection Bureau (CFPB) in response to Complaint No. 250319-19425105.

In her April 7, 2025, statement, Ms. Dale falsely claims that the Plaintiff's authorized representative, Mr. Audury Petie Davis, was impersonating his mother and using multiple unidentified email addresses. This is demonstrably untrue and contradicted by prior emails between Ms. Dale and Mr. Davis, as well as formal authorization provided in Exhibit A.

The misrepresentation to a federal agency reflects an intentional attempt to discredit the Plaintiff's complaint and obstruct scrutiny into the mishandling of the loan process. It also supports Plaintiff's motion for discovery regarding internal communications and formal interrogatories of Amy Dale, to evaluate her actions and statements under oath.



Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮ All complaints (.)

# 250319-19425105
**CLOSED**

## ✔ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/19/2025 | Mortgage | Applying for a mortgage or refinancing an existing mortgage |

### We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

Here is the finalized and structured CFPB complaint in a professional and legal format:
—— Consumer Financial Protection Bureau (CFPB) Complaint Against New American Funding (NAF) Company Information New American Funding Corporate Office: 14511 Myford Road, Suite 100, Tustin, CA 92780 Customer Service: (800) 450-2010 Loan Officer: Shawn Wainwright Supervising Executive: Jason Miller, Branch Manager —— Complaint Summary I applied for an FHA Cash-Out Refinance loan with New American Funding (NAF) for my property located at 1823 State Street, Harrisburg, PA 17103. Throughout this process, I have fully complied with all lender requests and provided all required documentation. Despite this, NAF has engaged in deliberate delays, contradictory statements, and regulatory violations, obstructing my ability to complete my refinance and causing financial harm. On March 12, 2025, at 8:37 AM, my loan officer, Shawn Wainwright, left a voicemail confirming that my employment verification was completed and that my file was moving forward. However, later that same day, NAF falsely claimed they had "no update available" on my loan, directly contradicting Wainwright's voicemail. On March 12, 2025, I formally requested the immediate release of my FHA Case Number and Appraisal Transfer Code in accordance with HUD Mortgagee Letter 2009-40, which explicitly states that lenders must transfer the FHA case number upon borrower request. NAF unlawfully refused to comply. On March 13, 2025, I received a phone call from Shawn Wainwright, during which he admitted that he "dropped the ball" on my loan processing, apologized for the delays, and assured me that my mother's loan was moving forward. On March 14, 2025, I received an email from Wainwright stating that my file had been reassigned to the Processing Manager and that "upper management is aware" of my concerns. Despite this acknowledgment, no resolution was provided, and I continued receiving vague and contradictory responses. On March 18, 2025, Jason Miller, Branch Manager at NAF and Wainwright's supervisor, contacted me for the first time, claiming he was "just now hearing about this" and that he would assist with resolving the issue. This directly contradicts Wainwright's March 14 email, which stated that upper management was already aware. This further demonstrates New

American Funding's internal communication failures, delays, and neglect in handling my refinance. Additionally, NAF's customer service agent, Carlos, refused to provide contact information for their compliance department, obstructing my ability to escalate the issue to regulatory authorities. This pattern of misconduct has caused financial harm, unnecessary delays, and significant distress, as detailed in the following timeline. ——— Timeline of Events January 31, 2025 • Loan disclosures were sent for review and e-sign. February 3, 2025 • Interest rate locked at 7.25%, with an expiration date of March 20, 2025. February 5, 2025 • Signed and acknowledged a changed circumstance document, confirming intent to proceed. February 18, 2025 • Appraisal was completed and uploaded to the loan portal. • No official repair requirements were documented, violating FHA loan processing rules. March 11, 2025 • Follow-up email sent requesting a loan status update. • No response from NAF. March 12, 2025 (8:37 AM) • Loan officer Shawn Wainwright left a voicemail confirming that employment verification was completed and that my file was moving forward. March 12, 2025 (Later That Day) • NAF falsely claimed they had "no update available" on my loan, contradicting Wainwright's voicemail. March 12, 2025 (Formal FHA Case Number Request) • Formally requested the immediate release of my FHA Case Number and Transfer Code per HUD Mortgagee Letter 2009-40. • Request was unlawfully denied. March 13, 2025 • Received a phone call from Shawn Wainwright, where he admitted he "dropped the ball" on my loan processing, apologized, and assured me my mother's loan was moving forward. March 14, 2025 • Received an email from Wainwright stating that my file was reassigned to the Processing Manager and that upper management was aware of my concerns. • Despite this, no corrective action was taken, and my loan continued to face delays. March 18, 2025 • Jason Miller, Branch Manager at NAF and Wainwright's supervisor, contacted me for the first time, claiming he was "just now hearing about this." • This contradicts Wainwright's March 14 email, which stated that upper management was already aware. • This demonstrates further delays, internal miscommunication, and mismanagement by NAF. ——— Relief Sought 1. Monetary Compensation • Compensation for financial harm, emotional distress, and increased costs due to delayed loan processing. • Reimbursement for any financial damages, including lost time and opportunities caused by NAF's mishandling. 2. Fair Market Interest Rate & Immediate Closing • NAF must honor a new, fair market interest rate BELOW my previous locked-in rate of 7.25%, considering the delays were entirely their fault. • NAF must immediately approve and close my loan at the newly negotiated lower rate. 3. Formal Investigation & Compliance Review • CFPB should investigate NAF's failure to comply with HUD guidelines, their refusal to transfer my FHA Case Number, and the internal mismanagement that caused these delays. 4. Formal Written Response from NAF's Compliance Department • NAF must provide: • Underwriting notes • Internal communications • A documented explanation for the excessive delays and contradictory statements made by loan officers and executives. ——— Conclusion This complaint highlights severe negligence, non-compliance with HUD/FHA guidelines, and unethical business practices by New American Funding. Their failure to handle my refinance in a timely and compliant manner has caused unnecessary distress and financial uncertainty. I respectfully request immediate action to resolve these violations. ——— This document is ready to be submitted. If you need any final adjustments, let me know. Otherwise, copy and paste it into the CFPB complaint submission form.

**ATTACHMENTS**

| | | | | |
|---|---|---|---|---|
| FHA_Application_of_Unused_Escrow_Funds.pdf (92.2 KB) | Lock-In_Agreement.pdf (102.7 KB) | IMG_2591.jpeg (1 MB) | Maryann Butler.zip (1.8 MB) | D 2 W 2 (7 |

View full complaint ⊕

✓ Sent to company

**STATUS**

Sent to company on 3/19/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## ✔ Company still working

**STATUS**

Company response is in progress as of 4/3/2025

### The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

New American Funding is currently researching into this matter and need additional time to complete our review and provide our findings. Thank you in advance for your understanding. Respectfully, Customer Service Management

## ✔ Company responded

**STATUS**

Company responded on 4/7/2025

**RESPONSE TYPE**

Closed with explanation

### Company's Response

Consumer Financial Protection Bureau RE: Complaint No. 250319-19425105 / Maryann Butler To Whom It May Concern, New American Funding, LLC ("NAF") is responding to the complaint filed by Maryann Butler. In researching this matter, our records indicate in February 2025, Ms. Butler contacted NAF regarding a cash-out refinance of her subject property located at 1823 State Street, Harrisburg, PA 17103. Loan Consultant, Mr. Wainwright, was assigned to assist with the loan inquiry. Mr. Wainwright had initially been communicating with Ms. Butler's son, Mr. Davis, who stated he was assisting his mom with the loan process. During some of their calls, Mr. Davis advised the loan consultant he would place a separate call to Ms. Butler, then join or add her on the call. They were seeking assistance to pay off and consolidate debt. Ms. Butler gave Mr. Wainwright her authorization to go through her son for communications for her refinance. During the initial phone conversation, information was obtained including income, assets, and employment information. Ms. Butler agreed to having her consumer credit report obtained. The loan program discussed was for an FHA 20-year fixed rate cash-out refinance of the subject property. Ms. Butler was also advised an appraisal of the subject property would be needed, and she would be required to make payment directly to the appraisal management company for the appraiser's services. Ms. Butler had also been advised once the appraisal service had been provided by a third-party licensed FHA appraiser, the fee would be non-refundable. Ms. Butler was conditionally pre-approved for a loan, however, this was not a guarantee that the loan would close or fund, as NAF would need to verify all the information Ms. Butler provided at the initial stage of the loan process. A written verification of employment ("WVOE") was also part of the loan process. Initially there was a Pin No. needed to verify employment. Mr. Wainwright spoke with Mr. Davis regarding the Pin No. needed. He eventually provided this information to verify employment. When NAF received the WVOE from Ms. Butler's

employer, it reflected she did not have a 24-month employment history. This was an FHA requirement to obtain the FHA financing. Mr. Wainwright informed Ms. Davis regarding the employment requirement and NAF needed her previous employer information. Mr. Davis then advised Ms. Butler wanted to start another job with another company doing the same type of work as the current employer. Mr. Wainwright advised Mr. Davis to have Ms. Butler hold off with the new job switch due to the loan transaction and wait until her loan closes. Ms. Butler agreed to wait until the transaction was completed to switch to a new employer. In the meantime, the job verification from Ms. Butler's previous employer took slightly longer than expected. The loan was suspended by Underwriting due to Debt-to-Income ("DTI") ratio and while waiting for the verification from the previous employer. We needed paystubs from Ms. Butler's prior employer and most recent 30 days of employment to be able to meet the 24-months FHA requirement. Prior to receiving the complaint with the BBB, Mr. Davis sent an email to NAF requesting a copy of the appraisal and FHA case number released. The Sales Manager, Mr. Miller, responded to his email, advising he would be happy to assist with the request and asked for the new Lender's contact information, however, Mr. Davis would not provide this information. On 3/31/2025, I sent an email to Ms. Butler to advise FHA requirement 24-months employment to be eligible for FHA financing, and explained NAF needed paystubs from her prior employer and most recent 30 days of employment to be able to meet the 24-months FHA requirement. Ms. Butler was further advised once received, NAF would restructure her loan and more forward to determine if her loan meets the requirement. I included a copy of the email that contained the home appraisal and advised it was initially sent to her on 2/18/2025. Ms. Butler was further advised that NAF was unable to provide her with a closing date, as we had not obtained full loan approval, since we were still waiting for her to provide the documents needed to proceed. Mr. Davis began responding to me from a different email address than what was on file. On 2/18/2025, a copy of the appraisal of the subject property had been sent by email to Mr. Davis, as he was sending and replying to emails using Ms. Butler's email address on file. The report was also completed "subject to" repair work needed of all chipped paint, which meant that the chipped paint needed to be corrected, and a subsequent follow up appraisal inspection would be required to confirm the work was completed. On Thursday, 4/3/2025, I sent an email to Ms. Butler and Mr. Davis, regarding the FHA Case Transfer request to a new lender that Ms. Butler wished to proceed with. There is information NAF will require to be able to transfer the FHA case number and appraisal. Without this information, we are unable to complete the transfer request. Once the information is provided, we can proceed with the transfer. We hope this has addressed all concerns related to this matter and we were unable to finalize Ms. Butler's home financing needs. Please let us know if we can be of further assistance. Respectfully, Amy Dale Amy Dale SVP, Customer Service

✓ Feedback provided

**STATUS**
Feedback provided on 4/7/2025

### Your feedback

**THE COMPANY'S RESPONSE ADDRESSED ALL OF MY ISSUES**
No

**I UNDERSTAND THE COMPANY'S RESPONSE TO MY COMPLAINT**
No

**THE COMPANY DID WHAT THEY SAID THEY WOULD DO WITH MY COMPLAINT**
No

**ADDITIONAL COMMENTS**
The response is factually misleading and incomplete. No loan, including the Plaintiff's, proceeds to lock, appraisal, payoff, and disclosures without verified income. I have voicemail (Exhibit O1) confirming verification on March 12. They requested paystubs AFTER that date (Exhibit Z). Screenshots confirm I was blocked from email (Exhibit T). Loan docs list payoffs and reserves (Exhibit Y), which require verified underwriting. No Notice of Incompleteness was issued. I reject their response due to misrepresentation and negligent processing. Full rebuttal with exhibits is retained for legal and agency review.

### What happens now?

The complaint process is complete and your complaint is now closed.

We have taken the following additional actions on your complaint:

- We added your complaint to the CFPB's Consumer Complaint Database (http://www.consumerfinance.gov/data-research/consumer-complaints).
- Your feedback, and feedback from others, helps us understand how companies are addressing concerns raised by consumers in their complaints. We will also share your feedback with the company.
- We have also shared your complaint with the Federal Trade Commission, which will add your complaint to its database for state and federal law enforcement agencies.

We appreciate your participation in the complaint process and your feedback on the company's response. Both are important to us and consumers who may have similar issues and concerns.

 Closed

The CFPB has closed your complaint.

---

**Privacy Act Statement**

**OMB #3170-0011**

**Note on user experience**

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government

# EXHIBIT F

**Voicemail from Loan Officer Shawn Wainwright – March 12, 2025**

This exhibit contains a screenshot of a voicemail received from Loan Officer Shawn Wainwright on March 12, 2025, confirming receipt of the Plaintiff's second employment verification. This voicemail serves as critical evidence contradicting the Defendant's later claims that such verification was never received. The voicemail also demonstrates acknowledgment of processing delays on the Defendant's end and establishes a direct timeline tying communication failure to material delays and procedural obstructions.

The call was made at 8:33 AM and clearly references the second verification of employment as having arrived and been set up. The statement, 'I will call you now... your mother's second verification of employment just came in late last week that has been sent up,' is a direct admission contradicting claims submitted by the Defendant to federal regulators.

12:28

# Voicemail

**+1 814-251-9528**                                      Mar 12
Huntington is trying to reach you...        00:38

**+1 410-237-6424**                                      Mar 12
Couldn't transcribe message                   00:00

**+1 330-840-5618**
Mar 12, 2025 at 8:33 AM

This is Shawn Wayne right now. So I will call you now your mother's. second verification of employment just came in late last week that has been sent up. Give me a call back. I apologize. I'm sorry. I was actually out of the office last week. Call me back at 3:30.

▶                                                00:00                                                                    00:40

 Speaker     Call     Message     Delete

**+1 814-251-9528**                                      Mar 10
At SCI Huntingdon, it will be recor...        00:40

**+1 717-723-1775**                                      Mar 10
Hi Pete, this is Stacy Lockhart fro...        00:18

 Home     Plan     Billing     Support     Voicemail

From: **Shawn Wainwright** Shawn.Wainwright@Nafinc.com

Subject: **Verification for PIN for Teksystems**

Date: **February 18, 2025 at 3:26:50 PM**

To: **Petie** mfmallah87@icloud.com

---

If your company utilizes this function an employee can visit our website to generate a verifier pin for a lender. Please refer to the instructions below.

Go to https://verify.thomas-and-company.com/

1. Click 'GET STARTED'

2. Click 'EMPLOYEE ACCESS'

3. Provide your name

4. Provide an email you have access to

5. Provide the social security number (once the system verifies the social more requirements will pop up)

6. Provide the company code

7. Provide the employee ID or authorization ID

8. Click Continue (a message will appear that an email has been sent to the email used in step 6)

9. Check email for a message from Thomas and Company

10. Click on the link provided in the email

After logging in:

1. Click the green 'GET STARTED' option next to Generate a Verifier Pin

2. Read the terms and conditions

3. Agree & Finish

4. Email the verifier pin to yourself or your lender. In the event the email did not go through or you do not have an email for the verifier, you can write the pin down, or view it under the verifier pin history on the main page of your employee portal.

# Shawn Wainwright
Sr. Loan Officer | NMLS #918316

**9150 S Hills Blvd, Ste. 260 | Broadview Hts., Oh 44147**
Toll Free (800)450-2010 x 10085 | O (330)840-5618 | F (330)752-9060
Shawn.Wainwright@nafinc.com | **newamericanfunding.com**

# EXHIBIT G

**Consumer Financial Protection Bureau (CFPB) Complaint & Amy Dale's Written Response – April 2025**

This exhibit includes the full record of the CFPB complaint submitted by the Plaintiff and the official response issued by Amy Dale, Senior Vice President of Customer Service at New American Funding, in April 2025.

In her response, Amy Dale falsely claims that the Plaintiff's representative was not authorized and had submitted communications using multiple email addresses. These statements directly contradict multiple internal emails, voicemails, and official technology consent forms provided by the Plaintiff, including documentation confirming consent to communicate electronically (Exhibit A) and email correspondence acknowledging that authorization.

The false assertions made in the CFPB response form the basis of the Plaintiff's claim of misrepresentation to federal regulators, which supports the request for expedited discovery and potential sanctions under Rule 37(a). This exhibit is critical in establishing intent, concealment, and procedural misconduct by the Defendant's senior staff.


Consumer Financial
Protection Bureau
(https://www.consumerfinance.gov/)

Start a new complaint

❮ All complaints (.)

## 250319-19425105
CLOSED

### ✅ Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 3/19/2025 | Mortgage | Applying for a mortgage or refinancing an existing mortgage |

**We received your complaint. Thank you.**

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

Here is the finalized and structured CFPB complaint in a professional and legal format:
——— Consumer Financial Protection Bureau (CFPB) Complaint Against New American Funding (NAF) Company Information New American Funding Corporate Office: 14511 Myford Road, Suite 100, Tustin, CA 92780 Customer Service: (800) 450-2010 Loan Officer: Shawn Wainwright Supervising Executive: Jason Miller, Branch Manager ——— Complaint Summary I applied for an FHA Cash-Out Refinance loan with New American Funding (NAF) for my property located at 1823 State Street, Harrisburg, PA 17103. Throughout this process, I have fully complied with all lender requests and provided all required documentation. Despite this, NAF has engaged in deliberate delays, contradictory statements, and regulatory violations, obstructing my ability to complete my refinance and causing financial harm. On March 12, 2025, at 8:37 AM, my loan officer, Shawn Wainwright, left a voicemail confirming that my employment verification was completed and that my file was moving forward. However, later that same day, NAF falsely claimed they had "no update available" on my loan, directly contradicting Wainwright's voicemail. On March 12, 2025, I formally requested the immediate release of my FHA Case Number and Appraisal Transfer Code in accordance with HUD Mortgagee Letter 2009-40, which explicitly states that lenders must transfer the FHA case number upon borrower request. NAF unlawfully refused to comply. On March 13, 2025, I received a phone call from Shawn Wainwright, during which he admitted that he "dropped the ball" on my loan processing, apologized for the delays, and assured me that my mother's loan was moving forward. On March 14, 2025, I received an email from Wainwright stating that my file had been reassigned to the Processing Manager and that "upper management is aware" of my concerns. Despite this acknowledgment, no resolution was provided, and I continued receiving vague and contradictory responses. On March 18, 2025, Jason Miller, Branch Manager at NAF and Wainwright's supervisor, contacted me for the first time, claiming he was "just now hearing about this" and that he would assist with resolving the issue. This directly contradicts Wainwright's March 14 email, which stated that upper management was already aware. This further demonstrates New

American Funding's internal communication failures, delays, and neglect in handling my refinance. Additionally, NAF's customer service agent, Carlos, refused to provide contact information for their compliance department, obstructing my ability to escalate the issue to regulatory authorities. This pattern of misconduct has caused financial harm, unnecessary delays, and significant distress, as detailed in the following timeline. ——— Timeline of Events January 31, 2025 • Loan disclosures were sent for review and e-sign. February 3, 2025 • Interest rate locked at 7.25%, with an expiration date of March 20, 2025. February 5, 2025 • Signed and acknowledged a changed circumstance document, confirming intent to proceed. February 18, 2025 • Appraisal was completed and uploaded to the loan portal. • No official repair requirements were documented, violating FHA loan processing rules. March 11, 2025 • Follow-up email sent requesting a loan status update. • No response from NAF. March 12, 2025 (8:37 AM) • Loan officer Shawn Wainwright left a voicemail confirming that employment verification was completed and that my file was moving forward. March 12, 2025 (Later That Day) • NAF falsely claimed they had "no update available" on my loan, contradicting Wainwright's voicemail. March 12, 2025 (Formal FHA Case Number Request) • Formally requested the immediate release of my FHA Case Number and Appraisal Transfer Code per HUD Mortgagee Letter 2009-40. • Request was unlawfully denied. March 13, 2025 • Received a phone call from Shawn Wainwright, where he admitted he "dropped the ball" on my loan processing, apologized, and assured me my mother's loan was moving forward. March 14, 2025 • Received an email from Wainwright stating that my file was reassigned to the Processing Manager and that upper management was aware of my concerns. • Despite this, no corrective action was taken, and my loan continued to face delays. March 18, 2025 • Jason Miller, Branch Manager at NAF and Wainwright's supervisor, contacted me for the first time, claiming he was "just now hearing about this." • This contradicts Wainwright's March 14 email, which stated that upper management was already aware. • This demonstrates further delays, internal miscommunication, and mismanagement by NAF. ——— Relief Sought 1. Monetary Compensation • Compensation for financial harm, emotional distress, and increased costs due to delayed loan processing. • Reimbursement for any financial damages, including lost time and opportunities caused by NAF's mishandling. 2. Fair Market Interest Rate & Immediate Closing • NAF must honor a new, fair market interest rate BELOW my previous locked-in rate of 7.25%, considering the delays were entirely their fault. • NAF must immediately approve and close my loan at the newly negotiated lower rate. 3. Formal Investigation & Compliance Review • CFPB should investigate NAF's failure to comply with HUD guidelines, their refusal to transfer my FHA Case Number, and the internal mismanagement that caused these delays. 4. Formal Written Response from NAF's Compliance Department • NAF must provide: • Underwriting notes • Internal communications • A documented explanation for the excessive delays and contradictory statements made by loan officers and executives. ——— Conclusion This complaint highlights severe negligence, non-compliance with HUD/FHA guidelines, and unethical business practices by New American Funding. Their failure to handle my refinance in a timely and compliant manner has caused unnecessary distress and financial uncertainty. I respectfully request immediate action to resolve these violations. ——— This document is ready to be submitted. If you need any final adjustments, let me know. Otherwise, copy and paste it into the CFPB complaint submission form.

**ATTACHMENTS**

FHA_Application_of_Unused_Escrow_Funds.pdf
(92.2 KB)

Lock-In_Agreement.pdf
(102.7 KB)

IMG_2591.jpeg
(1 MB)

Maryann
Butler.zip
(1.8 MB)

View full complaint ⊕

 Sent to company

**STATUS**

Sent to company on 3/19/2025

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## ✔ Company still working

**STATUS**

Company response is in progress as of 4/3/2025

**The company has responded that it is still working on your issue**

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

New American Funding is currently researching into this matter and need additional time to complete our review and provide our findings. Thank you in advance for your understanding. Respectfully, Customer Service Management

## ✔ Company responded

**STATUS**

Company responded on 4/7/2025

**RESPONSE TYPE**

Closed with explanation

### Company's Response

Consumer Financial Protection Bureau RE: Complaint No. 250319-19425105 / Maryann Butler To Whom It May Concern, New American Funding, LLC ("NAF") is responding to the complaint filed by Maryann Butler. In researching this matter, our records indicate in February 2025, Ms. Butler contacted NAF regarding a cash-out refinance of her subject property located at 1823 State Street, Harrisburg, PA 17103. Loan Consultant, Mr. Wainwright, was assigned to assist with the loan inquiry. Mr. Wainwright had initially been communicating with Ms. Butler's son, Mr. Davis, who stated he was assisting his mom with the loan process. During some of their calls, Mr. Davis advised the loan consultant he would place a separate call to Ms. Butler, then join or add her on the call. They were seeking assistance to pay off and consolidate debt. Ms. Butler gave Mr. Wainwright her authorization to go through her son for communications for her refinance. During the initial phone conversation, information was obtained including income, assets, and employment information. Ms. Butler agreed to having her consumer credit report obtained. The loan program discussed was for an FHA 20-year fixed rate cash-out refinance of the subject property. Ms. Butler was also advised an appraisal of the subject property would be needed, and she would be required to make payment directly to the appraisal management company for the appraiser's services. Ms. Butler had also been advised once the appraisal service had been provided by a third-party licensed FHA appraiser, the fee would be non-refundable. Ms. Butler was conditionally pre-approved for a loan, however, this was not a guarantee that the loan would close or fund, as NAF would need to verify all the information Ms. Butler provided at the initial stage of the loan process. A written verification of employment ("WVOE") was also part of the loan process. Initially there was a Pin No. needed to verify employment. Mr. Wainwright spoke with Mr. Davis regarding the Pin No. needed. He eventually provided this information to verify employment. When NAF received the WVOE from Ms. Butler's

employer, it reflected she did not have a 24-month employment history. This was an FHA requirement to obtain the FHA financing. Mr. Wainwright informed Ms. Davis regarding the employment requirement and NAF needed her previous employer information. Mr. Davis then advised Ms. Butler wanted to start another job with another company doing the same type of work as the current employer. Mr. Wainwright advised Mr. Davis to have Ms. Butler hold off with the new job switch due to the loan transaction and wait until her loan closes. Ms. Butler agreed to wait until the transaction was completed to switch to a new employer. In the meantime, the job verification from Ms. Butler's previous employer took slightly longer than expected. The loan was suspended by Underwriting due to Debt-to-Income ("DTI") ratio and while waiting for the verification from the previous employer. We needed paystubs from Ms. Butler's prior employer and most recent 30 days of employment to be able to meet the 24-months FHA requirement. Prior to receiving the complaint with the BBB, Mr. Davis sent an email to NAF requesting a copy of the appraisal and FHA case number released. The Sales Manager, Mr. Miller, responded to his email, advising he would be happy to assist with the request and asked for the new Lender's contact information, however, Mr. Davis would not provide this information. On 3/31/2025, I sent an email to Ms. Butler to advise FHA requirement 24-months employment to be eligible for FHA financing, and explained NAF needed paystubs from her prior employer and most recent 30 days of employment to be able to meet the 24-months FHA requirement. Ms. Butler was further advised once received, NAF would restructure her loan and move forward to determine if her loan meets the requirement. I included a copy of the email that contained the home appraisal and advised it was initially sent to her on 2/18/2025. Ms. Butler was further advised that NAF was unable to provide her with a closing date, as we had not obtained full loan approval, since we were still waiting for her to provide the documents needed to proceed. Mr. Davis began responding to me from a different email address than what was on file. On 2/18/2025, a copy of the appraisal of the subject property had been sent by email to Mr. Davis, as he was sending and replying to emails using Ms. Butler's email address on file. The report was also completed "subject to" repair work needed of all chipped paint, which meant that the chipped paint needed to be corrected, and a subsequent follow up appraisal inspection would be required to confirm the work was completed. On Thursday, 4/3/2025, I sent an email to Ms. Butler and Mr. Davis, regarding the FHA Case Transfer request to a new lender that Ms. Butler wished to proceed with. There is information NAF will require to be able to transfer the FHA case number and appraisal. Without this information, we are unable to complete the transfer request. Once the information is provided, we can proceed with the transfer. We hope this has addressed all concerns related to this matter and we were unable to finalize Ms. Butler's home financing needs. Please let us know if we can be of further assistance. Respectfully, Amy Dale Amy Dale SVP, Customer Service

## ✔ Feedback provided

### STATUS

Feedback provided on 4/7/2025

#### Your feedback

**THE COMPANY'S RESPONSE ADDRESSED ALL OF MY ISSUES**

No

**I UNDERSTAND THE COMPANY'S RESPONSE TO MY COMPLAINT**

No

**THE COMPANY DID WHAT THEY SAID THEY WOULD DO WITH MY COMPLAINT**

No

**ADDITIONAL COMMENTS**

The response is factually misleading and incomplete. No loan, including the Plaintiff's, proceeds to lock, appraisal, payoff, and disclosures without verified income. I have voicemail (Exhibit O1) confirming verification on March 12. They requested paystubs AFTER that date (Exhibit Z). Screenshots confirm I was blocked from email (Exhibit T). Loan docs list payoffs and reserves (Exhibit Y), which require verified underwriting. No Notice of Incompleteness was issued. I reject their response due to misrepresentation and negligent processing. Full rebuttal with exhibits is retained for legal and agency review.

## What happens now?

The complaint process is complete and your complaint is now closed.

We have taken the following additional actions on your complaint:

- We added your complaint to the CFPB's Consumer Complaint Database (http://www.consumerfinance.gov/data-research/consumer-complaints).
- Your feedback, and feedback from others, helps us understand how companies are addressing concerns raised by consumers in their complaints. We will also share your feedback with the company.
- We have also shared your complaint with the Federal Trade Commission, which will add your complaint to its database for state and federal law enforcement agencies.

We appreciate your participation in the complaint process and your feedback on the company's response. Both are important to us and consumers who may have similar issues and concerns.

 Closed

The CFPB has closed your complaint.

**Privacy Act Statement**

**OMB #3170-0011**

**Note on user experience**

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-leave/federal-holidays/#url=Overview)

More than 180 languages available.

An official website of the United States Government



April 4, 2025

Better Business Bureau

RE: Complaint No. 23131731 / Maryann Butler

To Whom It May Concern,

New American Funding, LLC ("NAF") is responding to the complaint filed by Maryann Butler.

In researching this matter, our records indicate in February 2025, Ms. Butler contacted NAF regarding a cash-out refinance of her subject property located at 1823 State Street, Harrisburg, PA 17103. Loan Consultant, Mr. Wainwright, was assigned to assist with the loan inquiry.

Mr. Wainwright had initially been communicating with Ms. Butler's son, Mr. Davis, who stated he was assisting his mom with the loan process. During some of their calls, Mr. Davis advised the loan consultant he would place a separate call to Ms. Butler, then join or add her on the call. They were seeking assistance to pay off and consolidate debt. Ms. Butler gave Mr. Wainwright her authorization to go through her son for communications for her refinance.

During the initial phone conversation, information was obtained including income, assets, and employment information. Ms. Butler agreed to having her consumer credit report obtained. The loan program discussed was for an FHA 20-year fixed rate cash-out refinance of the subject property.

Ms. Butler was also advised an appraisal of the subject property would be needed, and she would be required to make payment directly to the appraisal management company for the appraiser's services. Ms. Butler had also been advised once the appraisal service had been provided by a third-party licensed FHA appraiser, the fee would be non-refundable.

Ms. Butler was conditionally pre-approved for a loan, however, this was not a guarantee that the loan would close or fund, as NAF would need to verify all the information Ms. Butler provided at the initial stage of the loan process.

A written verification of employment ("WVOE") was also part of the loan process. Initially there was a Pin No. needed to verify employment. Mr. Wainwright spoke with Mr. Davis regarding the Pin No needed. He eventually provided this information to verify employment. When NAF received the WVOE from Ms. Butler's employer, it reflected she did not have a 24-month employment history. This was an FHA requirement to obtain the FHA financing. Mr. Wainwright informed Ms. Davis regarding the employment requirement and NAF needed her previous employer information. Mr. Davis then advised Ms. Butler wanted to start another job with another company doing the same type of work as the current employer.



Mr. Wainwright advised Mr. Davis to have Ms. Butler hold off with the new job switch due to the loan transaction and wait until her loan closes. Ms. Butler agreed to wait until the transaction was completed to switch to a new employer. In the meantime, the job verification from Ms. Butler's previous employer took slightly longer than expected. The loan was suspended by Underwriting due to Debt-to-Income ("DTI") ratio and while waiting for the verification from the previous employer. We needed paystubs from Ms. Butler's prior employer and most recent 30 days of employment to be able to meet the 24-months FHA requirement.

Prior to receiving the complaint with the BBB, Mr. Davis sent an email to NAF requesting a copy of the appraisal and FHA case number released. The Sales Manager, Mr. Miller, responded to his email, advising he would be happy to assist with the request and asked for the new Lender's contact information, however, Mr. Davis would not provide this information.

On 3/31/2025, I sent an email to Ms. Butler to advise FHA requirement 24-months employment to be eligible for FHA financing, and explained NAF needed paystubs from her prior employer and most recent 30 days of employment to be able to meet the 24-months FHA requirement. Ms. Butler was further advised once received, NAF would restructure her loan and more forward to determine if her loan meets the requirement. I included a copy of the email that contained the home appraisal and advised it was initially sent to her on 2/18/2025. Ms. Butler was further advised that NAF was unable to provide her with a closing date, as we had not obtained full loan approval, since we were still waiting for her to provide the documents needed to proceed. Mr. Davis began responding to me from a different email address than what was on file.

On 2/18/2025, a copy of the appraisal of the subject property had been sent by email to Mr. Davis, as he was sending and replying to emails using Ms. Butler's email address on file. The report was also completed "subject to" repair work needed of all chipped paint, which meant that the chipped paint needed to be corrected, and a subsequent follow up appraisal inspection would be required to confirm the work was completed.

On Thursday, 4/3/2025, I sent an email to Ms. Butler and Mr. Davis, regarding the FHA Case Transfer request to a new lender that Ms. Butler wished to proceed with. There is information NAF will require to be able to transfer the FHA case number and appraisal. Without this information, we are unable to complete the transfer request. Once the information is provided, we can proceed with the transfer.

We hope this has addressed all concerns related to this matter and we were unable to finalize Ms. Butler's home financing needs.

Please let us know if we can be of further assistance.

Respectfully,

*Amy Dale*
Amy Dale
SVP, Customer Service

## EXHIBIT H

*Email Communications Between Amy Dale and Plaintiff's Representative*

This exhibit includes selected email communications between Plaintiff's representative, Audury "Petie" Davis, and Amy Dale, Senior Vice President of Customer Service at New American Funding (NAF), as well as a follow-up message from Plaintiff Maryann Butler. These emails demonstrate that:

1. Amy Dale directly and repeatedly responded to Mr. Davis's inquiries, clearly indicating her awareness of his identity and role.
2. Communications were conducted transparently from a consistent and valid email address.
3. Plaintiff's mother, Maryann Butler, reached out only after receiving forwarded emails from Mr. Davis — not as an impersonation, but in full context.
4. Amy Dale's later claims to the Consumer Financial Protection Bureau (CFPB) alleging impersonation contradict her own documented conduct.

This exhibit directly refutes NAF's allegations of misrepresentation and supports Plaintiff's request for discovery related to internal correspondence and process documentation.

14511 Myford Road, Suite 100 | Tustin, CA 92780

p 800.450.2010 | o 949.271.0642 |

amy.dale@nafinc.com | newamericanfunding.com

**naf**

CONFIDENTIALITY NOTICE

This email message and any attachments are for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message along with any attachments, from your computer system. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

---------- Forwarded message ----------
From: Amy Dale <Amy.Dale@nafinc.com>
To: "mfmallah87@icloud.com" <mfmallah87@icloud.com>
Cc:
Bcc:
Date: Thu, 20 Mar 2025 20:24:01 +0000
Subject: RE: Ms. Butler Loan Process

Good afternoon, Ms. Butler,

Thank you for your patience and understanding during our review.

I have been advised that your loan did not meet the FHA requirement of 24 months of employment. Therefore, we need your paystubs from your previous employer and your most recent 30 days of employment to be able to meet the 24 month requirement.

I am advised that the prior employer information can be a verbal verification with dates and position at your former employment. Once received we can complete the restructure of the loan and move forward to determine if the loan meets the requirements.

Please also note that the appraisal was sent to you via email and that does have the FHA Case Number on it. Therefore, there was not a delay in receiving this information as it was sent to you in February.

The appraisal is subject to the following: Repair of all chipped paint. This must be completed as part of the approval as well.

occupied single family residential properties and was not utilized in this appraisal.
This appraisal is made ☐ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☒ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: Repair of all chipped paint.

From what I understand, you have been previously advised of the requirements, however, we have yet to obtain the required information to move forward on our end.

From: **MER BUTLER** ms.mare26@gmail.com
Subject: **Fwd: cash out refinance**
Date: **Mar 31, 2025 at 6:34:34 PM**
To: **Petie Davis** mfmallah87@icloud.com

Sent from Gmail Mobile

---------- Forwarded message ---------
From: **MER BUTLER** <ms.mare26@gmail.com>
Date: Mon, Mar 31, 2025 at 6:33 PM
Subject: Re: cash out refinance
To: Amy Dale <Amy.Dale@nafinc.com>

Every thing was provided Shawn was handling everything

Sent from Gmail Mobile

On Mon, Mar 31, 2025 at 5:01 PM Amy Dale <Amy.Dale@nafinc.com> wrote:

Good afternoon, Ms. Butler,

Thank you for your response.

Ms. Butler, please know that you have not provided with a closing date and information as we have not obtained full loan approval for you and did not receive the documents required to move forward.

Ms. Butler, you had provided the assigned Loan Consultant with authorization to go through your son for communications for your refinance inquiry.

Please see attached. I did not receive a response from you or from your son.

Also, we have received correspondence from your son's email stating it was you, please confirm which email you are wanting in our system as your primary email contact.

Please see the attached email for what is required to move forward. Once the information is received, we will review it and advise if your income averages out to meet the debt-to-income requirement.

You may call me directly to discuss this matter further at my contact information below or advise a good timeframe and number where I can reach you.

Respectfully,

**Amy Dale**

**SVP, Corporate Customer Service**

**New American Funding, LLC**

14511 Myford Road, Suite 100 | Tustin, CA 92780

**p** 800.450.2010 | **o** 949.271.0642 |

amy.dale@nafine.com | **newamericanfunding.com**

**naf**

CONFIDENTIALITY NOTICE

This email message and any attachments are for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message along with any attachments from your computer system. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

**From:** MER BUTLER <ms.mare26@gmail.com>
**Sent:** Monday. March 31, 2025 11:53 AM
**To:** Amy Dale <Amy.Dale@nafinc.com>
**Subject:** Re: cash out refinance

---

**External Email:** Do not click links or open attachments unless you recognize the sender and know the content is safe.

---

not to mention no one got back to me about the closing date so how are you guys going to withdraw the loan

On Mon, Mar 31, 2025 at 2:50 PM MER BUTLER <ms.mare26@gmail.com> wrote:

I have not received a email from you so I would like to continue

On Mon, Mar 31, 2025 at 1:58 PM Amy Dale <Amy.Dale@nafinc.com> wrote:

Good morning, Ms. Butler.

The attached Appraisal was sent you to via your email on file on 2/18/2025. I have attached it to your email here as well.

Good morning, Ms. Butler.

I have received your request for an appraisal and have attached it to this email for you.

Please know that you were previously sent the appraisal on 2/18/2025.

I personally sent you an email to your email on file advising you what was required to move forward with your file in-order to meet the 2 year of income proof. I did not receive a response from you. Therefore, your loan inquiry has been withdrawn due to incompleteness.

Respectfully,

**Amy Dale/**

**SVP, Corporate Customer Service**

**New American Funding, LLC**

From: **Amy Dale** Amy.Dale@nafinc.com
Subject: **RE: Subject: Urgent: Final Legal Demand & FHA Case Transfer Request – Immediate Escalation Required**
Date: Apr 3, 2025 at 7:48:15 PM
To: mfmallah87@icloud.com

Good afternoon, Mr. Davis,

Please have your new chosen lender of Members 1st Federal Credit Union send a formal request to our internal FHA Case Transfer to request the transfer of the case number to the new lender.

That email is: CaseTransfer@Nafinc.com and they will have the case number transferred. You may also send it to me directly to assist should you have any issues with your email being received.

They will need a signed borrower authorization along with the following information.

- FHA borrower:
- FHA CASE #:
- Property address:
- New Lender's name:
- New Lender's I.D.# address:
- New Lender's Mailing Address:
- New Lender's Telephone Number:

1st Federal will be able to assist you with this request to transfer the case number to them as it is an industry standard practice to transfer to a new lender.

Please know that we cannot transfer the FHA case number to a new lender without their information and formal request.

Once received, the transfer of the case number to your new chosen lender will be processed.

Respectfully,

**Amy Dale**
**SVP, Corporate Customer Service**
**New American Funding, LLC**
14511 Myford Road, Suite 100 | Tustin, CA 92780

**p** 800.450.2010 | **o** 949.271.0642 |
amy.dale@nafinc.com | newamericanfunding.com

naf

CONFIDENTIALITY NOTICE
This email message and any attachments are for the exclusive use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message along with any attachments, from your computer system. If you are the intended recipient please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

From: mfmallah87@icloud.com
Subject: Clarification on Regulatory Correspondence and Record Discrepancies
(CFPB Case #250319-19425105
Date: Apr 9, 2025 at 9:05:30 AM
To: Amy Dale  Amy.Dale@nafinc.com

Dear Ms. Dale,

This correspondence is submitted as a professional courtesy and formal record notification.

It has come to my attention, based on the regulatory response issued by New American Funding in CFPB Case #250319-19425105, that your office made claims alleging I impersonated my mother, Maryann Butler, during her FHA cash-out refinance process.

This assertion is demonstrably false and directly contradicted by internal documentation held by New American Funding:

1. Technology Consent Agreement (1/31/2025) — identifies mfmallah87@icloud.com as the authorized communication channel with New American Funding.

2. Loan Disclosures and Digital Forms — show my name and contact as the point of coordination.

3. Hazard Insurance Endorsement Letter — confirms loan processing reached stages that are only accessible with verified borrower and employment data.

4. Direct communications from your staff consistently addressed me by name and provided document-specific instructions.

Your claim to the CFPB — that I acted without authorization or that multiple individuals reached out from different email accounts — is not only inaccurate, it undermines the truth of the digital trail your company actively maintained.

In addition, I received multiple undeliverable bounce-backs from addresses such as customerservice@nafinc.com and compliance@nafinc.com, pointing to communication interference that was never acknowledged in your statements to federal regulators.

This message is not adversarial; it is an opportunity to correct the record in advance of civil litigation, which now includes defamation of character, regulatory misrepresentation, and procedural negligence.

I remain committed to resolution. However, the truth and the paper trail are no longer in dispute.

Respectfully,

Audury "Petie" Davis

Authorized Representative for Maryann Butler

Email: mfmallah87@icloud.com

CFPB Case #: 250319-19425105

BBB Case #: 23131731

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MARYANN BUTLER,     :     No. 1:25-CV-690
                 :
     Plaintiff     :
                 :     (Caraballo, M.J.)
     v.            :
                 :
NEW AMERICAN FUNDING,     :
                 :
     Defendant     :

## ORDER

On April 21, 2025, plaintiff Maryann Butler, proceeding *pro se*,

initiated this action by filing a federal lending law complaint against

defendant New American Funding. Doc 1. That same day, Butler

applied for leave of the Court to proceed in forma pauperis. Doc. 2. The

Court granted the motion to proceed in forma pauperis and deemed the

complaint filed on May 8, 2025, but held service in abeyance pending its

obligatory screening of the complaint under 28 U.S.C. § 1915(e)(2)(B).

Doc. 12. Butler subsequently paid the full filing fee, and counsel for

New American Funding entered an appearance. Doc. 17.

Since applying for leave to proceed in forma pauperis, Butler has

ceased filing documents on her own behalf. Instead, Audury Petie

Davis, who claims to be Butler's "authorized representative," has filed a

1

total of 26 documents, purportedly on Butler's behalf. Docs. 3, 5, 7–10, 12, 13, 15, 16, 18–23, 25–29, 32–36. These include: motions to expedite (Docs. 5, 13); various declarations (Docs. 10, 15, 20, 21, 32, 33); supplements (Docs. 8, 22); notices (Docs. 7, 23, 25, 26, 28, 36); addendums (Docs. 9, 12, 35); a motion for sanctions and brief in support (Docs. 16, 18); an exhibit (Doc. 29); a motion for default judgment (Doc. 34); a motion to file electronically (Doc. 3); a brief in opposition to New American Funding's request for an extension (Doc. 27); and finally, a motion to amend the complaint and substitute Davis as the plaintiff. (Doc. 19). Davis also sought to withdraw all the pending motions in the most recent filing. Doc. 36 at 1. Davis, however, does not claim to be an attorney, and thus lacks authority to litigate this matter on behalf of Butler.

Indeed, "[a]lthough an individual may represent herself or himself pro se, a non-attorney may not represent other parties in federal court." *Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018); *see also* 28 U.S.C. § 1654 ([T]the parties may plead and conduct their own cases personally or by counsel"). "[F]ederal courts have routinely adhered to the general rule prohibiting pro se plaintiffs

2

from pursuing claims on behalf of others in a representative capacity."

*Gunn v. Credit Suisse Grp. AG*, 610 F. App'x 155, 157 (3d Cir. 2015)

(per curiam). Davis, a non-attorney, has acted in a representative

capacity for Butler in all the filings described above, has not appeared

as an attorney in this matter, and does not claim in any of those filings

to be an attorney. Davis's lone reason for prosecuting this action on

behalf of Butler is that Davis is Butler's child. Doc. 1-5 at 1; Doc. 20 at

1.

 Davis likewise has not demonstrated any legally recognized status

as a guardian, next friend, or other exception permitting non-attorneys

to represent a litigant, pursuant to Fed. R. Civ. P. 17. ("A minor or an

incompetent person who does not have a duly appointed representative

may sue by a next friend or by a guardian ad litem. The court must

appoint a guardian ad litem—or issue another appropriate order—to

protect a minor or incompetent person who is unrepresented in an

action.").

 The motion to amend the complaint and substitute Davis as the

plaintiff is also unavailing. "A filing by a non-lawyer on behalf of

another person or entity cannot be considered by the Court" for "it is a

legal nullity that the Court cannot adjudicate, and it must be dismissed." *In re 69 N. Franklin Tpk., LLC*, 2017 WL 773875, at *3, *4 (D.N.J. 2017). But even if the Court could consider the issue, it is not clear based on Davis's representations that Davis is the real party in interest. The definition of a "real party in interest" is "the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 733 (D.N.J. 2013). The alleged injury giving rise to the action, as far as the Court can tell, seems to stem from a denied application for a home-repair loan made in Butler's name and for her home. Doc. 1-5 at 1. In other words, if any rights are involved here, they are for Butler, not Davis, to assert.

Accordingly, it is **ORDERED** that:

1.  The motions filed by Audury Petie Davis on behalf of Plaintiff Maryann Butler (Docs. 13, 16, 19, 27, 34) are **DENIED WITHOUT PREJUDICE.**

2.  The Clerk's Office is **DIRECTED** to **STRIKE** all remaining filings made on behalf of Plaintiff Maryann Butler by

4

Audury Petie Davis (Docs. 3, 5, 7–10, 12, 15, 18, 20–23, 25–26, 28–29, 32–33, 35–36).

3.  Audury Petie Davis **SHALL NOT** file any new documents on behalf of Plaintiff Maryann Butler, unless compliance with the requirements of Fed. R. Civ. P. 17 is demonstrated.

4.  Defendant New American Funding is **DIRECTED** to respond to the Complaint (Doc. 1) within **30 days** of this Order.

Date:  July 11, 2025                    *s/ Phillip J. Caraballo*
                                         Phillip J. Caraballo
                                         United States Magistrate Judge